Personal Homeowners Policy

Prepared For: Brandon Jones and Meghann Jones

Date: 03/11/2022

Agency Name: McGriff Insurance Services

Agency Phone Number: (888) 228-9643

Exhibit "A"

03/11/2022

Dear Brandon Jones and Meghann Jones,

Thank you for placing your confidence in Nationwide® Private Client and McGriff Insurance Services.  At Nationwide Private Client, we specialize in protecting our clients, including you and your family's assets and reputation. In partnership with your agency, we have customized your policy to offer you comprehensive protection that fits your unique coverage needs.

With a Nationwide Private Client policy, you will also experience the peace of mind that comes from working with one of the largest and most established insurance and financial companies in the world.  With Nationwide's A1 rating from Moody's and A+ ratings from A.M. Best and S&P, you can count on our financial strength and stability as a Fortune 100 company.  You have our commitment to deliver on our promises.

In the event of a loss, we deliver on our promise with claims service that's available 24/7, 365 days a year at 1-855-473-6410 or via email at PrivateClient@nationwide.com.

For online access to pay your bills or view your coverage, account information or proof of insurance documentation, visit nationwideprivateclient.com and select "Pay Your Bill."

We appreciate the opportunity to be your insurance carrier of choice and will continue to work hard to protect what is important to you.

Regards,

Paul VanDenBosch
President, Nationwide Private Client

**Private Client**

### Your New Business Policy Declaration
**Personal Home Policy**
Policy Number: HO00250518-01
Policy Period: 03/11/2022 to 03/11/2023
**Date Prepared: 03/11/2022**

## Policyholder (Named Insured)

**Brandon Jones and Meghann Jones**
**856 Barn Owl Rd**
**Marietta, GA 30068-2477**

## Agency Name / Agency Code

**McGriff Insurance Services / GA000801**
**414 Gallimore Dairy Rd Ste F**
**Greensboro, NC 27409-9693**
**Phone: (888) 228-9643**

## Mortgagee

**Truist Bank ISAOA ATIMA**
**PO BOX 47047**
**Atlanta, GA 30362-0047**
**Number:4003759729**

---

### General Policy Information

**Issued: 03/11/2022**

These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your **Policy** will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Period From 03/11/2022 To 03/11/2023** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises:**

**856 Barn Owl Rd**
**Marietta, GA 30068-2477**

---

### How You saved on this Policy with Nationwide Private Client

Protective Devices Discount
Gated Community Discount
Multiple Policy Discount

Underwritten by Crestbrook Insurance Company



**Private Client**

### Your New Business Policy Declaration
**Personal Home Policy**
Policy Number: HO00250518-01
Policy Period: 03/11/2022 to 03/11/2023

| Section I | Limits Of Liability | Deductible: $5,000 All Peril |
|---|---|---|

**Property Coverages**

| | | |
|---|---|---|
| Coverage A - Dwelling | $1,717,000 | |
| Coverage B - Other Structures | $343,400 | |
| Coverage C - Personal Property | $1,201,900 | |
| Coverage D - Loss of Use | Reasonable Amount of Time to Restore. | |

| Section II Liability Coverages | Limits Of Liability |
|---|---|
| Coverage E - Personal Liability | $1,000,000 |
| Coverage F - Medical Payments to Others | $25,000 |

**Other Coverages / Options / Endorsements Applicable**

| | Coverage Limits | Premium |
|---|---|---|
| Crestbrook Protection without Earthquake | | |
| Biological Deterioration Clean Up | $10,000 | |
| Credit Card, EFT Card, Access Device, Forgery Coverage | $10,000 | |
| Earthquake And Volcanic Eruption | Coverage C Only - Deductible 10% | |
| Equipment Breakdown Enhancement | $100,000 | |
| Service Line Coverage Deductible $1,000 | $25,000 | |
| Extended Dwelling Replacement Cost | | |
| Fire Department Service Charge | $1,000 | |
| Loss Assessment - Sec I | $50,000 | |
| Ordinance or Law | | |
| Identity Theft or Identity Fraud Expenses | $25,000 | |
| Loss Assessment - Sec II | $50,000 | |

Underwritten by Crestbrook Insurance Company



**Private Client**

**Your New Business Policy Declaration**
**Personal Home Policy**
Policy Number: HO00250518-01
Policy Period: 03/11/2022 to 03/11/2023

**Premium Summary**

Policy Premium ██████

Other Coverages / Options / Endorsements Premium ██████

**Total Policy Premium:** ██████

**FORMS AND ENDORSEMENTS MADE PART OF POLICY**

G8000 01/13 Privacy statement - Crestbrook
P1405 05/16 Homeowner Policy
G8001 07/18 Signature Page
P8087GA 04/16 Home Protection Endorsement  wo EQ
P8010 11/15 Identity Theft or Identity Fraud Expenses Coverage
P8013GA 11/19 Georgia Amendatory Endorsement
P8096GA 04/16 Optional Hurricane Deductible
P8097GA 04/16 Limited Coverage for Fungi, Wet or Dry Rot, or Bacteri
P8041 03/16 Equipment Breakdown Enhancement Endorsement
P8112 08/20 Service Line Coverage

**Issued By:** **Nationwide Private Client**
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company

**How to Contact Us**
Your Agent
24-Hours claims Reporting 855-473-6410

Underwritten by Crestbrook Insurance Company



**Private Client** | IDENTITY THEFT ASSISTANCE

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Identity Theft Assistance through Europ Assistance USA.

ID Theft Assist℠ services:



- Contact major credit bureaus to place fraud alerts on your account
- Assistance in replacing identification documents if stolen
- Ongoing monitoring and alert of fraudulent activity
- Access to the Online Data Protection Suite software

Contact us for 24/7 assistance or to report a claim, toll-free at (855) 473-6410 in U.S. or Canada. For international calls please contact 001-317-324-0627.

IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Identity Theft Assistance benefits.

Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

www.worldwideassistance.com

nationwide.com/privateclient

**Nationwide**

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0173AO (04/15)

**Nationwide**

---

**Private Client** | IDENTITY THEFT ASSISTANCE

As a Nationwide Private Client policyholder, you are eligible for the 24/7 benefits of Identity Theft Assistance through Europ Assistance USA.

ID Theft Assist℠ services:



- Contact major credit bureaus to place fraud alerts on your account
- Assistance in replacing identification documents if stolen
- Ongoing monitoring and alert of fraudulent activity
- Access to the Online Data Protection Suite software

Contact us for 24/7 assistance or to report a claim, toll-free at (855) 473-6410 in U.S. or Canada. For international calls please contact 001-317-324-0627.

IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

If you are traveling for an extended period of time, you may consider noting the following information and taking this card with you in case you need to access your Identity Theft Assistance benefits.

Be certain to keep it in a safe place:

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

www.worldwideassistance.com

nationwide.com/privateclient

**Nationwide**

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVR-0173AO (04/15)

**Nationwide**

## TRAVEL ASSIST

As a Nationwide Private Client policyholder, you have access to Travel Assist, so you can get the support you need if the unexpected happens.

We partnered with Generali Global Assistance (GGA), a leading global travel assistance service provider, to act as your travel advocate when traveling worldwide for business or pleasure.

In the event of a life-threatening emergency, call the local emergency authorities first.

**Phone**
Toll free in the U.S. or Canada: **+1-888-286-3551**
Collect outside of the U.S.: **+1-240-330-1515**

**Email**
ops@gga-usa.com



---

### IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

**Fill out the information below before traveling in case you need to access Travel Assist.**

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

nationwide.com/privateclient



The Travel Assist benefits are not policy indemnification or insurance coverages. To the extent any services not included in the program or any advanced payments are provided, clients are directly responsible for the cost of services. All services offered under the Travel Assist program are provided by and must be arranged and approved by GGA.

Nationwide, the Nationwide N and Eagle, Nationwide is on your side and Nationwide Private Client are service marks of Nationwide Mutual Insurance Company.  © 2019 Nationwide PVR-0172A0.1 (09/19)

---

## TRAVEL ASSIST

As a Nationwide Private Client policyholder, you have access to Travel Assist, so you can get the support you need if the unexpected happens.

We partnered with Generali Global Assistance (GGA), a leading global travel assistance service provider, to act as your travel advocate when traveling worldwide for business or pleasure.

In the event of a life-threatening emergency, call the local emergency authorities first.

**Phone**
Toll free in the U.S. or Canada: **+1-888-286-3551**
Collect outside of the U.S.: **+1-240-330-1515**

**Email**
ops@gga-usa.com



---

### IMPORTANT INFORMATION — KEEP IN A SAFE PLACE

**Fill out the information below before traveling in case you need to access Travel Assist.**

Policyholder name: _____

Policy number: _____

Agent name: _____

Agent phone number: _____

Agent email: _____

In case of emergency, contact:

_____

_____

nationwide.com/privateclient



The Travel Assist benefits are not policy indemnification or insurance coverages. To the extent any services not included in the program or any advanced payments are provided, clients are directly responsible for the cost of services. All services offered under the Travel Assist program are provided by and must be arranged and approved by GGA.

Nationwide, the Nationwide N and Eagle, Nationwide is on your side and Nationwide Private Client are service marks of Nationwide Mutual Insurance Company.  © 2019 Nationwide PVR-0172A0.1 (09/19)

**Private Client**

# PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.

Private Client

To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word…**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

Private Client

# PERSONAL HOME POLICY

Underwritten by Crestbrook Insurance Company
Home Office: One Nationwide Plaza | Columbus, Ohio 43125
Administrative Office: 18700 North Hayden Road | Scottsdale, Arizona
85255 A stock company wholly owned by Nationwide Mutual Insurance
Company



**TABLE OF CONTENTS**

Agreement                                                          3

Definitions                                                        3

Section I - Property Coverages                                     6

    Coverage A – Dwelling                      6

    Coverage B - Other Structures              6

    Coverage C - Personal Property             6

    Coverage D - Loss of Use                   8

    Additional Property Coverages              8

    Property Exclusions                        12

    Property Conditions                        15

Section II - Liability Coverages                                   18

    Coverage  Agreements                       19

        Coverage E - Personal Liability           19

        Coverage F - Medical Payments to Others   20

    Additional Liability Coverages             20

    Liability Exclusions                       21

    Liability Conditions                       24

General Policy Conditions                                          25

CRESTBROOK INSURANCE COMPANY

## *Insuring Agreement*

1. **We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

2. **We** may increase the amount of coverage shown on the Declarations to reflect current costs and values when reconstruction cost estimates are conducted, to reflect the most recent index shown on the Declarations or when the policy renews. In the event of loss, **we** may increase the amount of coverage shown on the Declarations to reflect the most recent index. **We** will compare the latest available index to the index as of the effective date of this policy. **We** will adjust the limit of liability by the percentage change in the index. The premium for this policy at the next anniversary date shall be for the adjusted limits of liability. This policy applies only to loss which occurs during the policy period.

3. **You** agree that if **you** make initial payment by check, draft, electronic funds transfer (EFT) or other remittance, the coverage afforded under this policy is conditioned on payment to **us** by the financial institution. If the payment is not honored by the financial institution, **we** will void this policy back to the inception date and no coverage will be provided.

## *Definitions*

All defined words are in bold print. Other words are also defined.

Throughout this policy:

1. **You** and **Your** refer to:
   a. The named **insured** shown in the Declarations; and
   b. The spouse of the named **insured** if a resident of the same household. If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy, but only until the earlier of:
      (1) The end of 90 days following the spouse's change of residency;
      (2) The effective date of another policy listing the spouse as a named **insured**; or
      (3) The end of the policy period; or
   c. The civil partner of the named **insured** by Civil Union or Registered Domestic Partnership filed and recognized by the state. If such individual  ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the individual  will be considered **you** and **your** under this policy, but only until the earlier of:
      (1) The end of 90 days following the individual's change of residency;
      (2) The effective date of another policy listing the individual  as a named **insured**; or
      (3) The end of the policy period; or
   d. The named **insured's domestic partner**.

2. **We**, **Us** and **Our** refer to the company shown on the Declarations as the issuing company.

Certain words and phrases used in this policy are defined as follows:

3. **Actual Cash Value** means:
   a. In the case of a total loss to buildings covered under Coverage A or B, the fair market value of the building; or
   b. In the case of a partial loss to buildings covered under Coverage A or B, or loss to other covered property, the amount it would cost to repair or replace covered property with material of like kind and quality, minus a reasonable deduction for physical deterioration and depreciation, including obsolescence based upon its condition at the time of loss. The deduction for physical deterioration shall apply only to components of the building that are normally subject to repair and replacement during the useful life of that building.

4. **Aircraft** means any contrivance used or designed for flight except model or hobby aircraft, unless the model or hobby aircraft is:
   a. Used or designed to carry people or cargo;
   b. Used or designed for commercial purposes; or
   c. Used in violation of local, state, or federal laws governing  the use of aircraft, model aircraft, or unmanned aircraft systems.

5. **Association** means the management body of the property owners.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

6. **Biological Deterioration or Damage** means damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

7. **Business** means any:

   a. Trade, profession, occupation, or employment including self-employment performed on a full-time, part-time, or temporary basis; or
   b. Other activities performed for monetary or other compensation, except the following:
      (1) Volunteer activities for which no monetary or other compensation is received other than reimbursement for expenses incurred to perform the activity.
      (2) Providing home day care services for:
         (a) Which no monetary or other compensation is received. A mutual exchange of home care services is not considered compensation; or
         (b) A relative of an **insured.**

8. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

   a. It is standing but in danger of falling down or caving in;
   b. It is standing but has separated from any other part of the building; or
   c. It is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

9. **Contamination or Pollution** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

   a. Solid, liquid, gaseous, or thermal irritants or contaminants;
   b. Vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;
   c. Fuel oil and other petroleum products; or
   d. Any other waste materials or other irritants, contaminants or pollutants.

   This definition does not include smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace.

10. **Domestic Partner** means a person living with the named **insured** shown in the Declarations and sharing a common domestic life and whose relationship resembles a mutually exclusive partnership such as that of a marriage, and:

    a. Is at least 18 years of age and capable of entering into a legal contract;
    b. Is not a relative; and
    c. Shares with the named **insured** shown in the Declarations financial interdependence and common residence.

    Evidence of such includes, but is not limited to:

    a. Joint domestic responsibility for the maintenance of the household;
    b. Having joint financial obligations, resources or assets;
    c. Documents such as a driver's license, tax returns or bills showing a common address for both parties;
    d. Both parties receiving mail at the same address; or
    e. A declaration of domestic partnership with that person or similar declaration about that person with an employer or government entity.

    A **domestic partner** does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the named **insured** shown in the Declarations.

11. **Foundation** means a building's substructure including footings, bulkheads, and substructural walls, including but not limited to basement walls and crawl space walls.

12. **Hovercraft** means a self-propelled motorized ground effect vehicle which travels across land or water just above the surface on a cushion of air and includes, but is not limited to, flarecraft and air cushion vehicles.

13. **Incidental Business** means a **business** activity, conducted on the **residence premises**:

    a. With gross revenues of less than $10,000 in any calendar year; or
    b. No **employees** of the **incidental business** who are subject to workers' compensation or similar disability laws; and
    c. Which conforms to federal, state and local laws.

CRESTBROOK INSURANCE COMPANY

**Incidental business** also includes a farming operation on the **residence premises** involving:

a.  Farm **employees** working less than 1,250 hours; and
b.  Gross annual receipt from such farming operation of less than 25,000;
during the policy period.

14. **Insured** means:

a.  **You** and residents of **your** household who are:
(1)  **Your** relatives; or
(2)  Other persons under the age twenty-one (21) and in the care of **you** or **your** relatives.
b.  A student enrolled in school full-time, as defined by the school, who was a resident of **your** household before moving out to attend school, provided the student is under the age of:
(1)  Twenty-six (26) and **your** relative; or
(2)  Twenty-one (21) and in **your** care or the care of **your** relative.

Under Section II, **insured** also means:

c.  With respect to animals or **watercraft** to which this policy applies, any person or organization legally responsible for these animals or **watercraft** which are owned by **you** or any person included in 14.a. or 14.b. above. **Insured** does not mean a person or organization using or having custody of these animals or **watercraft** in the course of any **business** or without consent of the owner.
d.  With respect to a **motor vehicle** to which this policy applies:
(1)  Persons while engaged in **your** employ or that of any person included in 14.a. or 14.b. above; or
(2)  Other persons using the vehicle on an **insured location** with **your** consent.

As used throughout the policy and attached endorsements, when the word "an" immediately precedes the word **insured,** the words "an **insured**" together mean one or more **insureds.**

15. **Insured Location** means:

a.  The **residence premises;**
b.  The part of any other premises, structures, and grounds used by  **you** as a residence and shown on the Declarations; also any of these acquired by **you** during the policy period for **your** use as a residence;
c.  A premises **you** use in conjunction with a premises defined in 15.a. or 15.b.;
d.  A part of a premises, not owned by an **insured,** where an **insured** is temporarily living;
e.  Vacant land, other than farm land, owned by or rented to an **insured**;
f.  Land, other than farm land, owned by or rented to an **insured** on which a one, two, three or four-family dwelling is being built as a residence for an **insured**;
g.  Individual or family cemetery plots or burial vaults of an **insured**; or
h.  A part of a premises rented on occasion to an **insured** for purposes other than **business.**

16. **Motor Vehicle** means:

a.  Self propelled land or amphibious vehicle; or
b.  Any trailer which is being carried on, towed or hitched for towing by a vehicle described in 16.a. above.

17. **Residence Premises** means:

a.  The one-family dwelling where **you** reside;
b.  The two-, three- or four-family dwelling where **you** reside in at least one of the family units;
c.  That part of any other building where **you** reside and which is shown as the **residence premises** in the Declarations; or
d.  The dwelling, at that location shown as the **residence premises** in the Declarations as rented or held for rental to others.

**Residence premises** also includes other structures and grounds at that location.

18. **Watercraft** means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

## *Section I—Property Coverages*

## *Coverage Agreements*

**We** cover all risk of direct physical loss to property described in Coverages A, B and C except for losses excluded or excepted from coverage in this policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

**COVERAGE A—DWELLING**

1. **We** cover:

   a. The dwelling on the **residence premises** used mainly as **your** private residence including attached structures.
   b. The dwelling on the **residence premises** when rented or held for rental, when an additional premium for non-owner occupancy is shown on the Declarations.
   c. Materials or supplies on or adjacent to the **residence premises** for use in construction, alteration or repair of:
      (1) The dwelling; or
      (2) Coverage B—Other Structures.

2. **We** do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

**COVERAGE B—OTHER STRUCTURES**

1. **We** cover other structures on the **residence premises.** They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

2. **We** do not cover:

   a. Other structures used in whole or in part for **business** purposes.
   b. Other structures rented or held for rental to anyone, other than a tenant of the dwelling, unless used solely as a private garage.
   c. Land, including land on which the structure is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

**COVERAGE C—PERSONAL PROPERTY**

1. **We** cover personal property owned or used by an **insured** while it is anywhere in the world. At **your** request, **we** will cover personal property owned by others while it is on the part of the **residence premises** occupied by an **insured.** This extension of coverage does not increase the limit of liability.

2. **Our** limit of liability for personal property normally located at an **insured's** residence other than the **residence premises** is ten percent (10%) of the highest limit of liability for Coverage C applicable under this or any other policy issued by **us** or an affiliate company which provides coverage for **your** personal property. No coverage under this provision is afforded to the perils of Wind or Earthquake. This ten percent (10%) limitation does not apply to personal property:

   a. Removed from the **residence premises** because:
      (1) Of a covered loss; or
      (2) The **residence premises** is being repaired, renovated or rebuilt and it cannot be lived in or the property cannot be stored in it; or
   b. In transit to and from, or while in a newly acquired principal residence for sixty (60) days. The sixty (60) days start right after **you** begin to move the property.

**SPECIAL LIMITS OF LIABILITY**

Certain property is subject to special limits which do not increase the Coverage C limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

The following special limits apply only to items lost, misplaced or stolen:

1. $10,000 for jewelry, watches, and precious and semi-precious stones.

2. $5,000 for furs.

3. $5,000 for guns, including accessories.

4. $10,000 for silverware, silver-plated ware, goldware, gold-plated ware, platinum ware, platinum-plated ware and pewter ware. This includes, but is not limited to, flatware, hollowware, tea sets, trays and trophies made of or containing silver, gold or pewter.

The following special limits apply to all covered losses:

5. $1,500 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinum ware, stored value cards, smart cards and gift certificates.

6. $5,000 for securities, accounts, bills, deeds, documents, including personal records, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, scrip and tickets.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

7. $5,000 for collectible stamps, coins and medals. The limits in 6. and 7. above:

    a. Apply no matter the medium, such as paper or computer software, on which the material exists;

    b. Include costs to research, replace, reconstruct or restore information from the lost or damaged material; and

    c. Apply only when such property is located outside of a bank vault or bank safe deposit box.

8. $25,000 for property, on the **residence premises,** primarily used for **business** purposes.

9. $10,000 for property, away from the **residence premises,** primarily used for **business** purposes.

10. $2,000 for **watercraft** and outboard motors, including trailers, furnishings and equipment.

11. $3,000 for utility type trailers not used with **watercraft.**

The following special limit applies only to breakage losses:

12. $50,000 for crystal, china, porcelains, figurines, statuary, sculptures, mirrors, wine bottles, glassware and similar items.

## PROPERTY NOT COVERED

**We** do not cover:

1. Articles separately described and specifically insured in this or any other insurance.

2. Animals, birds or fish.

3. House or travel trailers.

4. **Motor vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

    a. Their parts or equipment, whether attached to or separated from the **motor vehicle** or motorized land conveyance;

    b. Accessory equipment; or

    c. Any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment.

    **We** do cover vehicles or conveyances not subject to **motor vehicle** registration which are:

    a. Used solely to service the **insured's** residence;

    b. Designed to assist the handicapped;

    c. Designed as a toy vehicle for use by children under seven years of age, powered by one or more batteries, and not built or modified after manufacture to exceed a speed of five miles per hour on level ground; or

    d. A motorized golf cart while being operated:

        (1) To or from, or on the premises of a golf course; or

        (2) Within the legal boundaries of the residential community, governed by an **association** of property owners, in which the **insured's** residence is located. This includes public roads within the residential community provided that a motorized golf cart can legally travel such roads.

5. **Aircraft** and parts.

6. Property of roomers, boarders, and other tenants except personal property at the **residence premises,** belonging to roomers and boarders related to an **insured**.

7. Property in an apartment regularly rented or held for rental to others by an **insured,** except to the extent provided in Section I—Additional Property Coverages, Landlord's Furnishings.

8. Property rented or held for rental to others away from the **residence premises.**

9. **Hovercraft** and parts.

10. **Business** data, including such data stored in or on:

    a. Books of account, drawings or other paper records; or

    b. Computers and related equipment.

    **We** do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

11. Contraband and property secured or transferred in the course of illegal trade.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

**COVERAGE D – LOSS OF USE**

1. **We** cover: a. **Additional Living Expense**, b. **Fair Rental Value** and c. **Prohibited Use** as follows:

   a. **Additional Living Expense.** If a covered loss makes that part of **your residence premises** where **you** reside not fit to live in, **we** cover the reasonable increase in **your** normal living expenses that is necessary to maintain **your** household's usual standard of living, including the kenneling of domestic animals not primarily owned or kept for **business** use. **We** cover this increase for the reasonable amount of time required to restore **your residence premises** to a habitable condition, or if **you** or members of **your** household permanently relocate, the shortest amount of time required to settle elsewhere.

   b. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental not fit to live in, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will be for the actual loss sustained or twenty four (24) months from the date of loss, whichever occurs first. This period of time is not limited by the end of the policy period.

   c. **Prohibited Use.** If a civil authority prohibits **your** use of the **residence premises** because of direct damage to neighboring premises by a covered cause of loss, **we** will pay the resulting loss, for up to thirty (30) consecutive days while use is prohibited, for:

      (1) Additional Living Expense; and

      (2) Fair Rental Value.

2. **You** must inform us of **your** decision regarding whether **you** intend to repair or replace the damage or permanently relocate within six (6) months from the date the loss is reported to **us**. Construction must begin within twelve (12) months from the date of loss. In order for Coverage D, Loss of Use, to apply, **you** must comply with these timelines unless a later date is agreed to by **us**.

3. **We** do not cover loss or expense due to cancellation of a lease or agreement.

4. This coverage does not apply to an **insured's business,** whether conducted on or off any **insured location.**

5. No deductible applies to this coverage.

## *Additional Property Coverages*

These additional property coverages are subject to the policy deductible, exclusions, conditions and any special limit of liability that may apply to the property except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal**

   a. **We** will pay reasonable expense **you** incur removing  debris of:

      (1) Covered property, if arising from a covered cause of loss; or

      (2) Ash, dust or particles from a volcanic eruption that causes direct loss to a covered building or covered property inside a building.

   b. **We** will also pay, up to a maximum of, $2,500 for the reasonable expense **you** incur, for the removal from the **residence premises** tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet, provided the tree(s):

      (1) Damage(s) a covered structure;

      (2) Does not damage a covered structure, but:

         (a) Block(s) a driveway on the **residence premises** which prevents a **motor vehicle,** that is registered for use on public roads or property, from entering or leaving the **residence premises;** or

         (b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   c. This coverage is additional insurance.

2. **Reasonable Repairs**

   a. **We**  will pay reasonable cost  **you** incur for necessary repairs made solely to protect covered property from further damage, if arising from a covered cause of loss.

   b. Actions taken to repair other damaged property will be covered only if the other property is also covered under the policy and that other property was damaged by a covered cause of loss. These expenses are included in the limit of liability applying to the damaged property.

   c. This coverage does not relieve **you** of **your** duties, in case of a covered loss to covered property, described in Your Duties After Loss under Section I - Property Conditions.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

3. **Trees, Shrubs, Plants, and Lawns**

    a. **We** cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils:

        (1) Fire or lightning;
        (2) Explosion;
        (3) Riot or civil commotion;
        (4) **Aircraft;**
        (5) Vehicle not owned or operated by a resident of the **residence premises;**
        (6) Vandalism or malicious mischief;
        (7) **Collapse** of a building; or
        (8) Theft.

    b. Liability is limited to five percent (5%) of the Coverage A—Dwelling limit of liability, for all trees, shrubs, plants and lawns. It is limited to $2,500 for one tree, shrub or plant. This coverage applies only if the damaged property is replaced or repaired within one hundred eighty (180) days of the loss.

    c. **We** do not cover property grown for **business** purposes or that are part of, or a continuation of, a forest including national forest or wildlife preserve.

    d. This coverage is additional insurance.

4. **Fire Department Service Charge**

    a. **We** will pay up to the amount stated on the Declarations for **your** liability assumed under contract, agreement, ordinance, or statute for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered cause of loss.

    b. No deductible applies to this coverage.

5. **Property Removed**

    a. Covered property removed from a premise because it is in danger from a covered cause of loss is covered for direct loss and for no more than ninety (90) days. After ninety (90) days, property removed will be subject to the provisions under Coverage C – Personal Property, Paragraph 2.

    b. This does not change the coverage limit.

6. **Credit Card, Counterfeit Money, Electronic Fund Transfer Card, Access Device and Forgery Coverage**

    a. **We** will pay up to the amount stated on the Declarations for:

        (1) The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards (including electronic fund transfer cards or access devices) issued to or registered in an **insured's** name. However, **we** do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

        (2) Loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.

        (3) Loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

    b. All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

    c. **We** do not cover loss arising out of:

        (1) The **business** pursuits or dishonesty of an **insured**; or

        (2) Identity theft or identity fraud, including a covered act as outlined in subsections a., b., or c. of this section.

    d. This coverage is additional insurance. No deductible applies to this coverage.

    e. **We** may make any investigation and settle any claim or suit as **we** decide is appropriate. **Our** obligation to defend a claim or **suit** ends when the amount **we** pay for the loss equals our limit of liability.

    f. If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, **we** will provide defense at our expense by counsel of **our** choice.

    g. **We** may defend at **our** expense an **insured** or an **insured's** bank suit for the enforcement of payment under the forgery coverage.

    h. **Our** duty to defend does not apply to identity theft or identity fraud.

7. **Loss Assessment**

    a. **We** agree to pay **your** share of an assessment, as owner or tenant of the **residence premises**, charged against all members of the **association.** They must have common property interest with **you.** The common property must be part of the housing development in which the **residence premises** is located and where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment.

    b. The assessment must be the result of a direct loss to property collectively owned by the **association.** It must

CRESTBROOK INSURANCE COMPANY

be caused by a covered cause of loss under Coverage A—Dwelling of this policy, other than earthquake, volcanic eruption, or land shock waves or tremors before, during or after a volcanic eruption.

c. The limit shown is the most **we** will pay for any one loss event, regardless of the number of assessments made relating to that loss event. **We** will only apply one deductible, per building or structure, to the total amount of any one loss to the property described above, regardless of the number of assessments. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your association's** insurance.

d. This coverage is excess over other valid and collectible insurance covering the **association.**

e. **We** do not cover loss assessments charged against **you** or a corporation or **association** of property owners by any governmental body.

f. This coverage is additional insurance.

8. **Inflation Protection Coverage**

a. **We** may adjust the limit of liability on the Declarations for Section I—Coverages upon renewal of **your** policy. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

b. This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9. **Collapse**

a. **We** cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure.

b. For this coverage to apply, the **collapse** must be sudden and accidental and caused by any one of the following:

   (1) Decay that is hidden from view, unless the presence of such decay is known to an **insured** prior to **collapse;**

   (2) Insect or animal damage that is hidden from view, unless the presence of such damage is known to an **insured** prior to **collapse**;

   (3) Weight of contents, equipment, animals or people;

   (4) Weight of rain or snow which collects on a roof;

   (5) Use of defective material or methods in construction, remodeling or renovation if the **collapse** occurs during the course of the construction, remodeling or renovation; or

   (6) Any other cause of loss not excluded.

c. Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **foundation,** retaining wall, bulkhead, pier, wharf, or dock is not included unless the loss is a direct result of the **collapse** of a building.

d. This coverage does not increase the limit of liability applying to the damaged property.

10. **Biological Deterioration or Damage Clean Up and Removal**

a. In the event that a covered cause of loss results in **biological deterioration or damage** to property covered under Coverages A, B, or C, **we** will pay, up to the amount shown on the Declarations, for:

   (1) The cost to clean up, remove and dispose of the **biological deterioration or damage** to covered property;

   (2) The cost to tear out and replace any part of the building or other covered property needed to gain access to the **biological deterioration or damage;**

   (3) The cost of testing which is performed in the course of clean up and removal of the **biological deterioration or damage** from the **residence premises;** and

   (4) Additional living expenses **you** may incur, as outlined under Coverage D, that results from this coverage.

b. The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will pay for all loss or costs payable under this coverage. Such costs are payable only if **you** report the **biological deterioration or damage** to **us** within one hundred eighty (180) days of having first discovered the **biological deterioration or damage.**

c. The covered cause of loss that causes or results in **biological deterioration or damage** to covered property must have occurred during the policy period.

d. This is an additional amount of coverage.

11. **Landlord's Personal Property**

a. When there is an apartment on the **residence premises** that is regularly rented or held for rental to others by an **insured, we** will pay up to ten percent (10%) of the Coverage A—Dwelling limit of liability for loss to **your** appliances, carpeting and other household furnishings resulting from a covered cause of loss. This limit applies separately to each apartment on the **residence premises** and is the most **we** will pay regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

b. This coverage does not increase the limit of liability applying to the damaged property.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

12. **Grave Markers**

   a. **We** will pay up to $5,000 for grave or mausoleum markers located on or away from the **residence premises** for loss caused by a covered cause of loss.

   b. This coverage does not increase the limits of liability that apply to the damaged covered  property.

13. **Lock Replacement**

   a. **We** will pay the reasonable expense up to $1,000 to replace or rekey the exterior door locks on **your residence premises.** This coverage applies only if the keys to **your residence premises** are stolen. **You** must notify **us** within seventy-two (72) hours of discovering  the keys have been stolen.

   b. No deductible applies to this coverage.

14. **Ordinance or Law**

   a. For covered causes of loss to property covered under Coverage A—Dwelling and Coverage B—Other Structures, settlement will be based on enforcement of any ordinance or law regulating the:

     (1) Construction;

     (2) Repair;

     (3) Renovation;

     (4) Remodeling; or

     (5) Demolition of the damaged building or other structure.

   b. The damaged or destroyed building or other structure must be repaired or replaced at the **residence premises.**

   c. The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A—Dwelling limit of liability shown on the Declarations.

   d. **Special Exclusions Applicable to Ordinance or Law**

     **We** will not pay costs:

     (1) Required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure.

     (2) Resulting from the enforcement of any ordinance or law requiring the:

       (a) Testing for;

       (b) Monitoring;

       (c) Clean up;

       (d) Removal;

       (e) Containment;

       (f) Treatment;

       (g) Detoxifying;

       (h) Neutralizing, or

       (i) Responding in any manner or assessing any effects of:

       **contamination or pollution in** or on the dwelling or other structures.

     (3) Resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure. However, this exclusion, d.(3), does not apply:

       (a) When it is necessary to remodel, remove or replace a portion of the undamaged building structure in order to complete repairs, replacement or remodeling of the damaged portion of the covered building structure; or

       (b) If the total damage to the covered building structure is more than fifty percent (50%) of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

15. **Data Restoration**

   a. **We** will pay up to a total of $5,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease.

   b. Lost personal data must be the result of a covered loss and not related to a **business.**

16. **Refrigerated Food**

   a. **We** will pay for loss to food or up to $5,000 for wine in a freezer or refrigeration  unit due to temperature changes caused by:

     (1) A power interruption on or off the **residence premises;** or

     (2) Mechanical breakdown of the freezer or refrigeration unit.

   b. This coverage does not increase **our** limit of liability.

   c. No deductible applies to this coverage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

17. **Land**

    a.  If, as a result of a covered loss to the Coverage A—Dwelling or a building structure covered under Coverage B—Other Structures, the land immediately surrounding the dwelling or building structure requires excavation, replacement or stabilization, **we** will pay up to ten percent (10%) of the amount of loss of the dwelling or building structure for the excavation, replacement or stabilization of land expenses.

    b.  This coverage is additional insurance.

18. **Incidental Business Property**

    **We** will pay up to $10,000 for loss to covered property used in connection with an **incidental business** conducted on the **residence premises.**

19. **Damage Caused by Domestic Animals**

    **We** will pay up to $5,000 for direct physical loss to covered property when such loss is caused by a domestic animal that **you** own.

20. **Arson Reward**

    a.  **We** will pay up to a total of $5,000 for information that results in an arson conviction associated with a fire loss to property covered by this policy. This is the most **we** will pay regardless of the number of persons providing information.

    b.  This is additional coverage.

## *Property Exclusions*
### (Section I)

1.  Unless noted otherwise, **we** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    a.  Earth Movement and Volcanic Eruption. However, resulting direct loss by fire, explosion or theft is covered.

        (1)  Earth movement means earth movement due to natural or unnatural causes, including:

            (a)  Subsidence or sinkhole;

            (b)  Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

            (c)  Landslide, mudslide or mudflow; or

            (d)  Earth shifting, rising or sinking.

        (2)  Volcanic eruption means eruption, explosion or discharge from a volcano.

    b.  Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered. Water and water-borne material damage means, regardless of whether caused by any act of nature, human or animal forces, or any other cause:

        (1)  Flood, surface water, waves, tidal water, overflow of water from a body of water, or water borne material from any of these or spray from any of these, even if driven by wind, including storm surge;

        (2)  Run off of water or water-borne material from a paved surface, driveway, walkway, patio, or other similar surface; or spray from any of these, even if driven by wind; including storm surge; or

        (3)  Water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **foundation,** swimming pool, or other structure.

        However, this exclusion does not apply to:

        (1)  Resulting direct loss by fire, explosion or theft is covered unless otherwise excluded; or

        (2)  Personal property away from the residence premises and not located at another residence owned by an **insured**.

    c.  Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered cause of loss.

    d.  War including the following and any consequence of any of the following:

        (1)  Undeclared war, civil war, insurrection, rebellion or revolution;

        (2)  Warlike act by a military force or military personnel; or

        (3)  Destruction, seizure or use for a military purpose.

        Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

    e.  Nuclear Hazard. However, resulting direct loss by fire is covered.

        (1)  Nuclear Hazard means any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these.

        (2)  Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

CRESTBROOK INSURANCE COMPANY

f.  Intentional Acts. **We** do not provide  coverage for any loss resulting from an act committed by or at the direction of an **insured** that may reasonably be expected to result from such acts; or is the intended result from such acts. Intentional acts include criminal acts.

g.  **Collapse,** except as provided by Section I—Additional Property Coverages—Collapse.

h.  **Contamination or pollution.** However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

i.  **Government acts,** meaning any loss caused by seizure, destruction, or confiscation by order of any government or public authority. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

j.  **Biological deterioration or damage,** except as provided by Section I—Additional Property Coverages— Biological Deterioration or Damage Clean Up and Removal. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

k.  Tsunami, meaning loss resulting from a tsunami caused by, but not limited to, any of the following:
    (1)  Earth movement, including:
        (a)  Earthquake;
        (b)  Volcanic eruption;
        (c)  Avalanche, rock or ice falls;
        (d)  Landslides; or
        (e)  Subsidence;
        whether occurring above or below sea level;
    (2)  Asteroids or meteorites; or
    (3)  Nuclear explosion.

l.  Diminution of value. Diminution of value includes, but is not limited to, damages for any perceived or actual reduction in the market value of any property.

m.  Power failure, meaning the failure of power or other utility services if the failure takes place off the **residence premises.** However, if the failure of power or other utility services results in a loss on the **residence premises** from a covered cause of loss under this policy, **we** will pay for the loss or damage to covered property caused by the covered cause of loss. This exclusion does not apply to Section I—Additional Property Coverages, Refrigerated Food.

n.  Computer error, meaning loss caused by an error in the operating programs or instructions.

o.  A fault, weakness, defect or inadequacy in the:
    (1)  Specifications, planning, zoning;
    (2)  Design, workmanship, construction, materials;
    (3)  Surveying, grading, backfilling;
    (4)  Development or maintenance;
    of any property on or off the **residence premises,** whether intended or not.
    However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

p.  Acts  or decisions  of any person,  group,  organization  or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

q.  Weather, Temperature or Humidity. Weather conditions include changes in temperature or humidity. This exclusion does not apply to:
    (1)  Direct loss caused by lightning, rain, sleet, snow or hail; or
    (2)  Ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy.

r.  Freezing or thawing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household  appliance,  or by  discharge,  leakage  or overflow from within the system or appliance caused by freezing. For purposes of this provision, a plumbing system or household appliance does not include a sump, sump  pump  or related  equipment  or a  roof drain,  gutter,  downspout or similar fixtures or equipment. This exclusion does not apply:
    (1)  To ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy.
    (2)  If  the dwelling  has been  vacant or  unoccupied for less than 30 consecutive days  or **you**  have used reasonable care to:
        (a)  Maintain heat in the building; or

CRESTBROOK INSURANCE COMPANY

(b)  Shut off the water supply and drain all systems and appliances of water.
However, if the building is protected by an automatic fire sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

s.  Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:
(1)  Fence, pavement, patio, tennis court, hot tub or spa, septic system, or swimming pool;
(2)  **Foundation,** retaining wall, or bulkhead; or
(3)  Pier, wharf, bridge, or dock.
However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

t.  Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from a:
(1)  Heating, air conditioning or automatic protective sprinkler system;
(2)  Household appliance;
(3)  Plumbing system; or
(4)  Water, steam or sewer pipes, or storm drains located off the **residence premises.**
A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained from the **foundation** area. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered. In addition, if loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

u.  Theft in or to a dwelling under construction or of material and supplies for use in the construction until the dwelling is completed and occupied.

v.  Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than thirty (30) consecutive days immediately before the loss and **we** have not been notified of such vacancy. A dwelling under construction is not considered vacant. This exclusion applies to Coverages A and B only. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

w.  Loss caused by any birds, animals, rodents or insects, including nesting or infestation, or discharge or release of waste products or secretions. Resulting breakage of glass constituting a part of a covered building is covered. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

x.  Loss caused by any animals owned or kept by an **insured.** However,  this exclusion does not apply to:
(2)  Any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy;
(2)  Coverage provided under Additional Property Coverage, Loss Caused by Domestic Animals; or
(3)  Resulting breakage of glass constituting a part of a covered building.

y.  Gradual or Sudden Loss due to:
(1)  Wear and tear, marring, deterioration;
(2)  Inherent vice, latent defect, mechanical breakdown;
(3)  Smog, rust;
(4)  Smoke from agricultural smudging or industrial operations;
(5)  Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or
(6)  Root growth, movement or action.
If any of these items cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, **we** cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped. However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered.

z.  Ordinance or Law, meaning any ordinance or law:
(1)  Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris;
(2)  The requirements of which result in a loss in value to property; or
(3)  Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **contamination or pollution.**
This exclusion applies whether or not the property has been physically damaged. It does not however apply to coverage that may be provided for in Ordinance or Law under Section I—Additional Property Coverages.

2.  **We** do not cover loss to property described in Coverage  C resulting directly from any of the following:

a.  Humidity or extremes of temperatures unless the direct cause of loss is rain, snow, sleet or hail.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

   b. Damage caused by repairing, restoration or retouching. This exclusion does not apply to jewelry, watches and furs.

   c. Collision, except that occurring with a **motor vehicle**.

   d. Sinking, swamping or stranding of **watercraft,** including their outboard motors, furnishings and equipment.

   e. Misappropriation or theft of an **insured's** personal property by another **insured.**

   f. Failure of a wine cellar or storage unit's climate control system resulting in a loss to wine due to temperature change. The failure of the climate control system must be caused by a power interruption resulting from a brownout or blackout.

## *Property Conditions*
**(Section I)**

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

   a. To the **insured** for more than the **insured's** interest at the time of loss.

   b. For more than the limit of liability.

2. **Deductible.**

   a. The deductible amount shown on the Declarations that applies to coverages included in the policy or endorsements attached to this policy and that is applicable to a covered loss is the amount of loss paid by the **insured.** Different deductible amounts may apply to different causes of loss. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount and subject to the applicable limit of liability.

   b. In the event that a covered loss to the dwelling equals or exceeds the Coverage A—Dwelling limit of liability **we** will waive up to $50,000 of the deductible amount. **Your** deductible will be that portion of the applicable deductible above $50,000.

   c. This waiver of deductible does not apply to:

     (1) Special deductibles for wind, hurricane, hail, or earth movement including earthquake and volcanic eruption; or

     (2) Separate coverage deductibles contained within policy provisions or shown on the Declarations.

   d. However, when **your** dwelling is empty of personal property necessary to sustain normal living for more than thirty(30) consecutive days prior to a loss covered by this policy, and **you** have not given **us** notice of **your** removal of such personal property, the waiver of the policy deductible does not apply. The following deductible condition applies:

     (1) In the event of a covered  loss, the deductible will be the greater of:

       (a) The Section I Deductible as shown on the Declarations;

       (b) Five percent (5%) of the Coverage A—Dwelling limit of liability at the time of loss; or

       (c) The deductible applicable to the cause of loss.

3. **Your Duties after Loss.**  In case of a loss to covered property, **we** have no duty to provide coverage under this policy if **you or** any **insured** seeking coverage  fail to comply with the following duties;

   a. Give prompt notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company.

   b. Protect the property from further damage. You must make repairs required to protect the property and also keep a record of repair expenses.

   c. As often as **we** reasonably require:

     (1) Show **us** the damaged property;

     (2) Provide records and documents **we** request and permit **us** to make copies;

     (3) Make statements to **us**, including recorded interviews; and

     (4) Submit to examinations under oath and sign same. At your or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

   d. Submit to **us,** within sixty (60) days after **we** request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

     (1) The time and cause of loss.

     (2) Interest of the **insured** and all others in the property involved  and all liens on the property.

     (3) Other insurance that may cover the loss.

     (4) Changes in title or occupancy of the property during the term of the policy.

     (5) Specifications of any damaged property and detailed estimates for repair of damage.

     (6) A list of damaged personal property showing in detail the quantity, description, **actual cash value,** and amount of loss. Attach all bills and receipts that support the figures.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

    (7) Receipts for additional living expenses and records supporting the fair rental value loss.

    (8) Evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

    (9) Evidence or affidavit supporting a claim under the Identity Theft or Identity Fraud Coverage. It should include bills, receipts, or other records that support a claim for expenses under the coverage. It should state the amount and cause of loss.

  e. Cooperate with **us** in the investigation of a claim.

4. **Loss Settlement. We** will pay for covered losses up to the applicable limit of liability subject to the terms below:

  a. Covered losses to **your** property under Coverage A—Dwelling will be paid as follows:

    (1) **We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations. However, in the event of a covered loss to the Dwelling that occurs during construction of additions or renovations **we** will pay no more than **actual cash value** or the limit of liability, whichever is less, if:

      (a) The construction or renovation increases the replacement cost of the Dwelling more than five percent (5%) or $500,000, whichever is less, or

      (b) At the time of loss **you** have not occupied the Dwelling for more than thirty (30) consecutive days due to construction or renovation.

    This limitation does not apply if, prior to a loss, **you** have notified us of such construction or renovation and **we** have provided **you** with **our** written consent.

    (2) **You** agree to:

      (a) Insure **your** Dwelling to at least one hundred percent (100%) of its replacement cost as determined by **our** replacement cost estimation or an inspection authorized by **us.**

      (b) Repair or replace the Dwelling with materials of like kind and quality on the **residence premises**; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

      (c) Promptly notify **us** of a renovation that increases the replacement cost of the Dwelling or Other Structure more than five percent (5%) or $500,000, whichever is less.

      (d) Notify **us** prior to the start of a renovation which will cause **your** Dwelling to be:

        (i) Vacant; or

        (ii) Not occupied by **you** for more than thirty (30) days.

      (e) Accept annual adjustments due to Inflation Protection Coverage and pay any additional premium.

    (3) If a change in the amount of coverage for **your** Dwelling is made, the limit applying to Coverage C—Personal Property will be adjusted proportionally.

  b. Under Coverage B—Other Structures:

    (1) **We** will pay the cost of repair or replacement, without deduction for depreciation and up to the limit of liability shown on the Declarations.

    (2) However, in the event of a covered loss to an other structure that occurs during construction or renovation of such structure increases the replacement cost by more than five percent (5%) or $500,000, whichever is less, **we** will pay **actual cash value**:

      (a) Unless **you** have notified **us** prior to the loss of such construction or renovation; and

      (b) **We** have provided **you** with **our** written consent.

  c. Under Coverage C—Personal Property:

    (1) **Our** limit of liability for loss shall be the lesser of:

      (a) The cost, at the time of loss, of a new article identical to the one damaged or stolen. When a new article is no longer available the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness;

      (b) Full cost of repair; or

      (c) Any special limits of liability described in this policy or attached by endorsement.

    (2) **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of:

      (a) Repair cost;

      (b) The cost, at the time of loss, of a new article identical to the one damaged or stolen. When a new article is no longer available the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness; or

      (c) Any special limit of liability that applies.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

If **you** later decide to repair or replace those items, **you** may make an additional claim within twelve (12) months after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the twelve (12) months, but payment will not be made until proof of repair or replacement is provided to **us.** This condition does not apply to:

(a)  Manuscripts, antiques or fine arts, which by their inherent nature cannot be replaced with new articles;
(b)  Memorabilia, souvenirs, collectors' items, and other similar items whose age and history contribute substantially to their value;
(c)  Property not maintained in good or workable order; or
(d)  Property which is obsolete or useless to **you** at the time of loss.

5.  **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

a.  At **our** option, **we** may repair or replace any part of the damaged property with equivalent property, providing  **we** give **you** written notice within sixty (60) days after receiving **your** signed, sworn proof of loss.
b.  **We** will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within sixty (60) days after **we** receive **your** proof of loss and:
(1)  Reach agreement with **you;**
(2)  There is an entry of a final judgment; or
(3)  There is a filing of an appraisal award with **us.**
c.  After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of recovered  property. **You** must protect these rights and inform **us** of any value of such property.
d.  After **we** have paid for a loss, **we** have the right to all or part of any salvageable property. **We** may permit **you** to keep the damaged property but  **we**  will reduce the amount of the loss paid to **you** by the value of the retained property.
e.  After **we** have paid for loss to covered property, **we** may reduce any payment due for any subsequent loss for damage to the same covered property, unless  **you** have furnished **us** with proof that the prior damage has been repaired.

6.  **Appraisal.**

a.  If **you** and **we** fail to agree on the amount of loss, either can request that the amount be set by appraisal. If either makes a written request for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written request. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within fifteen (15) days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.
b.  The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.** Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve. This is not a provision providing for or requiring arbitration.
c.  The appraisers and umpire are only authorized to determine the **actual cash value,** replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us.** The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us.** This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us.**

7.  **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

a.  Other insurance, the insurance provided by this policy is excess over any other insurance providing coverage for the loss; or
b.  A service agreement, the insurance provided by this policy is excess over any such agreement.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

For purposes of this condition, "service agreement" means:

a. A service plan;
b. Property restoration plan;
c. Home or appliance warranty; or
d. Other similar service warranty; even if it is described as insurance.

8. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within two years after the date of loss or damage.

9. **Abandonment of Property. We** need not accept property abandoned by an **insured.**

10. **Mortgage Clause.**

a. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and **you,** as interests appear. The word "mortgagee" includes trustee.
b. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
c. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   (1) Notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;
   (2) Pays premium due under this policy on **our** demand, if **you** neglected to pay the premium; and
   (3) Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so.
d. Policy conditions relating to **your** Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.
e. If **we** cancel the policy, **we** will notify the mortgagee at least ten (10) days before the cancellation takes effect.
f. If **we** pay the mortgagee for loss and deny payment to **you:**
   (1) **We** are subrogated to all the rights of the mortgagee granted under the mortgage on the property.
   (2) At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee. We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

12. **Glass Replacement. We** will replace covered glass using safety-glazing materials when required by ordinance or law.

13. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a seventy-two (72) hour period will be considered as one volcanic eruption.

14. **Policy Period.** This policy applies only to loss which occurs during the policy period.

## *Section II—Liability Coverages*

### ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. **Bodily Injury** means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. **Employee** means an **employee** of an **insured** other than a **residence employee.** It includes an **employee** leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm. Such **employees** perform duties other than those performed by a **residence employee.**

3. **Occurrence** means:

a. An accident, including continuous or repeated exposure to the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**; or
b. Act or series of acts of the same or similar nature that occurs during the policy period and which results in personal injury.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

4. **Personal Injury** means:

   a. False arrest, false imprisonment, wrongful eviction, wrongful entry;
   b. Wrongful detention or malicious prosecution;
   c. Libel, slander, defamation of character, or invasion of rights of privacy;
   d. Shock, emotional distress or mental injury; or
   e. Assault and battery when committed with the intent of protecting persons.

5. **Professional Services** includes but is not limited to:

   a. Legal, accounting or advertising services;
   b. Preparing, approving, or failing to prepare or approve:
      (1) Maps;
      (2) Drawings;
      (3) Opinions;
      (4) Reports;
      (5) Surveys;
      (6) Change orders;
      (7) Designs; or
      (8) Specifications;
   c. Supervisory, inspection, engineering, or architectural services;
   d. Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
   e. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;
   f. Optometry or optical or hearing aid services, including but not limited to the prescribing, preparing, fitting, demonstrating or distributing of ophthalmic lenses and similar products or hearing aid services;
   g. Body piercing services;
   h. Pharmacological services; and
   i. Any other health or therapeutic service, treatment, advice or instruction.

6. **Property Damage** means physical injury to or destruction of tangible property. This includes its resulting loss of use.

7. **Residence Employee** means:

   a. An **employee** of an **Insured** who performs duties in connection with maintenance or use of the **residence premises.** This includes household or domestic services or similar duties performed elsewhere not in connection with the **business** of an **insured.**
   b. An **employee** leased to an **insured** by a labor leasing firm, under an agreement with an **insured,** to perform such duties.

   **Residence employee** does not include a temporary **employee** that substitutes for a permanent **residence employee** on leave or to meet seasonal or short-term workload conditions.

8. **Suit** means a civil proceeding in which damages because of an **occurrence** to which this insurance applies are alleged. **Suit** includes, but is not limited to:

   a. An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or
   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

## *Coverage Agreements*

**COVERAGE E—PERSONAL LIABILITY** under Section II—Liability Coverages

1. **We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from:

   a. Negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property at an **insured location**; and
   b. Other personal activities anywhere in the world, unless stated otherwise or an exclusion applies.

2. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or **suit. Our** duty to defend a claim or **suit** ends when the amount **we** pay for damages equals **our** limit of liability.

3. This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over this policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

## COVERAGE F—MEDICAL PAYMENTS TO OTHERS

1.  **We** will pay the reasonable and necessary medical and funeral expenses incurred within three years after an accident  causing **bodily injury.** This coverage does not apply to:

    a.  **You;**
    b.  Regular residents of **your** household; or
    c.  **Residence employees.**

    Payment under this coverage is not an admission of **our** or an **insured's** liability.

2.  This coverage applies as follows:

    a.  To a person on the **insured location** with consent of an **insured**; or
    b.  To a person off the **insured location,** if the **bodily injury:**
        (1)  Arises out of a condition on the **insured location** or the ways immediately adjoining;
        (2)  Is caused by the activities of an **insured;**
        (3)  Is caused by a **residence employee** of an **insured** arising out of and in the course of employment by an **insured;** or
        (4)  Is caused by an animal owned by or in the care of an **insured**.

3.  **Other Insurance**

    This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

4.  **Conformity to Statute**

    Any terms of this insurance which are in conflict with the applicable Workers' Compensation Law are amended to conform to that law.

## *Additional Liability Coverages*

**We** will pay the following in addition to the limits of liability.

1.  **Claims Expenses. We** will pay:

    a.  Expenses **we** incur and costs taxed against an **insured** in a **suit we** defend.
    b.  Premiums on bonds required in a **suit we** defend. This does not include bond amounts greater than the Coverage  E limit of liability. **We** are not obligated to apply for or furnish a bond.
    c.  Reasonable expenses incurred by an **insured** at **our** request, up to a maximum of $10,000 for assisting **us** in the investigation or defense of a claim or **suit.**
    d.  Post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage  that applies.
    e.  Prejudgment interest awarded against an **insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

2.  **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured.**

3.  **Damage to Property of Others. We** will pay for **property damage** to property of others caused by an **insured** regardless  of legal  liability.  **We**  will pay up to $1,000 per **occurrence,** but not more than the smallest of the replacement cost or the cost to repair the damaged property. **We** will not pay for **property damage:**

    a.  To property covered under Section I.
    b.  Caused intentionally by an **insured** who is age thirteen (13) or older.
    c.  To property owned by or rented to an **insured,** a tenant of an **insured,** or a resident in **your** household.
    d.  Arising out of:
        (1)  **Business** pursuits;
        (2)  An act or omission in connection with a premises owned, rented, or controlled by an **insured,** other than an **insured location**; or
        (3)  The ownership, maintenance, occupancy, operation, use, loading or unloading of a **motor vehicle, aircraft,** or **watercraft.**

        Exclusion 3.d.(3) does not apply to a **motor vehicle** that:
        (a)  Is designed for recreational use off public roads;
        (b)  Is not owned by an **insured**; and
        (c)  At the time of the **occurrence,** is not required by law, or regulation issued by a government  agency, to have been registered for it to be used on public roads or property.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

4. **Loss Assessment.**

   a. **We** agree to pay **your** share of an assessment, as owner or tenant of the **residence premises**, charged against all members of the **association**. They must have common property interest with **you**. The common property must be part of the housing development in which the **residence premises** is located and where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown on the Declarations, in effect at the time of the loss which results in an assessment. **We** will not pay more than $10,000 for any assessment that results from a deductible in **your association's** insurance.

   b. The assessment must be the result of:
      (1) An **occurrence** not excluded from coverage under Section II—Liability; or
      (2) Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:
          (a) Is elected by the members of a corporation or **association** of property owners; and
          (a) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or **association** of property owners.

   c. The limit shown is the most **we** will pay for any one loss event, regardless of the number of assessments made relating to that loss event. An act involving more than one director, officer or trustee is considered to be a single act.

   d. This coverage is excess over other valid and collectible insurance covering the **association.**

   e. **We** do not cover assessments charged against **you** or a corporation or **association** of property owners by any governmental body.

## *Liability Exclusions*
### (Section II)

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to **bodily injury, property damage** or **personal injury:**

   a. Expected or Intended Injury
      **We** do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any **insured** to cause **bodily injury**, **personal injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected. But **we** do cover such damage if the act was intended to protect people or property unless another exclusion applies.

   b. Malicious or Criminal Acts
      **We** do not cover any damages arising out of a willful, malicious, or criminal act or omission by any **insured** whether or not the injuries or damages are actually intended, expected, or foreseeable by a rational person. But **we** do cover such damages if the act was intended to protect people, or property unless another exclusion applies.

   c. Arising out of **business** pursuits of an **insured.** This exclusion applies, but is not limited, to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed or implied to be provided  because of the nature of the **business.** This exclusion does not apply to:
      (1) Activities normally considered non-**business**;
      (2) Volunteer activities related to organized charitable, religious or community groups;
      (3) An office, school, studio, barber or beauty shop on the **residence premises** if noted on the Declarations or endorsement attached to the policy;
      (4) Home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations or endorsement attached;
      (5) **Incidental business** activities; or
      (6) Loss arising out of the physical condition of the **residence premises** and resulting directly from **business** pursuits of an **insured** being conducted on the **residence premises** provided  that:
          (a) Any of the **business'** employees are not subject to workers' compensation or other similar disability laws;
          (b) The **business** does not provides home care services; and
          (c) There is no other valid and collectible insurance.

   d. Arising out of the rental or holding for rental of any part of any premises by an **insured.** Exceptions, if any, are noted on the Declarations or endorsement attached to the policy.
      This exclusion does not apply to the rental or holding for rental of part of **your residence premises:**
      (1) Occasionally for the exclusive use as a residence;
      (2) Unless intended as a residence by more than two roomers or boarders; or
      (3) As a private garage.

   e. Arising out of any **professional services**.

CRESTBROOK INSURANCE COMPANY

f.  Arising out of premises owned or rented to an **insured** but not an **insured location.**
This exclusion does not apply to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured.**

g.  Arising out of the ownership, maintenance, use of, or loading or unloading of; entrustment or the negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of:

(1)  An **aircraft.**

(2)  A **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured.** This exclusion 1.g.(2) above does not apply to:

(a)  A vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location.**

(b)  A motorized golf cart while being operated:

(i)  To or from, or on the premises of a golf course; or

(ii)  Within the legal boundaries of the residential community, governed by an **association** of property owners, in which the **insured's** residence is located. This includes public roads within the residential community provided that a motorized golf cart can legally travel such roads.

(c)  A vehicle not subject to **motor vehicle** registration which is:

(i)  Used to service an **insured's** residence; or

(ii)  Designed for assisting the handicapped.

(d)  A vehicle in dead storage on an **insured location.** Dead storage means physically prepared for long term storage.

(e)  A boat, camp, home or utility trailer not being towed or carried on a **motor vehicle**.

(f)  **Bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured.**

(3  A **watercraft** owned or operated by, or rented or loaned to an **insured:**

(a)  If the **watercraft** is a personal **watercraft** powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than fifty (50) horsepower;

(b)  If it is a sailing vessel, with or without auxiliary power, twenty-six (26) feet or more in overall length;

(c)  While rented to others;

(d)  While being used to carry persons or property for a fee or compensation;

(e)  While being used without an **insured's** permission;

(f)  While being used in an official race or speed test. This exclusion does not apply to sailboats; or

(g)  If it is an airboat, air cushion or similar type **watercraft.**

This exclusion 1.g.(3) does not apply:

(a)  While the **watercraft** is stored;

(b)  When an **insured** rents or borrows a nonowned outboard motor boat for thirty (30) or less consecutive days; or

(c)  To **bodily injury** to any residence employee arising out of and in the course of employment by an **insured.**

(4)  A **hovercraft.**

h.  Caused by an act of terrorism or by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear or biological weapon is a warlike act, even if accidental.

i.  Resulting from an **insured** transmitting a communicable disease.

j.  Arising out of asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos.

k.  Arising out of electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy.

l.  Arising from the exposure to, or ingestion, inhalation or absorption of, lead or lead compounds.

m.  Radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or
other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

n.  Arising out of any **contamination or pollution.** This exclusion also applies to any claims, **suit,** loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **contamination or pollution.** This exclusion however does not apply to **bodily injury** arising out of routine lawn and garden care of an **insured location.**
o.  Resulting from acts or omissions of an **insured** relating directly or indirectly to sexual molestation, corporal punishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.
p.  **Bodily injury** to a person eligible to receive any benefits required to be provided  or voluntarily provided by any **insured** under:
    (1)  A workers' compensation law;
    (2)  An unemployment compensation law;
    (3)  A non-occupational or occupational disease law;
    (4)  Disability benefits law; or
    (5)  Any similar law.
q.  Any **bodily injury** to an employee employed for farming or ranching in violation of law with the knowledge of an **insured.**
r.  Arising out of **biological deterioration or damage.**
s.  Resulting from acts, errors or omissions of an **insured** acting as an officer or member of a board of directors or committee of any corporation or organization. This exclusion does not apply to an **occurrence** resulting from the **insured's** not compensated volunteer activities for a non-profit corporation, or a condominium or cooperative **association** unless excluded elsewhere in this policy or attached endorsement.
t.  Resulting from civic or public activities performed by an **insured** for pay, other than reimbursement of expenses.
u.  Sustained by a person as a result of an offense directly or indirectly related to that person's employment by an **insured,** including wrongful termination of employment.
v.  Resulting from discrimination or harassment, whether actual, alleged or threatened, due to age, race, national origin, gender, religious belief, physical or mental impairment, sexual orientation, or any other discrimination.

2.  Coverage E—Personal Liability does not apply to:

    a.  Liability under any loss assessment contract or agreement except as provided in Section II—Additional Liability Coverages, Loss Assessment and then only up to the limit of liability shown for the coverage.
    b.  Contracts or agreements:
        (1)  Made in conjunction with any **insured's business;**
        (2)  That are oral; or
        (3)  In which the liability of others is assumed after a loss.
    c.  **Property damage** to property owned, produced or distributed by an **insured.** This includes costs or expenses incurred by an **insured** or others at the direction of an **insured** to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured location.**
    d.  **Property damage** to property rented to, occupied or used by, or in the care of an **insured.**
        This exclusion 2.d. does not apply to **property damage:**
        (1)  Caused by fire, smoke, or explosion; or
        (2)  To house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.
    e.  **Bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.
    f.  **Bodily injury** or **personal injury** to an **insured** as defined in Definitions 14.a.and 14.b. This exclusion includes any actions brought against **you** or any other **insured** to repay or pay a portion of damages with another person who may be obligated to pay damages because of **bodily injury** or **personal injury** to an **insured.**

3.  Coverage F—Medical Payments to Others does not apply to **bodily injury:**

    a.  To a **residence employee** if the **bodily injury:**
        (1)  Occurs off the **insured location; and**
        (2)  Does not arise out of or in the course of the **residence employee's** employment by an **insured.**
    b.  To any person eligible to receive benefits voluntarily provided or required to be provided under any:
        (1)  Workers' compensation law;
        (2)  Unemployment compensation;
        (3)  Non-occupational disability law;
        (4)  Occupational disease law;
        (5)  Disability benefits; or
        (6)  similar law;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

   c.  From any:
     (1)  Nuclear reaction;
     (2)  Nuclear radiation; or
     (3)  Radioactive contamination,
     all whether controlled or uncontrolled or however caused, or any consequence of any of these;
   d.  To any person, other than a **residence employee** of an **insured,** regularly residing on any part of the **insured location.**

4.  Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to any **bodily injury** to an **employee** employed for farming or ranching in violation of law with the knowledge of an **insured.**

## Liability Conditions
## (Section II)

1.  Limits of Liability.

   a.  **Our** total liability under Coverage E for all damages resulting from one **occurrence** will not exceed the limit for Coverage E. shown on the Declarations. This is true regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

   b.  **Our** total liability under Coverage  F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage  F shown on the Declarations.

2.  Severability of Insurance.

   This insurance applies separately to each **insured.** This condition does not increase **our** limit of liability for one **occurrence**.

3.  Duties after Loss.

   In case of a loss, **we** have no duty to provide  coverage under this policy if **you or** any **insured** seeking coverage fail to comply with the following duties;

   a.  Give notice to **us** or **our** agent as soon as practicable setting forth:
     (1)  Identity of the policy and **insured.**
     (2)  Time, place, and facts of the accident or **occurrence.**
     (3) Names and addresses of the claimants and witnesses.
   b.  Immediately forward to **us** every document relating to the accident or **occurrence.**
   c.  At **our** request, assist in:
     (1)  Making settlement.
     (2)  Enforcing a right of contribution or indemnity against a person or entity who may be liable to an **insured.**
     (3)  Conducting **suits,** and attending hearings and trials.
     (4)  Giving evidence and asking witnesses to attend.
     (5)  Preserving any tangible property, or evidence, as long as **we** reasonably request.
   d.  Under the coverage—Damage to Property of Others:
     (1)  Submit to **us,** within sixty (60) days after the loss, a sworn proof of loss; and
     (2)  Exhibit the damaged property, if within the **insured's** control.
   e.  The **insured** shall not, except at the **insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **bodily injury.**
   f.  Cooperate with **us** in the investigation of a claim.

4.  Duties of an Injured Person—Coverage F—Medical Payments to Others. The injured person or someone on behalf of the injured person will:

   a.  Give **us** written proof of claim, under oath if required, as soon as possible.
   b.  Authorize **us** to obtain copies of medical reports  records and records.  The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.
   c.  Authorize **us** to speak with any doctor, dentist, or other health care provider who has provided  treatment.

5.  **Suit** Against **us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **insured.** No action with respect to Coverage E can be brought against **us** until the obligation of the **insured** has been determined by final judgment or agreement signed by **us.**

6.  Bankruptcy of an **insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of our obligations under this policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

## *General Policy Conditions*

1. **HOW YOUR POLICY MAY BE CHANGED**

   a. Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.

   b. Any **insured** will automatically have the benefit of any broadening of coverage in this edition of the policy, as of the effective date of the change, provided it does not require more premium.
   This condition, 1.b., does not apply when changes made include both broadening and restrictions in the coverage provided, whether or not such changes are made through a subsequent edition of this policy or by an amendatory endorsement attached to the policy.

   c. A waiver or change of a part of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or inspection does not waive **our** rights.

   d. The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

2. **CONCEALMENT OR FRAUD**

   a. This policy is void as to all **insureds** if you or any other **insured** has concealed or misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy, or caused **us** to issue or renew this policy at a higher premium.

   b. This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:

   (1) Concealed or misrepresented any material fact or circumstance; or

   (2) Committed any fraud or made false statements relating to such loss.

3. **RENEWAL**

   This policy is written for a specific policy period as shown on the Declarations. **We** may renew it for successive policy periods subject to the following conditions:

   a. Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.

   b. All premiums, premium installment payments and fees must be paid when due.

   c. Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us** at least forty-five (45) days before the renewal date of the policy. Proof of mailing will be proof of notice.

   d. **You** agree to an interior inspection of **your** home by one of our representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

4. **NONRENEWAL**

   a. At the end of each policy period, **we** will have the right to refuse to renew this policy.

   b. If **we** elect not to renew, **we** will mail written notice to the first named **insured**, at the address shown in this policy, at least forty-five (45) days before the renewal date of this policy. The reason(s) for nonrenewal will be included. Proof of mailing shall be proof of notice.

   c. For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

5. **CANCELLATION DURING POLICY PERIOD**

   a. Any named **insured** may cancel this policy at any time by returning it to **us** or by notifying **us** orally or in writing of the future date cancellation is to take effect.

   b. **We** may cancel this policy only for the reasons stated below by letting **you** know in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you**, or mailed to **you** at **your** mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   c. When **you** have not paid the premium, **we** may cancel at any time by letting **you** know at least 10 days before the date cancellation takes effect.

   d. When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason by letting **you** know at least 20 days before the date cancellation takes effect.

   e. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel if:

   (1) There has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue the policy, or caused **us** to issue or renew this policy at a higher premium;

   (2) The risk has changed substantially since the policy was issued; or

   (3) The property or other interest has been transferred to another person, unless the transfer is permissible

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

under the terms of this policy.
This can be done by letting **you** know at least 30 days before the date cancellation takes effect.

f.   When this policy is written for a period of more than one year, **we** may cancel for any reason at anniversary by letting **you** know at least 30 days before the date cancellation takes effect.

g.   When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to **us**, **we** will refund it within twenty-five (25) days after **we**:
   (1)   Send the cancellation notice to **you**; or
   (2)   Receive **your** written request of cancellation.

## 6.   ASSIGNMENT

Assignment of this policy will not be valid unless we give **our** written consent.

## 7.   SUBROGATION

a.   When **we** have paid **you** for a loss covered under this policy and **you** receive payment for the same loss from another person, entity or organization, the amount received will be held by **you** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

b.   An **insured** may, before loss occurs, waive in writing all rights of recovery against any person.
The **insured** will provide us with proof of the waiver, when requested by **us**. If not waived, when **we** pay a loss, an **insured's** right to recover from someone else becomes **ours** up to the amount **we** paid. An **insured** must protect these rights and help **us** enforce them.

c.   This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

## 8.   DEATH

If **you** die, until the end of the policy period following **your** death, **we** continue to insure:

a.   The legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death;

b.   A member of **your** household who is an **insured** at the time of death, but only while a resident of the **residence premises**; and

c.   With respect to **your** property, the person having proper custody of the property until appointment of a legal representative.

## 9.   ADDITIONAL INSURED – NON OCCUPANT

a.   An additional **insured** may be named in the Declarations. The additional **insured's** interest in the **residence premises** is protected under coverage A and Coverage B. The additional **insured** is also protected under Coverage E and Coverage F for liability from the ownership, maintenance, or use of the **residence premises**. This provision does not increase the amount of insurance.

b.   This coverage does not apply to:
   (1)   An **employee**;
   (2)   A **residence employee**; or
   (3)   A temporary **employee** that substitutes for a permanent **residence employee** on leave or used to meet seasonal or short-term workload conditions.

c.   If **we** decide to cancel or not to renew this policy, the person or organization named in the Declarations will be notified in writing.

## 10.   OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS

The named **insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there may be an installment premium payment charge.

## 11.   NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES

The company reserves the right to impose a fee for:

a.   Any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

b.   Any reinstatement of the policy if premium payment is received after the cancellation date. This is under the terms and conditions approved where required by the Department of Insurance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

**Private Client**

# NATIONWIDE PRIVATE CLIENT

Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Robert W. Horner III
Secretary

Paul VanDenBosch
President, Nationwide Private Client

The information contained herein replaces any similar information contained elsewhere in the policy.

Underwritten by Crestbrook Insurance Company

Nationwide®

CRESTBROOK INSURANCE COMPANY                                   PERSONAL HOME POLICY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CRESTBROOK PROTECTION

_____

For an additional premium the following coverages apply:

A.   The **Definitions** Section is revised as follows:

1.   Definition 13 for **incidental business** is removed and replaced with the following:

**Incidental business** means a **business** activity, conducted on the **residence premises**:
   a.   With gross revenues of less than $15,000 in any calendar year; and
   b.   No employees of the **incidental business** subject to workers' compensation or similar disability laws; and
   c.   Which conforms to federal, state and local laws.

**Incidental business** also includes a farming operation on the **residence premises** involving:
   a.   Farm employees working less than 1,500 hours annually; and
   b.   Gross Annual Receipt from such farming operation of less than $50,000;
      during the policy period.

2.   Definition 14 for **insured** is revised as follows:

Item a.(2) under Definition 14, is deleted and replaced by:

Other persons under the age of twenty-five (25) and in the care of you or **your** relatives

The following is added to the definition for **insured**:

For purposes of Section I – Property Coverages, trusts whose corpus or principal interest includes the **residence premises** or a legal entity in which **you** own a majority interest and which has a financial interest in the **residence premises** shall be considered an **insured**.

For purposes of Section II – Liability Coverages, trusts whose corpus or principal interest includes the **residence premises** and/or a legal entity in which **you** own a majority interest and which has a financial interest in the **residence premises** shall be considered an **insured**, but only with respect to coverage for liability arising from the ownership, maintenance, or use of the **residence premises.** This provision does not increase the amount of insurance.

This definition does not include:
   a.   An **employee**;
   b.   A **residence employee**; or
   c.   A temporary employee that substitutes for a permanent **residence employee** on leave or  used to meet seasonal or short-term workload conditions.

B.   **Section I-Property Coverages** is amended as follows:

1.   The following changes apply to Coverage C-Personal Property, Special  Limits of Liability:

Item 1. limit is increased to $25,000.
Item 2. limit is increased to $10,000
Item 3. is eliminated in its entirety.
Item 4. is eliminated in its entirety.
Item 5. limit is increased to $5,000.
Item 7. limit is increased to $10,000.
Item 10. limit is increased to $10,000
Item 11. limit is increased to $5,000
Item 12. limit is increased to $100,000.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

2.  Paragraph b, **Fair Rental Value**, of Coverage D-Loss of Use is removed and replaced by the following:

**Fair Rental Value**. If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises.  This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will be for the actual loss sustained.

3.  **Additional Property Coverages** is amended as follows:

Item 1, **Debris Removal**

Paragraph 1.b. is removed and replaced by:

**We** will pay the reasonable expense **you** incur to remove debris of a covered loss and the property that caused that covered loss. **We** will also pay up to a total of $5,000 to remove trees from the **residence premises** if felled by the peril of windstorm, hail, weight of ice or snow or sleet when there is no damage to covered property.

Item 3, **Trees, Shrubs, Plants and Lawns**

Paragraph 3.b. is removed and replaced by:

**We** will pay up to five percent (5%) of the coverage limit for Coverage A—Dwelling but no more than $10,000 for any one tree, shrub, or plant. This coverage applies only if **you** restore the damaged tree, plant or shrub within one hundred eighty (180) days of the loss.

Item 13, **Lock Replacement**

Paragraph 13.a. is removed and replaced by the following:

**We** will pay the reasonable expense to replace or rekey the exterior door locks on **your residence premises.** This coverage applies only if the keys to **your residence premises** are stolen. **You** must notify **us** within seventy-two (72) hours of discovering the keys have been stolen.

Item 14, **Ordinance or Law**

The following sentence (14.c.) is removed:

The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A—Dwelling limit of liability shown on the Declarations.

Item 15, **Data Restoration**

Sentence 15.a is removed and replaced by:

**We** will pay up to a total of $25,000 for expenses incurred by **you** to replace or recreate **your** lost personal data stored on a personal computer or portable computing devices that **you** own or lease.

Item 19, **Damaged Caused by Domestic Animals**

Item 19. is removed in its entirety and replaced by:

**Damage Caused by Domestic Animals. We** will pay up to $25,000 for direct physical loss to covered property when such loss is caused by a domestic animal **you** own.

4.   The following are added to **Additional Property Coverages:**

### Water Shut-Off Device Coverage

a.  After **your** first covered water damage loss by this policy, **we** will pay for reasonable costs **you** incur up to $5,000 for the installation of an approved water shut-off device.

b.  This payment will not increase the amount of coverage.

c.  This additional coverage only applies if the loss exceeds the location deductible.

### Kidnap Expense Coverage.

a.  **Kidnapping** is defined as the crime of unlawfully seizing and carrying away a person by force or fraud, or seizing and detaining a person against his or her will with intent to carry away at a later time.

b.  **We** will pay up to $100,000 to reimburse any of the following expenses related to a **kidnapping** of an **insured**:

  (1)  Attorney fees to negotiate a settlement;
  (2)  Lost income of the kidnapped **insured;**
  (3)  Travel;
  (4)  Lodging costs; and
  (5)  Telephone costs.

c.  No coverage applies to ransom payments caused by or in any way related to the **kidnapping** of an **insured.**

### Pet Injury Coverage

a.  If **your** pet is injured as a result of a covered loss, **we** will pay up to $5,000 for reasonable and necessary veterinary expenses for the resulting injuries. This limit is the maximum **we** will pay for a covered loss regardless of the number of pets injured.

b.  Coverage applies only to expenses for those injuries resulting directly from the covered cause of loss Section I – Property.

### Disability Alterations Coverage

a.  If **you** or an **insured** residing in **your** household is permanently disabled by an accidental injury, **we** will pay to update the **residence premises** to meet minimum standards for the disability.

b.  **Our** limit of liability for this additional coverage is ten percent (10%) of the Coverage A—**Dwelling** limit of liability stated on the Declarations or $100,000, whichever is less.

### Realty Tax Increased Assessment Coverage

a.  **We** will pay up to $25,000 for any additional county tax assessments if the assessment is increased following a covered total loss and such loss was the cause of the tax increase.

b.  This coverage only applies to the first assessment generated after **your** home has been reconstructed.

### Mortgage Expenses

a.  **We** will pay for the following mortgage expenses incurred by **you** if a total loss occurs to **your** Dwelling on the **residence premises** from a covered loss:

  (1)  Up to $5,000 per month for the increased amount of **your** monthly mortgage payment created as a result of a higher interest rate on an equivalent replacement Dwelling at the same location. Subject to a $50,000 aggregate limit of liability, **we** will pay this increased amount every month until the final payment date or until **you** no longer occupy the replacement Dwelling, whichever occurs sooner.  However, **we** will not pay for points or service charges, or for any taxes; and

    (2) Up to $5,000 for legal costs related to the mortgage, including fees for attorneys, title searches, appraisals and applications.  However, legal costs do not include fines, judgments, points, service charges or legal services provided by any attorney other than **your** own.

  b.  No deductible applies to this coverage.

**Energy Efficient Upgrade**

  a.  **We** will pay up to $25,000 for the reasonable cost incurred to repair or replace covered damaged property using products or materials that are sustainable alternatives to the products or materials of the covered property.

  b.  Such sustainable alternatives must be in accordance with the standards of an authority on buildings, products, materials, methods or processes accepted by Leadership in Energy and Environmental Design (LEED) for Homes Green Building Rating System of the U.S. Green Building Council, National Association of Home Building Guidelines, Energy Star Rating system or any other recognized sustainable rating system **we** deem appropriate.

  c.  The $25,000 limit is the most **we** will pay for any one loss, regardless of the number of claims made during the policy period:

5.  **Property Conditions** for Section I are amended as follows:

    Item 2, **Deductible**, is removed and replaced with the following:

    **Deductible**

    a.  The deductible amount shown on the Declarations that applies to coverages included in the policy or endorsements attached to this policy and that is applicable to a covered loss is the amount of loss paid by the **insured**. Different deductible amounts may apply to different causes of loss. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property. **We** pay for covered loss above the applicable deductible amount and subject to the applicable limit of liability.

    b.  The deductible will not apply to a covered loss of more than $50,000. This waiver of deductible does not apply to:

      (1) special deductibles for wind, hurricane, hail, or earth movement including earthquake and volcanic eruption; or

      (2) separate coverage deductibles contained within policy provisions or shown on the Declarations.

    c.  However, when **your** dwelling is empty of personal property necessary to sustain normal living for more than sixty (60) consecutive days prior to a loss covered by this policy, and **you** have not given **us** notice of **your** removal of such personal property, the waiver of the policy deductible does not apply. The following deductible condition applies:

      (1) In the event of a covered loss, the deductible will be the greater of:

        (a) The Section I Deductible as shown on the Declarations;

        (b) Five percent (5%) of the Coverage A—Dwelling limit of liability at the time of loss; or

        (c) The deductible applicable to the cause of loss.

    Paragraph 4.b.of **Loss Settlement** is removed and replaced with the following:

    Under Coverage B—Other Structures

    (1) **We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

    (2) When **we** pay, **we** will include any increase that may apply under Item 13, Ordinance or Law of Additional Property Coverages.

    (3) In the event the Coverage B – Other Structures limit shown on the Declarations is less than ten (10) percent of the Coverage A – Dwelling limit, **we** will pay up to the applicable

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

limit shown on the Declarations the cost to repair or replace without deduction for depreciation based on equivalent construction and use on the same premises even if you choose not to repair or replace.

(4) However, in the event of a covered loss to an other structure that occurs during construction or renovation of such structure increases the **replacement cost** by more than five percent (5%) or $500,000, whichever is less, **we** will pay the lesser of **actual cash value**, or the limit applying on the Declarations:

(a) unless **you** have notified **us** prior to the loss of such construction or renovation; and

(b) **we** have provided **you** with **our** written consent.

C. **Section II-Liability Coverages** is amended as follows:

When Coverage E-Personal Liability is purchased for this policy from **us**, the limit of liability for Coverage F-Medical Payments to Others is increased to the limit shown on the Declarations.

D. The following is added as an **Additional Coverage** to this policy:

**Family Safety**

**We** will pay up to $25,000 for reasonable and necessary counseling services incurred by an **insured** arising from a covered loss or **occurrence.** This coverage will also apply for an **insured** if a victim of a stalking, home invasion or abduction. Coverage will be excess over other available insurance, including but not limited to medical insurance, providing coverage for such services. Coverage will apply for a period of up to one year from the date of a covered loss or **occurrence.**

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY THEFT OR IDENTITY FRAUD EXPENSES COVERAGE

---

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

In consideration of the premium charged, the policy is amended to provide coverage for **identity theft or identity fraud.** Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

Additional Definitions applicable: For purposes of this endorsement only:

1.  **Identity Theft or Identity Fraud** means the act of knowingly using or transferring without legal authority personal identifying information of an **insured** such as name, social security number, driver's license number, bank account number(s) or credit card number(s) with the intent to commit, or to aid or abet another to commit, any illegal activity that constitutes a misdemeanor or felony under any applicable state or local law or violation of federal law.

2.  **Expenses** means:

    a.  Costs of executing affidavits or similar documents attesting to theft or fraud required by credit grantors, credit agencies or similar financial institutions.

    b.  Costs for certified mail to credit grantors, credit agencies, or similar financial institutions and law enforcement agencies.

    c.  Lost income resulting from time taken off work to complete theft or fraud affidavits, talk to or meet with credit grantors, credit agencies or similar financial institutions, law enforcement agencies and or legal counsel. Payment of lost income is included within the **identity theft or identity fraud expense** Coverage Limit of Liability and payable as outlined in this endorsement.

    d.  Loan application fees for re-applying for a loan or loans where the original application is rejected solely because the lender received incorrect credit information.

    e.  Reasonable attorney fees incurred by **you** as a result of **identity theft or identity fraud** to:

        (1)  Defend lawsuits brought against an **insured** by financial institutions, merchants, or collection agencies;

        (2)  Remove any civil or criminal judgments wrongly entered against an **insured;** or

        (3)  Challenge the completeness or accuracy of any information in a consumer credit report.

    f.  Charges incurred for long distance telephone calls to law enforcement agencies, merchants, credit grantors, credit agencies or similar financial institutions to report or discuss an actual **identity theft or identity fraud** The following additional coverage is added under Section I:

**Identity Theft or Identity Fraud Expenses**

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an insured, is considered to be one identity theft or identity fraud, even if a series of acts continues into a subsequent policy period.

*   **Identity theft or identity fraud** must occur while this coverage is part of **your** policy; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

- **Identity theft or identity fraud expenses** must be incurred while this coverage is part of **your** policy or within one hundred eighty (180) days after this coverage is terminated.

If this coverage is terminated, **our** total liability for **expenses** incurred by **you** during the one hundred eighty (180) days after the termination will not exceed the amount equaling the difference between the limit at the time coverage terminated and the amount **we** already reimbursed you during that policy period.

**We** may offer, at **our** option, to refer **you** to a firm that:

- **you** can authorize to work on **your** behalf to assist **you** in reporting and addressing the effects of **identity theft or identity fraud** to which coverage applies;

- will consult with **you** on measures **you** might take if **you** reasonably suspect that **you** have already become, or may become a victim of **identity theft or identity fraud** to which this coverage applies; or

- if **we** do provide **you** with such a referral, **we** will pay, subject to the terms of the referral we provide, that firm's charges for the work they perform consistent to the terms of **our** referral, and those charges will not be subject to the limits for **identity theft or identity fraud** coverage.

**We** will pay up to the limit shown on the Declarations for **expenses** incurred by an **insured** as the direct result of any single **identity theft or identity fraud** first discovered or learned of during the policy period. **Our** total liability for **identity theft or identity fraud expenses** Coverage **you** incur during the policy period will not exceed this limit regardless of the number of instances or when they occurred, or the number of persons making a claim for **identity theft or identity fraud.** Payment of lost income is included within the **identity theft or identity fraud expenses** Coverage Limit of Liability and payable up to the amounts shown below:

**Lost Income Payment Schedule**

| Identity Theft or Identity Expenses Limit of Liability | Fraud Lost Income Per Day Maximum | Total Lost Income Limit |
|---|---|---|
| $ 25,000 | $ 250 | $ 5,000 |
| $ 50,000 | $ 500 | $10,000 |
| $100,000 | $1,000 | $20,000 |

This coverage is additional insurance.

No deductible applies to Identity **Theft or Identity Fraud Expenses Coverage.**

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. **Expenses** arising out of the business pursuits of any **insured.**

2. **Expenses** incurred due to any fraudulent, dishonest or criminal act by an **insured** or any person acting in collusion with an **insured,** or by any authorized representative of an **insured,** whether acting alone or in collusion with others.

3. Loss other than **expenses.**

4. Loss insured under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, under Section I of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

**SECTION I—CONDITIONS**

Under Your Duties after Loss the following is added:

In case of loss, **you** must submit to **us,** within sixty (60) days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief evidence or affidavit supporting a claim including bills, receipts, or other records that support a claim for **expenses** under **identity theft or identity fraud expenses** Coverage. It should state the amount and cause of loss.

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOME

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GEORGIA AMENDATORY ENDORSEMENT

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

1. The following changes were made to the Definitions section of the policy:

   Item 8., **Collapse,** the following language is added after paragraph c.:

   However, if any part of the interior dwelling building separates from another part of the interior of the dwelling building, with the result that any part of the interior dwelling building cannot be occupied for its intended purpose, then it would be in the state of **collapse**.

2. Section I–Property Coverages, Coverage C–Personal Property, item 2. is replaced by the following. Items 2.a. and 2.b are unchanged:

   2. **Our** limit of liability for personal property normally located at an **insured's** residence other than the **residence premises** is ten percent (10%) of the highest limit of liability for Coverage C applicable under this or any other policy issued by **us** or an affiliate company which provides coverage for **your** personal property. No coverage under this provision is afforded to the peril of Earthquake. This ten percent (10%) limitation does not apply to personal property:

3. For Policy P1405, Section I– Additional Property Coverages, Item 12., **Grave Markers,** is removed. For Policies P1404 and P1406, Section I –Additional Property Coverages, Item 11., **Grave Markers** is removed.

4. Section I–Property Exclusions, Item 1.f., is replaced by the following:

   f. Intentional Acts.

   Loss caused intentionally by or at the direction of **you** or a **family member**, including willful acts the result of which that person knows or ought to know will follow from their conduct.  In the event of such a loss, no **insured** is entitled to coverage, even **insureds** who did not commit or conspire to commit the act causing the loss. However, this exclusion will not apply to deny payment to an innocent co**insured** if the loss:

   (a) Arose out of family violence as defined by Georgia statute; or
   (b) Arose out of sexual assault as defined by Georgia statute; or
   (c) Is caused by the intentional act of an **insured** against whom a family violence or sexual assault complaint is brought for the act causing the loss.

   If **we** pay a claim pursuant to Paragraph 1.(f), **our** payment to the innocent co**insured** is limited to that **insured's** insurable interest in the property. In no event will **we** pay more than the Limit of Liability.

5. Section I–Property Exclusions, Item 1.j., the following language is added:

   This exclusion does not apply to **Biological Deterioration or Damage** arising out of mold or remediation in which the proximate covered cause of loss is fire or lightning.

6. Section I–Property Exclusions, Item 1.r.(2), is replaced by the following:

   (2) If the dwelling has been vacant or unoccupied for less than 60 consecutive days or **you** have used reasonable care to:
   (a) Maintain heat in the building; or
   (b) Shut off the water supply and drain all systems and appliances of water.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

7.  Section I–Property Exclusions, Item 1.t., the following paragraph is added:

However, **we** do insure for loss that is not known, or could not have been known, to any **insured** and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam.

8.  Section I–Property Exclusions, Item 1.v., is replaced by the following:

a.  Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than sixty (60) consecutive days immediately before the loss and **we** have not been notified of such vacancy. A dwelling under construction is not considered vacant. This exclusion applies to Coverages A and B only (note: P1404 does not provide Coverage A nor B; P1406 does not provide Coverage B). However, any ensuing loss to property described in Coverage A, B and C not precluded by any other provision in this policy is covered (note: P1404 does not provide Coverage A and B; P1406 does not provide Coverage B).

9.  Section I–Property Exclusions, Item aa., is added to the policy:

aa. Criminal or Illegal Activity. Criminal and Illegal Activity means any and all criminal and illegal acts performed by any **insured** that result in damage to **your** structure or personal property.

10. Section I–Property Conditions, Item 3., **Your** Duties after Loss, paragraph a. is replaced by the following:

a.  Give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under credit card coverage, also notify the credit card company (Electronic Fund Transfer Card) company.

11. Section I–Property Conditions, Item 4., Loss Settlement, paragraph a.(2)(d)(ii), is replaced by the following:

(ii) Not occupied by **you** for more than sixty (60) days.

12. Section I–Property Conditions, Item 6., Appraisal, is replaced by the following:

If **you** and **we** agree on the scope of direct physical loss or damage that is covered by the terms and conditions of this policy but disagree on the amount payable for that scope of loss, either may demand an appraisal of the agreed-upon scope of loss. In this event, each party will choose a competent and impartial appraiser within 20 days after from the other. The two appraisers will choose an umpire.

If they cannot agree upon an umpire within 15 days, then at the request of either, and after advance notice of hearing to the nonrequesting party by certified mail, a party may seek selection of an umpire by a judge of a court of record in the state and jurisdiction where the **residence premises** is located only after the expiration of 10 days following the date of the actual notice.

The appraisers will separately appraise the amount of the agreed-upon scope of loss. Each appraiser's report will specifically and individually itemize all items or elements of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

13. The following changes apply to **Section II – Liability Coverages**, ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOME

Item 3. **Occurrence** is replaced by the following:

3.   **Occurrence** means an accident, including continuous or repeated exposure to the same general
     condition. It must result in **bodily injury**, **property damage** or **personal injury** caused by an
     **Insured**. The **occurrence** resulting in **bodily injury** or **property damage** must be during the
     policy period. The **occurrence** resulting in **personal injury** must be due to an offense first
     committed during the policy period.

     With respect to **personal injury** covered under this policy and under any prior and subsequent
     policy(ies) issued by **us** to **you**, all continuous, repeated or related offenses shall be treated as a
     single offense and shall be deemed to occur at the time of the first offense.

Item 4. **Personal Injury** is replaced by the following:

4.   **Personal injury** means injury arising out of one or more of the following offenses, but only if the
     offense was committed during the policy period:
     a.   False arrest, detention or imprisonment:
     b.   Malicious prosecution;
     c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy
          of a room, dwelling or premises that a person occupies, committed by or on behalf of its
          owner, landlord or lessor;
     d.   Oral or written publication in any manner, including electronic publication, of material that
          slanders or libels a person or organization or disparages a person's or organization's
          goods, products or services; or
     e.   Oral or written publication in any manner, including electronic publication, or material that
          violates a person's right of privacy.

The following definition is added:

9.   **Electronic Aggression** means any type of harassment or bullying committed:

     a.   by means of an electronic forum, including but not limited to a blog, an electronic bulletin
          board, an electronic chat room, a gripe site, a social networking site, a web site, or a weblog;
          or
     b.   by other electronic means, including but not limited to email, instant messaging, or text
          messaging.

14. The following changes are made to paragraph 1., **Liability Exclusions (Section II)**:

1. Coverage E— Personal Liability and Coverage F—Medical Payments to Others do not
   apply to **bodily injury**, **property damage** or **personal injury**:

Subparagraph h. is replaced by the following:

h.  Caused by an act of war or warlike acts, including insurrection, rebellion or revolution. Discharge
    of a nuclear or biological weapon is a warlike act, even if accidental.

Subparagraph j. and k. are removed and not replaced.

Subparagraph l. is replaced by the following:

l.  Arising from the exposure to, or ingestion, inhalation or absorption of, lead or lead compounds at
    a non-owner-occupied location.

Subparagraph m. is removed in its entirety.

Subparagraph n. is replaced by the following:

n.  **We** do not cover any loss caused directly or indirectly, regardless of cause or event, whether
    contributing concurrently or in any sequence to the loss, caused by the discharge, dispersal,
    seepage, migration, release, or escape of pollutants. Pollutants mean any solid, liquid, gaseous,
    or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals,

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY                                        PERSONAL HOME

and waste. Waste includes materials to be recycled, reconditioned, or reclaimed. This exclusion does not apply to loss or damage resulting from a sudden and accidental escape of pollutants.

Subparagraph o. is replaced by the following:

o. Arising out of acts or omissions of an **insured** relating directly or indirectly to sexual misconduct or molestation, corporal punishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

Subparagraph v. is replaced by the following:

v. Arising out of discrimination or harassment, whether actual, alleged or threatened, due to age, race, national origin, gender, religious belief, physical or mental impairment, sexual orientation, or any other discrimination.

The following subparagraph w. is added:

w. **Bodily injury**, **property damage**, or **personal injury** arising out of acts or omissions relating directly or indirectly to any form of **electronic aggression** by an **insured**.

15. General Policy Conditions, Item 2., **CONCEALMENT OR FRAUD**, is replaced by the following:

    2. **CONCEALMENT OR FRAUD**

    a. **We** may cancel this policy, deny coverage under this policy, or at our election, assert any other remedy available if **you** or any other **insured** has concealed or misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy, or caused **us** to issue or renew this policy at a higher premium.

    b. This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:
      (1)  Concealed or misrepresented any material fact or circumstance; or
      (2)  Committed any fraud or made false statements relating to such loss.

16. General Policy Conditions, Item 3., **RENEWAL,** paragraph d., is replaced by the following:

    d.  **You** agree to an interior or an exterior inspection of **your** home by one of our representatives to determine your continued eligibility. Such inspection will not be performed more than once a year with prior advance notice.  Failure to allow an interior or exterior inspection in accordance with these terms may result in nonrenewal of **your** policy.

17. General Policy Conditions, Item 4., **NONRENEWAL**, paragraph b., is replaced by the following:

    b.  If **we** elect not to renew, **we** will mail written notice to the first named **insured,** at the address shown in this policy, at least forty-five (45) days before the renewal date of this policy. The reason(s) for nonrenewal will be included. A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal service will be sufficient proof of notice.

18. General Policy Conditions, Item 5., **CANCELLATION DURING POLICY PERIOD**, is replaced by the following:

    a.  **You** may cancel this policy at any time by returning it to **us** or by giving advance written notice of the date cancellation is to take effect, subject to the following:

      (1)  If only **your** interest is affected, the effective date of cancellation will be either the date **we** receive **your** notice or the date specified in the notice, whichever is later.

      (2)  If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, **we** will mail or deliver at least ten (10) days notice to **you** and the third party as soon as possible after receiving **your** request for cancellation.
      **Our** notice of cancellation will state the effective date of cancellation, which will be the later of the following:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY                                           PERSONAL HOME

    (1)  10 days from the date of mailing or delivery of **our** notice; or

    (2)  The effective date of cancellation stated in **your** notice to **us**.

  b.  **We** may cancel this policy only for the reasons stated in this condition by notifying **you** and any mortgagee or lienholder shown in the policy in writing of the date cancellation takes effect. This cancellation notice will be mailed to **you** at the address shown in the policy. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

    (1)  When **you** have not paid the premium, whether payable to **us** or **our** agent or under a finance or credit plan, **we** may cancel at any time by notifying **you** at least 10 days before cancellation takes effect.

    (2)  When this policy has been in effect 60 days or less and is not a renewal with **us**, **we** may cancel for any reason by notifying **you** at least 20 days before cancellation takes effect.

    (3)  When this policy has been in effect more than 60 days, or at any time if it is a renewal with **us**, **we** may cancel if:

      (a)  This policy has been issued or renewed or a claim has been made involving misrepresentation of fact, concealment of a material fact or fraud committed by or with the knowledge of **you** or any other **insured**;

      (b)  The risk has changed substantially since this policy was issued; or

      (c)  **You** or any other **insured** violate any provisions contained in this policy.

  This can be done by notifying **you** at least 30 days before cancellation takes effect.

When this policy is cancelled, unearned premium, if any due, will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us**, **we** will refund it no later than the date cancellation takes effect unless an audit or rate investigation is required. In that case, the premium will be returned as soon as practicable, but no later than 30 days after the conclusion of the audit or investigation.

19.  General Policy Conditions, Item 7., **SUBROGATION**, is replaced by the following:

  **7. SUBROGATION**

  **We** have the right of subrogation under any coverages, except Medical Payments to Others, in this policy and its endorsements. This means that after paying a loss to **you** or others under this policy, **we** will have the **insured's** right to sue for or otherwise recover such loss from anyone else who may be liable.

  Also, **we** may require reimbursement from the **insured** out of any settlement or judgment that duplicates **our** payments. These rights apply only after the **insured** has been fully compensated for the loss. These provisions will be applied in accordance with state law. Any **insured** will sign such papers and do whatever else is necessary to transfer these rights to **us**, and will do nothing to prejudice them.

20.  The following General Policy Condition is added to the policy:

  **12. OUR RIGHT TO RECOMPUTE PREMIUM**

  **We** established the premium for this policy based on the statements **you** made in the application for insurance. **We** have the right to recompute the premium if **we** later obtain information which affects the premium **we** charged.

**All other provisions of the policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OPTIONAL HURRICANE DEDUCTIBLE – GEORGIA

**SCHEDULE**

| **Hurricane Deductible:** |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**SECTION I – CONDITIONS**

2. **Deductible**

The following special deductible is added to the policy:

**Hurricane Deductible**

a. With respect to the peril of Windstorm or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the applicable hurricane deductible described in Paragraph b. below.

b. The applicable hurricane deductible:

(1) Is either:

(a) The dollar amount shown in the Schedule as the Hurricane Deductible; or

(b) If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage A. Limit Of Liability shown in the Declarations by the percentage shown as the Hurricane Deductible in the Schedule.

(2) Only applies to loss caused by the peril of Windstorm that occurs, in the event of a hurricane named by the National Weather Service or its successor from which sustained hurricane force winds of 74 miles per hour or greater have been measured in Georgia by the National Weather Service, during the period:

(a) Beginning 12 hours prior to the first time that sustained hurricane force winds of 74 miles per hour or greater have been measured by the National Weather Service;

(b) Continuing for the time period during which the hurricane conditions exist; and

(c) Ending 12 hours after the last time the hurricane force winds of 74 miles per hour or greater have been measured by the National Weather Service;

anywhere in the state of Georgia.

c. This deductible amount does not apply to loss under Coverage D – Loss of Use. Instead, the deductible amount that applies to loss under Coverage D will be the same as the deductible amount that would have been applied to the peril of fire.

d. Refer to the policy Declarations for the deductible that applies to windstorm loss if the circumstances of the windstorm loss, described above, do not apply.

**All other provisions of this policy apply.**

 © Insurance Services Office, Inc., 2010

CRESTBROOK INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

Unless otherwise specified or limited, this endorsement modifies insurance provided under the following policy forms:

PERSONAL HOME POLICY (P1405)
PERSONAL CONDO POLICY (P1406)
PERSONAL TENANT POLICY (P1404)

### LIMITED COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.
**Your** policy is amended as follows:

Except as otherwise specified in **SECTION II – ADDITIONAL LIABILITY COVERAGES, 5. LIMITED COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA**, we cover the following in addition to the limits of liability.

**SECTION II – LIABILITY COVERAGES - ADDITIONAL LIABILITY COVERAGES,** the following Additional Coverage is added:

5. **LIMITED COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA**

The following additional coverage is within and not in addition to the limit of liability under **Coverage E – Personal Liability**.

**We** will pay no more than an aggregate sublimit of $50,000 for damages for which an **insured** is legally liable because of **bodily injury** or **property damage** arising from **fungi** or **bacteria** and caused by a covered **occurrence** that is not otherwise excluded.  Such sublimit applies separately to each consecutive annual policy period and to any remaining policy period of less than 12 months starting with the beginning of the policy period shown in the Declarations.  This is the most **we** will pay regardless of the:

    1. Number of locations insured under this policy to which this endorsement is attached;

    2. Number of persons injured;

    3. Number of persons whose property is damaged;

    4. Number of **insureds**; or

    5. Number of **occurrences** or claims made.

Solely for purposes of this additional coverage, **Fungi** means any type or form or fungus, including mold or mildew, and any microtoxins, spores, scents or by-products produced or released by such **fungi**. Solely for purposes of this additional coverage, **Bacteria** means any type, kind or form of bacterium.

**LIABILITY EXCLUSIONS (Section II)**, paragraph 1.r. is replaced by the following:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1999

r. Arising out of **biological deterioration or damage,** except to the extent provided for in **SECTION II – LIABILITY COVERAGES – ADDITIONAL LIABILITY COVERAGES, 5. LIMITED COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA.**

**LIABILITY CONDITIONS (Section II)**, paragraph 1. **Limits of Liability** is replaced with the following:

1. Limits of Liability.

   a. Except for **SECTION II - LIABILITY COVERAGES - ADDITIONAL COVERAGES, 5. LIMITED COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA, our** total liability under Coverage E for all damages resulting from one **occurrence** will not exceed the limit for  Coverage E. shown on the Declarations. This is true regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or  repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

   b. **Our** total liability under Coverage F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

   c. Our total liability under SECTION II – ADDITIONAL COVERAGES, E. LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA LIABILITY COVERAGE will not exceed an aggregate sublimit of $50,000 in any annual policy period regardless of:

      1. Number of locations insured under this policy to which this endorsement is attached;

      2. Number of persons injured;

      3. Number of persons whose property is damaged;

      4. Number of **insureds**; or

      5. Number of **occurrences** or claims made.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1999

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

---

Coverage  is subject to all terms and conditions of the policy except as changed by this endorsement.  Read the entire endorsement carefully to determine rights, duties, and what is and is not covered.

**Equipment breakdown** coverage is subject to a $100,000 per Occurrence Limit of Liability. **Equipment breakdown** coverage is subject to a $500 per **occurrence** Deductible.

**DEFINITIONS**

The following Definitions are added as they relate to coverage under this endorsement:

1. **Equipment Breakdown**.

   **Equipment Breakdown** as used herein means:

   a.  Physical loss or damage both originating within:

       (1)  Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

            (a)  Waste disposal piping;

            (b)  Any piping forming part of a fire protective system; and

            (c)  Any water piping other than:

                 i)    Boiler feed water piping between the feed pump and the boiler;

                 ii)   Boiler condensate return piping; or

                 iii)  Water piping forming part of a refrigerating  or air conditioning system used for cooling, humidifying or space heating purposes.

       (2)  All mechanical, electrical, electronic or fiber optic equipment; and

   b.  Caused by, resulting from, or consisting of:

       (1)  Mechanical breakdown;

       (2)  Electrical or electronic breakdown; or

       (3)  Rupture, bursting, bulging, implosion, or steam explosion.

   However,  **equipment breakdown** will not mean:

   Physical loss or damage caused by or resulting from any of the following; however  if loss or damage not otherwise excluded results, then **we** will pay for such resulting damage:

       (1)  Wear and tear;

       (2)  All losses excluded in the underlying policy; and

       (3)  Loss, damage, cost or expense directly caused by, contributed to by, resulting from, or arising out of the following causes of loss:

            Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet,  falling objects, smoke, aircraft  or vehicles,  riot or civil commotion,  vandalism,  sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement and flood.

2. **Green** as used means products, materials, methods and processes certified by a **green authority** that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

3. **Green Authority** as used means an authority on **green** buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED ), Green Building Initiative Green Globes, Energy Starr Rating System or any other recognized **green** rating system.

4. **Motor Vehicle** as used herein means any self propelled land or amphibious vehicle.

## SECTION I—Property Coverages

The following Coverage Agreement is deleted and replaced with the following:

**We** cover all risk of accidental direct physical loss to property described in Coverages A., B. and C. below, including **equipment breakdown**, except for losses excluded under Section I—Property Exclusions.

## SECTION I—Additional Property Coverages

The following Additional Property Coverages are added as they relate to coverage under this endorsement:

1. **Expediting Expense**

   We will pay for the expediting expense due to an **equipment breakdown**.  This expense must result from a loss with respect to your damaged covered property. We will pay the following reasonable extra cost to:

   a.  Make temporary repairs;

   b.  Expedite permanent repairs; and

   c.  Expedite permanent replacement.

   **Reasonable extra cost** means the extra cost of temporary repair and of expediting the repair of **your** damaged property including overtime and the extra cost of express or other rapid means of transportation.

   The most **we** will pay for loss or damage under this additional coverage is $10,000. This additional coverage does not increase the per **occurrence** limit for **equipment breakdown** coverage.

2. **Refrigerated Property**

   **We** pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration  caused by an **equipment breakdown** to personal property covered by this policy.

   The most **we** will pay for loss or damage under this Additional Coverage is $10,000. This Additional Coverage does not increase the per **occurrence** limit for **equipment breakdown** coverage.

3. **Pollutant Clean Up and Removal**

   **We** pay for pollutant clean up and removal for loss resulting from an **equipment breakdown**. Pollutant means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   The most **we** will pay for loss or damage under this additional coverage is $10,000. This additional coverage does not increase the per occurrence limit for **equipment breakdown** coverage.

4. **Off-Premises Coverage**

**We** will pay for loss or damage to covered  property resulting from a covered  **equipment breakdown** while temporarily at a premises or location that is not a **residence premises**. This coverage  does not apply to any **motor vehicle**.

The most **we** will pay for loss or damage under this additional coverage is $10,000. This additional coverage does not increase the per occurrence limit for **equipment breakdown** coverage.

**SECTION I—Property Conditions**

In P1405 and P1406, the following Property Exclusion is deleted and replaced with the following:

1.y.(2)  Latent defect, inherent  vice, or any quality in property that causes it to damage or destroy itself;

**SECTION I—Property Exclusions**

The following Condition is deleted and replaced with the following:

4. **Loss Settlement**

a. **We** will pay you the amount you spend to repair or replace **your** covered  property damaged by an **equipment breakdown**. **Our** payment will be the lesser of:

(1)  The cost at the time of the **equipment breakdown** to repair the damaged covered  property;

(2)  The  cost at the time of the **equipment breakdown** to replace  the covered  property  with property of like kind, capacity, size and quality; or

(3)  The amount **you** actually spend that is necessary to repair or replace the damaged property.

b. As respects to **your** covered property, if the cost of repairing or replacing only a part of the covered property is greater than:

(1)  The cost of repairing the covered property; or

(2)  The cost of replacing the entire covered property on the same site,

**We** will pay the lesser amount.

The repair parts or replacement  covered property must be:

(1)  Of like kind, capacity, size and quality; and

(2)  Used for the same purpose.

**SECTION I—Property Conditions**

The following Conditions are added to the policy as they relate to coverage  under this endorsement:

**15.  Equipment  breakdown** coverage  does  not  extend  beyond  the  **residence  premises**  except  as provided by the Off Premises Coverage under Additional Coverages.

**16. Environmental, Safety, and Efficiency Improvements**

If covered property requires replacement due to an **equipment breakdown**, **we** will pay:

a. **Your** additional cost to replace that property with equipment that is better for the environment, safer, or more efficient than the equipment being repaired or replaced.

b. **We** will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality.

This  coverage  does  not  increase  any  of  the  applicable  limits.

This  condition  does  not  apply  to any property  to which  **actual  cash  value** applies.

17. **Green Environmental, Safety, and Efficiency Improvements**

If covered property requires repair or replacement due to an **equipment breakdown**, **we** will pay;

a. The lesser of the reasonable  and necessary additional cost incurred by the **insured** to repair or replace physically damaged  covered  property  with  equipment  of like kind and  quality, which qualifies as **green**. Like kind and quality includes similar size and capacity.

b. The additional reasonable and necessary fees incurred by the **insured** for an accredited professional certified by a **green authority** to participate in the repair or replacement of physically damaged covered property as **green**.

c. The additional reasonable and necessary cost incurred by the **insured** for certification or recertification of the repaired or replaced covered property as **green.**

d. The additional reasonable and necessary cost incurred by the **insured** for **green** in the removal, disposal or recycling of damaged covered property.

e. The Loss of Use (if covered within the policy) loss during the  additional time required for repair or replacement of covered property, consistent with **green**, in the coverages above.

However, **we** will not pay more than one hundred fifty percent (150%) of what the cost would have been to repair or replace such property with like kind and quality inclusive of fees, costs, and any loss of use loss incurred as stated above.

Green Environmental And Efficiency Improvements does not cover the following:

1. Any loss covered under any other section of this policy; or

2. Any cost incurred due to any law or ordinance with which you were legally required to comply with prior to the time of the "equipment breakdown".

These Conditions will be part of, and not an addition to, the limit of liability per loss or any other sublimits of this policy.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.


**All other provisions of this policy apply.**

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOMEOWNERS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE LINE COVERAGE

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

The following additional coverage is added to the Section I - Property Coverages section of your Policy.

**COVERAGE AGREEMENT**

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Policy. Coverage provided under this endorsement does not increase any limit of liability in your Policy.

**DEFINITIONS**

With respect to the coverage provided by this endorsement, the following definitions are added:

1. **Covered service line**

   a. "**Covered service line**" means exterior underground piping and wiring, including permanent connections, valves or attached devices providing one of the following services to your **residence premises**:

      (1) Communications, including cable transmission, data transmission, internet access and telecommunications;

      (2) Compressed air;

      (3) Drainage;

      (4) Electrical power;

      (5) Heating, including geothermal, natural gas, propane and steam;

      (6) Waste disposal; or

      (7) Water.

   b. A **covered service line** must be owned by you or you must be responsible for its repair or replacement as required by law, regulation or service agreement. Should repair or replacement be your responsibility, a **covered service line** ends at the precise location where your responsibility for such repair or replacement ends. However, in no event will a **covered service line** extend beyond the point of connection to the main service or utility line.

   c. **Covered service line** does not include:

      (1) Piping or wiring that is not connected and ready for use;

      (2) That part of piping or wiring that runs through or under a body of water, including but not limited to a swimming pool, pond or lake; or

      (3) That part of piping or wiring that runs through or under the dwelling or other structure. However, this clause c.(3) shall not apply to piping or wiring that runs under:

         (a) A driveway or walkway; or

         (b) A structure, such as a deck, not immediately above a foundation and raised sufficiently from the ground that such piping or wiring can be accessed without damaging or dismantling any structure.

2. "**Earth movement**" means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Tsunami or volcanic action; or

   d. Any other naturally occurring earth movement including earth sinking, rising or shifting.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY                                             PERSONAL HOMEOWNERS

3. "**One service line failure**" means: If an initial **service line failure** causes other **service line failures,** all will be considered **one service line failure.** All **service line failures** that are the result of the same event will be considered **one service line failure**.

4. "**Service line failure**" means a leak, break, tear, rupture, collapse or electrical arcing of a **covered service line** not otherwise excluded by this endorsement. A **service line failure** may be caused by, but is not limited to, the following perils:

   a. Wear and tear, marring, deterioration or hidden decay;

   b. Rust or other corrosion;

   c. Mechanical breakdown, latent defect or inherent vice;

   d. Weight of vehicles, equipment, animals or people;

   e. Vermin, insects, rodents or other animals;

   f. Artificially generated electrical current;

   **g.** Freezing or frost heave;

   **h.** External force from a shovel, backhoe or other form of excavation; or

   **i.** Tree or other root invasion.

   **Service line failure** does not include blockage or low pressure of a **covered service line** when there is no physical damage to the **covered service line.**

**PROPERTY COVERAGES**

The following coverages are added, subject to the Service Line Coverage limit of liability shown in the Declarations unless otherwise specified below:

1. **Damage to Covered Service Line**

   We will pay for physical loss or damage to your **covered service line** that is the direct result of a **service line failure.**

2. **Excavation Costs**

   With respect to your **covered service line** that is damaged as the result of a **service line failure, we** will pay the necessary and reasonable excavation costs that are required to repair or replace the damaged **covered service line.**

3. **Expediting Expenses**

   With respect to your **covered service line** that is damaged as the result of a **service line failure,** we will pay the reasonable extra cost to:

   a. Make temporary repairs; and

   b. Expedite permanent repairs or permanent replacement.

4. **Loss of Use**

   Coverage for Additional Living Expense and Fair Rental Value, as described under Coverage D— Loss of Use, is extended to the coverage provided by this endorsement**.**

5. **Outdoor Property**

   We will pay for your outdoor property, including but not limited to trees, shrubs, plants, lawns, walkways and driveways, that is damaged as a result of a **service line failure** or that is damaged during the excavation of your **covered service line** following a **service line failure.**

**EXCLUSIONS**

The following exclusions are added:

1. We will not pay for loss or damage to:

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY                                                          PERSONAL HOMEOWNERS

    a. Septic systems, including leach fields, septic tanks, pumps, motors or piping that runs from the septic tank to the leach fields, other than loss or damage to covered waste disposal piping running from your dwelling or other structure to a septic tank;

    b. Water wells, including well pumps or motors;

    c. Heating and cooling systems, including heat pumps; or

    d. Sprinkler system pumps, motors, or heads.

2. We will not pay for loss or damage to a **covered service line** that is damaged while it is being installed, dismantled or repaired. However, this exclusion shall not apply if a covered **service line failure** necessitated such installation, dismantling or repair.

3. We will not pay to clean up or remove pollutants, hazardous waste or sewage.

4. We will not pay under this endorsement for loss or damage caused by or resulting from any of the following causes of loss:

    a. Fire; or water or other means used to extinguish a fire;

    b. Explosion;

    c. Lightning; windstorm or hail; smoke; aircraft, riot or civil commotion; theft; breakage of glass;

    d. Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; or water that backs up or overflows from a sewer, drain or sump; or

    e. **Earth movement,** except for **earth movement** that results from the ground thawing after a freeze.

5. We will not pay additional costs incurred for loss or increased usage of water, natural gas, propane or any other service caused by or resulting from a **service line failure.**

**CONDITIONS**

The following conditions are added:

1. **Limit of Liability**

    The limit of liability under this endorsement is dependent upon the age of your dwelling located on the **residence premises** shown in the Declarations.

    The most we will pay for loss, damage or expense arising from any **one service line failure** is:

    a. The limit of liability shown in the Declarations for all damaged **covered service lines** if your dwelling is less than 50 years old; or

    b. $2,500 per damaged **covered service line** if your dwelling is 50 years old or older. However, if the damaged **covered service line** was newly installed or replaced in its entirety within 50 years of the **service line failure,** the limit shown in a. above will apply.

    The maximum limit per occurrence under this endorsement is the limit of liability shown in the Declarations regardless of whether a single **covered service line** or multiple **covered service lines** are damaged by **one service line failure.**

2. **Deductible**

    We will pay only the part of the total payable loss that exceeds $1000, subject to the applicable limit. No other deductible applies to this coverage.

3. **Environmental, Safety and Efficiency Improvements**

    If a **covered service line** requires replacement due to a **service line failure,** we will pay your additional cost to replace with materials that are better for the environment, safer for people, or more energy or water efficient than the materials being replaced.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOMEOWNERS

However, we will not pay to increase the size or capacity of the materials and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not increase the limit of liability that applies to this endorsement.

4. **Loss Settlement**

Losses under this endorsement will be settled as follows:

a. Our payment for damaged covered property will be the smallest of:

(1) The applicable limit of liability;

(2) The cost to repair the damaged property;

(3) The cost to replace the damaged property with like kind, quality and capacity on the same **residence premises;** or

(4) The necessary amount actually spent to repair or replace the damaged property.

b. Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or a different size or capacity.

c. You are responsible for the extra cost to alter or relocate **covered service lines,** unless such alteration or relocation is required by law or ordinance.

This endorsement applies as stated in the policy Declarations.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.