Personal Excess Liability Policy

Prepared For: Brandon Jones and Meghann Jones

Date: 03/11/2022


Agency Name: McGriff Insurance Services

Agency Phone Number: (888) 228-9643

Exhibit "B"

03/11/2022

Dear Brandon Jones and Meghann Jones,

Thank you for placing your confidence in Nationwide® Private Client and McGriff Insurance Services.  At Nationwide Private Client, we specialize in protecting our clients, including you and your family's assets and reputation. In partnership with your agency, we have customized your policy to offer you comprehensive protection that fits your unique coverage needs.

With a Nationwide Private Client policy, you will also experience the peace of mind that comes from working with one of the largest and most established insurance and financial companies in the world.  With Nationwide's A1 rating from Moody's and A+ ratings from A.M. Best and S&P, you can count on our financial strength and stability as a Fortune 100 company.  You have our commitment to deliver on our promises.

In the event of a loss, we deliver on our promise with claims service that's available 24/7, 365 days a year at 1-855-473-6410 or via email at PrivateClient@nationwide.com.

For online access to pay your bills or view your coverage, account information or proof of insurance documentation, visit nationwideprivateclient.com and select "Pay Your Bill."

We appreciate the opportunity to be your insurance carrier of choice and will continue to work hard to protect what is important to you.

Regards,

Paul VanDenBosch
President, Nationwide Private Client

**Private Client**

**Your New Business Policy Declaration**
**Personal Excess Liability Policy**
Policy Number: PX00250529-01
Policy Period: 03/11/2022  to  03/11/2023

Brandon Jones and Meghann Jones
856 Barn Owl Rd
Marietta, GA 30068-2477

McGriff Insurance Services / GA000801
414 Gallimore Dairy Rd Ste F
Greensboro, NC 27409-9693
(888) 228-9643

### General Policy Information

**Issued: 03/11/2022**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your Personal Excess Liability Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the **other** coverages and additional coverage options.

**Policy Period From**: 03/11/2022 To: 03/11/2023 but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at your location address shown below.

### How You saved on this Policy with Nationwide Private Client

Higher Underlying Coverage Credit

### Name of Insured and Location Address:

Brandon Jones and Meghann Jones
856 Barn Owl Rd
Marietta, GA 30068-2477

| | | |
|---|---|---|
| A. Personal Excess Liability Coverage Limit | $ | 5,000,000 |
| B. Excess Uninsured and Underinsured Liability Limit | $ | 1,000,000 |

| | | |
|---|---|---|
| C.  Limited Employment Practices Liability Limit | | |
| Annual Aggregate | $ | Not Applicable |
| Per Wrongful Employment Act | $ | Not Applicable |
| Deductible | $ | Not Applicable |



**Private Client**

**Your New Business Policy Declaration**
**Personal Excess Liability Policy**
Policy Number: PX00250529-01
Policy Period: 03/11/2022   to  03/11/2023

| Required Underlying Insurance | | Minimum Required Underlying Limits |
| --- | --- | --- |
| Personal Liability, Homeowners or Comprehensive Personal Liability | Bodily Injury/Property Damage Combined Single Limit | $300,000 each occurrence |
| Owners, Landlords and Tenants (Rental Units) | Bodily Injury/Property Damage Combined Single Limit | $300,000 each occurrence |
| Private Passenger Autos, Motorcycles and Licensed Recreational Vehicles | Bodily Injury and Property Damage | $250,000 BI each person $500,000 BI each accident $100,000 PD each accident |
| | or Combined Single Limit: | $300,000 each accident |
| Uninsured/Underinsured Motorist Protection | Bodily Injury | $250,000 BI each person $500,000 BI each accident |
| | or Combined Single Limit: | $300,000 each accident |
| Watercraft Up to 27 feet or 300 HP 27 to 45 feet or 300 or more HP 45 feet or greater Personal Watercraft | Combined Single Limit: | $300,000 each occurrence $500,000 each occurrence $1,000,000 each occurrence $500,000 each occurrence |
| Unlicensed Recreational Vehicles | Combined Single Limit: | $500,000 each occurrence |

---

**Premium Summary**

Policy Premium

Personal Excess Liability                                                $          ■
    Automobiles & Recreational Vehicles
    Personal Liability
    Watercraft

Excess Uninsured/Underinsured Motorists                  $          ■

---

Underwritten by Crestbrook Insurance Company



**Private Client**

**Your New Business Policy Declaration**
**Personal Excess Liability Policy**
Policy Number: PX00250529-01
Policy Period: 03/11/2022  to  03/11/2023

**Total Policy Premium**       $        ███

## Policy Form and Endorsements

G8000 (01-13)  Privacy statement - Crestbrook
U1400 (03-16)  Personal Excess Liability Policy
G8001 (07-18)  Signature Page
U8005GA (11-19)  Georgia Amendatory Endorsement

**Issued By:**   **Nationwide Private Client**
Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company

## How to Contact Us

24-Hours claims Reporting:      855-473-6410

### Schedule of Underlying Insurance

#### Residences Premises

| Location | No. of Families | Insuring Company |
|---|---|---|
| 1. 856 Barn Owl RD, Marietta, GA 30068-2477 | 1 | Crestbrook Insurance Company |

#### Private Passenger Autos, Motorcycles and Licensed Recreational Vehicles

| Description | Insuring Company |
|---|---|
| 1. 2017 Tesl Model S | Travelers |
| 2. 2014 Jeep Wrangler | Travelers |
| 3. 2021 Cadi XT6 | Travelers |
| 4. 2010 Toyota Tundra | Travelers |

#### Watercraft and Yachts

| Description | Insuring Company |
|---|---|
| 1. 2020 Malibu Wakesetter | Foremost |

Underwritten by Crestbrook Insurance Company



**Private Client**

# PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.

Private Client

To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word…**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

Private Client

# PERSONAL
# EXCESS LIABILITY POLICY

Underwritten by Crestbrook Insurance Company
Home Office: One Nationwide Plaza | Columbus, Ohio 43125
Administrative Office: 18700 North Hayden Road | Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company



CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

## *Insuring Agreement*

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees and compliance with all the policy provisions.

Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties and what is and is not covered. **You** agree that if **you** make initial payment by check, draft, electronic funds transfer (EFT) or other remittance, the coverage afforded under this policy is conditioned on payment to **us** by the financial institution. If the payment is not honored by the financial institution, **we** will void this policy back to the inception date and no coverage will be provided.

## *Definitions*

Throughout this policy:

1. **You** and **Your** refer to:

    a. The named **insured** shown in the Declarations; and

    b. The spouse of the named **insured** if a resident of the same household. If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy, but only until the earlier of:

    (1) The end of 90 days following the spouse's change of residency;

    (2) The effective date of another policy listing the spouse as a named **insured**; or

    (3) The end of the policy period; or

    c. The civil partner of the named **insured** by Civil Union or Registered Domestic Partnership filed and recognized by the state. If such individual ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the individual will be considered **you** and **your** under this policy, but only until the earlier of:

    (1) The end of 90 days following the individual's change of residency;

    (2) The effective date of another policy listing the individual as a named **insured**; or

    (3) The end of the policy period; or

    d. The named **insured's domestic partner**

2. **We, Us,** and **Our** refer to the company shown on the Declarations as the issuing company.

Certain other words and phrases used in this policy are defined as follows:

3. **Aircraft** means any contrivance used or designed for flight except model or hobby aircraft, unless the model or hobby aircraft is:

    a. Used or designed to carry people or cargo;

    b. Used or designed for commercial purposes, or

    c. Used in violation of local, state, or federal laws governing the use of aircraft, model aircraft, or unmanned aircraft systems.

4. **Association** means the management body of the property owners.

5. **Biological deterioration or damage** means damage or decomposition, breakdown, and/or decay of man-made or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any by-products of these organisms, however produced. Fungi as used above include but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

6. **Bodily Injury** means bodily harm, including resulting sickness, disease, or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                           PERSONAL EXCESS

7. **Business** includes:

   a. Trade, profession, occupation, or employment including self-employment, farming or ranching, other than **incidental business,** performed on a full-time, part-time or temporary basis; and

   b. Other activities performed for monetary or other compensation, except the following;

      (1) Volunteer activities for which no monetary or other compensation is received other than reimbursement for expenses incurred to perform the activity;

      (2) Providing home day care services for:

         (a) Which no monetary or other compensation is received. A mutual exchange of home care services is not considered compensation; or

         (b) A relative of an **insured.**

8. **Business Property** means:

   a. A premises owned, rented, leased, or held for the purpose of conducting a **business;** and

   b. A residential premises an **insured** owns or controls for the purpose of renting or holding for rental to others.

9. **Contamination or Pollution** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

   a. Solid, liquid, gaseous, or thermal irritants or contaminants;

   b. Vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

   c. Fuel oil and other petroleum products; or

   d. Any other waste materials or other irritants, contaminants or pollutants.

This definition does not include smoke arising solely from a hostile fire or the sudden and accident discharge from a fireplace or furnace

10. **Damages** means the sum required to satisfy a claim, whether settled or agreed to in writing by **us** or resolved by judicial process or review.

11. **Defense Costs** means payments allocated to a specific claim or **suit we** investigate, settle or defend, including but not limited to fees charged by any lawyer or law firm retained, court costs, experts' fees, court reporter fees, copying charges, and the cost of appeal.

12. **Discrimination** means a violation of a person's civil rights with respect to race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition, or any other protected class or characteristic established by any federal, state, or local statutes, rules or regulations.

13. **Domestic Partner** means a person living with the named **insured** shown in the Declarations and sharing a common domestic life and whose relationship resembles a mutually exclusive partnership such as that of a marriage, and:

   a. Is a least 18 years of age and capable of entering into a legal contract;

   b. Is not a relative; and

   c. Shares with the named **insured** shown in the declarations financial interdependence and common residence.

Evidence of such includes, but is not limited to:

   (1) Joint domestic responsibility for the maintenance of the household;

   (2) Having joint financial obligations, resources or assets;

   (3) Documents such as a driver's license, tax returns or bills showing a common address for both parties;

   (4) Both parties receiving mail at the same address; or

   (5) A declaration of domestic partnership with that person or similar declaration about that person with an employer or government entity.

A **domestic partner** does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the named **insured** shown in the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                           PERSONAL EXCESS

14. **Employment Event** means an allegation of, or **your** discovery of, a **wrongful employment act** committed against **your residence employee** that has resulted in, or **you** reasonably believe is likely to result in, a civil action against **you** or any **insured**, or a threat by any **residence employee** to disclose publicly that **you** or any **insured** committed or allegedly committed a **wrongful employment act**.

15. **Employment Event Management Firm** means:

   a.  A professional public relations consulting firm;
   b.  A professional security consulting firm;
   c.  A professional media management consulting firm;
   d.  An investigative firm; or
   e.  Law firm.

14. **Follow Form** means that the coverage provided under this policy shall apply to the extent it is provided under **required underlying insurance,** following the terms, definitions, conditions and exclusions of the **required underlying insurance.** The **damages** payable are in excess of the **required underlying insurance** which has been exhausted by payments of covered claims. If a provision of the **required underlying insurance** policy conflicts with a provision of this policy, this policy's provision shall apply. In any event, this policy will not provide broader coverage than provided by the **required underlying insurance** policy.

15. **Hovercraft** means a self-propelled motorized ground effect vehicle which travels across land or water just above the surface on a cushion of air and includes, but is not limited to, flarecraft and air cushion vehicles.

16. **Incidental Business** means a **business** activity, conducted on the **residence premises,** as defined in the **required underlying insurance.**

17. **Incidental Worker** means a person hired for casual employment by **you**, such as a babysitter or independent contractor, working less than fifteen (15) hours per week.

18. **Insured** means:

   a.  **You** and residents of **your** household who are:
      (1)  **Your** relatives;
      (2)  Other persons under the age twenty-one (21) and in the care of **you** or **your** relatives;
      (3)  A student enrolled in school full-time, as defined by the school, who was a resident of **your** household before moving out to attend school, provided the student is under the age of:
         (a)  Twenty-six (26) and **your** relative; or
         (b)  Twenty-one (21) and in **your** care or the care of **your** relative.
   b.  **Insured** also means:
      (1)  With respect to animals or **watercraft** to which this policy applies, any person or organization legally responsible for these animals or **watercraft** which are owned by **you** or any person included in 18.a. above. **Insured** does not mean a person or organization using or having custody of these animals or **watercraft** in the course of any **business** or without consent of the owner.
      (2)  With respect to a **motor vehicle, recreational motor vehicle or watercraft** to which this policy applies:
         (a)  Persons while engaged in **your** employ or that of any person included in 18.a. above; or
         (b)  Other persons using such vehicles or watercraft with the consent of an **insured.**
      (3)  Any person or organization with respect to their legal responsibility for acts or omissions of **you** as defined by 18.a. above.
      (4)  The following when also included by the **required underlying insurance:**
         (a)  A Trust whose corpus or principal includes the **residence premises** and/or a legal entity owned by an **insured** that has a financial interest in the **residence premises**; or
         (b)  Persons under the age of twenty-five (25) and in **your** care or custody
      As used throughout the policy and attached endorsements, when the word an immediately precedes the word **insured,** the words an **insured** together mean one or more **insureds.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                    PERSONAL EXCESS

19. **Insured Location** means:

    a.  The **residence premises;**
    b.  The part of any other premises, structures, and grounds used by **you** as a residence and shown in the policy; also any of these acquired by **you** during the policy period for **your** use as a residence;
    c.  A premises **you** use with premises defined in 19.a. or 19.b.;
    d.  A part of a premises, not owned by an **insured,** where an **insured** is temporarily living.
    e.  Vacant land, other than farm land, owned by or rented to an **insured;**
    f.  Land, other than farm land, owned by or rented to an **insured;**
    g.  Cemetery plots or burial vaults of an **insured;** or
    h.  A part of a premises rented on occasion to an **insured** for purposes other than **business.**

20. **Leased Worker** means a person employed by a firm under an agreement between **you** and the firm to perform duties related to the conduct of **your** domestic, personal, or **incidental business.**

21. **Listed Underlying Policy** means an insurance policy identified on the Declarations which provides **required underlying insurance** coverage, or its replacement. **You** must notify **us** of the replacement as soon as practicable.

22. **Motor Vehicle** means:

    a.  A self propelled land or amphibious vehicle, or
    b.  Any trailer which is being carried on, towed or hitched for towing by such a vehicle

23. **Occurrence** means:

    a.  An accident, including continuous or repeated exposure to the same general conditions, which results in **bodily injury** or **property damage;** or
    b.  An offense, which results in **personal injury.**

With respect to **personal injury** covered under this policy and under any prior and subsequent policy(ies) issued by **us** to **you**, all continuous, repeated or related offenses shall be treated as a single offense and shall be deemed to occur at the time of the first offense.

The **occurrence** resulting in **bodily injury** or **property damage** must be during the policy period. The **occurrence** resulting in the **personal injury** must be due to an offense committed during the policy period.

24. **Personal Injury** means:

    a.  False arrest, false imprisonment, wrongful eviction, wrongful entry;
    b.  Wrongful detention or malicious prosecution;
    c.  Libel, slander, defamation of character, or invasion of rights of privacy;
    d.  Shock, emotional distress, or mental injury; or
    e.  Assault and battery when committed with the intent of protecting persons.

25. **Professional Services** means services of a professional nature including but not limited to:

    a.  Legal, accounting, or advertising services;
    b.  Preparing, approving, or failing to prepare or approve:
        (1)  Maps;
        (2)  Drawings;
        (3)  Opinions;
        (4)  Reports;
        (5)  Surveys;
        (6)  Change orders;
        (7)  Designs; or
        (8)  Specifications;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

    c.  Supervisory, inspection, engineering, or architectural services;

    d.  Medical, surgical, dental, x-ray, or nursing services treatment, advice or instruction;

    e.  Any service, treatment, advice, or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;

    f.  Optometry or optical or hearing aid services, including but not limited to the prescribing, preparing, fitting, demonstrating, or distributing of ophthalmic lenses and similar products or hearing aid services;

    g.  Body piercing services;

    h.  Pharmacological services; and

    i.  Any other health or therapeutic service, treatment, advice or instruction.

26. **Property Damage** means physical injury to or destruction of tangible property. This includes any resulting loss of its use.

27. **Recreational Motor Vehicle** means a motorized land vehicle not licensed or registered for use on public roads and used mainly off public roads. This includes unregistered trailbikes up to 350cc. These recreational vehicles operate solely on wheels, crawler-treads, belts, or similar mechanical devices. They are not propelled by airplane-type propellers or fans. This also includes land motorized land vehicle used solely to service and while on an **insured location.**

28. **Required Underlying Insurance** means the policy or policies providing an **insured** primary liability coverage that is required to be maintained in force for the types of exposures listed and at no less than the minimum limits as scheduled in the Declarations.

29. **Residence Employee** means a person employed by an **insured,** including a **temporary worker** or **leased worker,** who performs duties in connection with the ownership, maintenance, or use of the **residence premises.** This includes household or domestic services or similar duties performed elsewhere not in connection with the **business** of an **insured.**

   **Residence employee** does not include an **incidental worker** or independent contractors.

30. **Residence Premises** means the one to four family dwelling, other structures and grounds identified by the location address as shown on the Declarations unless otherwise indicated.

31. **Retained Limit** means the greater of:

    a.  The Minimum Required Underlying Limit shown on the Declarations; or

    b.  The total limits of liability of any and all valid and collectable insurance, other than insurance purchased specifically to be excess of this policy, available to an **insured** which applies to an **occurrence.**

32. **Sexual Harassment** means unwelcome sexual advances, request for sexual favors, or other verbal, visual or physical conduct of a sexual nature when such conduct:

    a.  Is linked with a decision affecting an individual's employment;

    b.  Interferes with an individual's job performance; or

    c.  Creates an intimidating, hostile or offensive working environment for an individual.

33. **Suit** means a civil proceeding in which **damages** because of an **occurrence** to which this insurance applies are alleged. **Suit** includes, but is not limited to:

    a.  An arbitration proceeding in which such **damages** are claimed and to which the **insured** must submit or does submit with **our** consent; or

    b.  Any other alternative dispute resolution proceeding in which such **damages** are claimed and to which the **insured** submits with **our** consent.

34. **Temporary Worker** means a person who is furnished to **you** to substitute for a permanent **residence employee** on leave or to meet seasonal or short-term workload conditions. **Temporary worker** does not include independent contractors.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

35. **Watercraft** means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

36. **Wrongful Employment Act** means an actual or alleged employment related **wrongful termination, sexual harassment,** or **discrimination** that occurs during the policy period.

   With respect to Limited Employment Practices Liability Coverage under this policy and under any prior and subsequent policy(ies) issued by **us** to **you**, all continuous, repeated or related **wrongful employment acts** shall be treated as a single **wrongful employment act** and shall be deemed to occur at the time of the first **wrongful employment act.**

37. **Wrongful Termination** means:

   a. Violation of **your residence employee's** rights, other than rights based on an express, written, or oral agreement of employment, when terminating an employee relationship; or
   b. Failure to exercise duty and care on the part of **you** or an **insured** when terminating an employment relationship.

## *Coverages*

1. Excess Liability Coverage

   **We** will pay **damages** an **insured** is legally obligated to pay because of an **occurrence** covered by this policy anywhere in the world:

   a. In excess of the **retained limit** when the **occurrence** is covered by the **required underlying insurance** shown on the Declarations; or
   b. From the first dollar of **damages** when the **occurrence** is not covered by **required underlying insurance** as shown in the Declarations.

2. Excess Uninsured and Underinsured Liability Coverage

   This coverage is in effect only if an Excess Uninsured and Underinsured Liability Coverage Limit is shown on the Declarations.

   a. Excess Uninsured and Underinsured Motorists Protection Coverage

      This coverage will **follow form,** except as modified herein.

      **We** will pay the amount that an **insured** is legally entitled to recover from the owner or driver of an uninsured/underinsured **motor vehicle** or **recreational vehicle. Damages** must result from an accident arising out of the ownership, maintenance, or use of the uninsured/underinsured **motor vehicle.**

      The following conditions apply:

      (1) **You** must maintain an underlying insurance policy or policies described in the Declarations which provide uninsured/underinsured motorists coverage with the listed Minimum Required Underlying Limits.
      (2) **We** shall be liable only for **damages** in excess of the sum of:
         (a) The amount received from **your** required underlying uninsured/underinsured motorists coverage; and
         (b) The total amount received because of the loss from, or on behalf of any liable party;
         but not less than the amount of such underlying limits.
      (3) This coverage will apply only to losses that are payable by **your required underlying insurance.**

   b. Excess Uninsured/Underinsured Third Party Liability Coverage

      **We** cover **damages** that an **insured** as defined in paragraph 18.a. of Definitions is legally entitled to recover from an uninsured/underinsured third party because of **bodily injury, personal injury** or **property damage** sustained by an **insured** resulting from an **occurrence** not excluded or limited by this policy had the third party been the **insured** under this policy. This coverage is excess over any collectible insurance covering the

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

aforementioned third party for such occurrence, and no **retained limit** or **required underlying insurance** applies to limit the Excess Uninsured/Underinsured Third Party Liability Coverage. However, this coverage does not apply to an **occurrence** involving a **motor vehicle.**

An underinsured third party means a tortfeasor for which **bodily injury, personal injury** or **property damage** coverage, bonds, or other securities are in effect; however, their total amount is less than the limit of this coverage. See the Declarations for those limits.

3.  Limited Employment Practices Liability Coverage

This coverage is in effect only if a Limited Employment Practices Liability Coverage Limit is shown on the Declarations Page.

The total limit of **our** liability for the coverage provided in this policy shall be as shown in the Declarations.

**We** will pay the **damages you** or an **insured** are legally required to pay to compensate a **residence employee** arising out of a **wrongful employment act** to which this insurance applies. This coverage is in excess of the sum of any applicable underlying policies whether collectible or not, and the Deductible for this coverage as shown in the Declarations. This coverage applies only if the number of **residence employees** on staff does not exceed five at the inception date of the Policy Period.

## *Additional Coverages*

1.  **EXCESS LIABILITY**

The additional coverages below are included in the Personal Excess Liability Limit and do not increase the limit of liability.

a.  Limited Employers' Liability

**We** will provide coverage for **damages** which are not payable under workers' compensation or similar laws and which an **insured** is legally obligated to pay for **bodily injury** to **residence employee,** and subject to any applicable exclusions:

(1)  In excess of the **retained limit** when the **occurrence** is covered by the **required underlying insurance** shown on the Declarations; or

(2)  From the first dollar of **damages** when the **occurrence** is not covered by **required underlying insurance** as shown in the Declarations.

b.  Limited Residence Premises Business Liability

**We** cover **damages** an **insured** is legally obligated to pay for an **occurrence** arising out of the physical condition of a residence shown on the Declarations Page when **business, incidental business** or **professional services** are legally conducted by an **insured** at that residence. This coverage applies only if:

(1)  **You** do not have any employees conducting **business** activities at **your** residence who are subject to workers' compensation or other similar disability laws;

(2)  **You** are not a home day care provider; and

(3)  There is no other valid and collectible insurance.

**We** will provide this coverage in excess of any underlying insurance that applies to these **damages.** If no underlying coverage exists, **we** will pay total **damages,** subject to, and not to exceed, the limits of liability as specified in the Declarations Page of this policy.

c.  Coverage for Rented or Borrowed **Motor Vehicles**

**We** cover **damages** an **insured** is legally obligated to pay for **bodily injury** or **property damage** caused by

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

an **occurrence** during the Policy Period resulting from an **insured's** use of a rented or borrowed **motor vehicle,** provided the rental or loan does not exceed forty-five (45) days.

**We** will provide this coverage in excess of any underlying insurance that applies to these **damages.** If no underlying coverage exists, **we** will pay total **damages,** subject to, and not to exceed, the limits of liability specified in the Declarations Page of this policy.

d. Rented or Borrowed **Watercraft**

**We** cover **damages** an **insured** is legally obligated to pay for **bodily injury** or **property damage** caused by an **occurrence** during the Policy Period resulting from an **insured's** use of a rented or borrowed **watercraft,** provided the rental or loan does not exceed thirty (30) days and the non-owned **watercraft** is less than forty (40) feet.

**We** will provide this coverage in excess of any underlying insurance that applies to these **damages.** If no underlying coverage exists, **we** will pay total **damages,** subject to, and not to exceed, the limits of liability specified in the Declarations Page of this policy.

2. **LIMITED EMPLOYMENT PRACTICES LIABILITY**

**Employment Event Fund**

**We** cover reasonable fees and necessary expenses incurred by an **employment event management firm** for services performed to minimize potential loss as a result of an **employment event.** This coverage applies only if:

a. The **employment event** arises from a **wrongful employment act** committed during the policy period; and

b. The **employment event** is reported to **us** as soon as practicable but in no event later than thirty (30) days after **you** first contact an **employment event management firm** regarding the **employment event.**

Prior written approval from us is required for this coverage to apply to fees and expenses incurred with any **employment event management firm.**

The most **we** will pay are the fees and expenses of the **employment event management firm** until they have advised **us** that the **employment event** no longer exists or $25,000, whichever is less. The most **we** will pay is $25,000 regardless of the number of **employment events** occurring during the policy period. This limit is in addition to the Limited Employment Practices Liability limit stated on the Declarations Page. This coverage is not subject to a deductible and applies unless otherwise excluded.

3. **DEFENSE COVERAGE AND CLAIMS EXPENSE**

a. As it applies to Excess Liability or Limited Employment Practices Liability:

(1) **We** will defend a **suit** against an **insured,** with attorneys of **our** choice, resulting from an **occurrence** or **wrongful act** covered by this policy and where:

(a) The underlying insurance has been exhausted by payment of claims; or

(b) No underlying insurance applies;

even if the allegations of the **suit** are groundless, false or fraudulent. We provide this defense at **our** expense.

(2) Additionally, when we defend, **we** will pay:

(a) All court costs and expenses on judgments assessed against any **insured.**

(b) Reasonable expenses incurred by an **insured** at **our** request, up to a total of $10,000 for assisting **us** in the investigation or defense of a claim or **suit.**

(c) The cost of bail bonds required of an **insured** because of a covered loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

(d) All premiums on bonds required in a **suit we** defend, but not for bond amounts more than the coverage amount (**we** need not apply for or furnish any bond).

(e) Expenses incurred by **us.**

(f) Interest on the entire judgment against an **insured** which accrues after entry of the judgment and before **we** pay or tender, or deposit in court, that part of the judgment which does not exceed the amount of coverage.

(g) All prejudgment interest awarded against an **insured** on that part of the judgment **we** pay or offer to pay. **We** will not pay any prejudgment interest based on that period of time after **we** make an offer to pay the amount of coverage.

In jurisdictions where **we** are prevented from defending an **insured** for a covered loss because of laws or other reasons, **we** will pay any expenses incurred with **our** prior consent for the **insured's** defense.

b.  As it applies to Excess Liability, the following also applies:

**We** have the right, but not the duty, to defend any **suit** against an **insured** seeking **damages** covered under Excess Liability under this policy and also covered by the **required underlying insurance** shown on the Declarations. **We** may join, at **our** own expense, with the **insured** or any insurer who provides coverage for an **occurrence** in a **listed underlying policy** in the investigation, defense and settlement of any claim or **suit** that **we** believe may require payment under this policy. However, **we** will not contribute to costs and expenses incurred by any other insurer who provides coverage in a **listed underlying policy,** and which an insurer of such underlying policy(s) is obligated to provide.

c.  When **Our** Duty to Defend Ends

(1) As it applies to Excess Liability Coverage:

(a) **Our** duty to defend any **insured** against any claim or **suit** arising out of any one **occurrence** ends when the amount **we** have paid in **damages** for that **occurrence** equals the Excess Liability Policy Limit shown on the Declarations Page.

(b) Payments under this provision, Defense Coverage and Claim Expense, except a settlement payment, are in addition to the Personal Excess Liability Policy Limit shown on the Declarations Page.

(2) As it applies to Limited Employment Practices Liability Coverage:

(a) **Our** duty to defend any **insured** against any claim or **suit** arising out of any one **wrongful employment act** or a series of related **wrongful employment acts** ends when the amount **we** have paid in **damages** for that **wrongful employment act** equals the Limited Employment Practices Liability limits shown on the Declarations Page.

(b) Payments under Defense Coverage and Claim Expense, except a settlement payment, are in addition to the Excess Liability Policy Limit shown on the Declarations Page.

d.  Expanded Defense Coverage

Apart from any legal obligation **we** may have under the law, if **we** are defending an **insured** for any **suit** seeking covered **damages, we** will reimburse **you,** up to $10,000, for the reasonable expenses for a law firm of **your** choice to review and consult on the defense covered under this policy.

This coverage only applies to expenses incurred after the date **our** defense has begun and any applicable Deductible has been applied.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                            PERSONAL EXCESS

## *Exclusions*

A. As it applies to all coverages, this insurance does not apply to liability, **bodily injury, property damage, personal injury, defense costs,** or any other cost or expense arising out of:

1. The ownership, maintenance, use, loading or unloading of, entrustment or negligent supervision by an **insured** of, or statutorily imposed liability of an **insured** relating to the use of:

   a. Any **motor vehicle** or **recreational motor vehicle** unless insurance is provided by a **listed underlying policy** at the time of the **occurrence**.

      This exclusion does not apply to covered **damages** as provided under Rented or Borrowed **motor vehicle** when such rented or borrowed **motor vehicle** is outside of the United States.

   b. A **watercraft** unless insurance is provided by a **listed underlying policy** at the time of the **occurrence.**

      This exclusion does not apply to covered **damages** as provided under Rented or Borrowed **Watercraft** Additional Coverages; or Coverages 2.b. Excess Uninsured/Underinsured Third Party Liability Coverage

   c. An **aircraft,** except **bodily injury** to a **residence employee** of the **insured** is covered if it results from his or her employment by the **insured.**

   d. Airboats, air cushion, or similar type **watercraft** and **hovercraft.**

2. Any **motor vehicle, recreational motor vehicle,** or **watercraft** while:

   a. Used to carry persons or property for a fee or compensation;

   b. Used on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery; or

   c. Rented to others.

   Exclusion 2.a. does not apply to **motor vehicles** used in shared-expense pools. Exclusion 2.b. does not apply to occasional or part time **business** pursuits of an **insured** under age twenty-one (21) years old (age twenty-six [26] if a full-time student).

3. The use of any **motor vehicle, recreational motor vehicle,** or **watercraft** for participation in or practice for an organized competitive event, including but not limited to:

   a. Racing contest or event;

   b. Speed contest or event; or

   c. In practice or preparation for any prearranged or organized racing or speed contest or event. While used in performance testing that is done on a closed road, or a race track, or a testing facility environment where there is no competition;

   Performance testing is when an **insured** uses any **motor vehicle, recreational motor vehicle, watercraft** to:

   a. Test its performance in speed or handling; or

   b. Test or practice driver skills.

   Performance testing does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learner's permit or driver's license. Performance testing also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, driver improvement, or similarly designed courses.

   This exclusion does not apply to sailboats that are covered under this policy.

4. Any person's use of a **motor vehicle, recreational motor vehicle** or **watercraft** without permission from an

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

**insured**.

5.  The use of a **motor vehicle** or **recreational vehicle,** or a temporary substitute for such **motor vehicle** or **recreational vehicle,** by any **insured** while employed or otherwise engaged in the business of:

    a.  Selling;

    b.  Repairing;

    c.  Servicing;

    d.  Storing;

    e.  Parking;

    f.  Testing; or

    g.  Delivering, except as provided in Exclusion A. 2.

    vehicles designed for use mainly on public highways.

6.  An **insured's business property** or **business** pursuits, investment activity or any activity intended to realize a profit for either an **insured** or others;

    However, this exclusion does not apply to:

    a.  Volunteer work for an organized charitable, religious or community group;

    b.  **Incidental business** activity;

    c.  Limited **residence premises business** Liability Coverage;

    d.  Residences held for rentals which are listed on the Declarations Page;

    e.  Occasional or part time **business** pursuits of an **insured** under age twenty-one (21) years old (age twenty-six [26] if a full-time student);

    f.  An office, school, studio, barber or beauty shop if coverage is provided in **your** homeowners policy for the **residence premises.** Coverage will **follow form;** or

    g.  Home care services provided by or at the direction of an **insured** on or from the **residence premises** if coverage is provided in **your** homeowners policy for the **residence premises.** Coverage will **follow form.**

7.  An **insured's** performing or failure to perform **professional services,** or for **professional services** for which any **insured** is legally responsible or licensed.

8.  Expected or Intended Injury
    **We** do not cover any **damages** arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any **insured** to cause **bodily injury,** **personal injury** or **property damage**, even if the injury or damage is of a different degree or type than actually intended or expected.   But we do cover such damage if the act was intended to protect people or property unless another exclusion applies.

9.  Malicious or Criminal Acts
    **We** do not cover any **damages** arising out of a willful, malicious, or criminal act or omission by any **insured** whether or not the injuries or **damages** are actually intended, expected, or foreseeable by a rational person.  But **we** do cover such **damages** if the act was intended to protect people or property unless exclusion applies.

10. Any act of terrorism or by war or warlike acts, including insurrection, rebellion, or revolution. Discharge of a nuclear or biological weapon is a warlike act, even if accidental.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                     PERSONAL EXCESS

11.  An **occurrence** for which the **insured** is covered by a nuclear energy liability policy. This applies even if the limits of that policy have been exhausted.

12.  Asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos.

13.  Electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy.

14.  Exposure to, or ingestion, inhalation or absorption of, lead or lead compounds.

15.  Radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

16.  Any **contamination or pollution.**

     This exclusion also applies to any claims, **suit,** loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **contamination or pollution.**

     This exclusion does not apply to **bodily injury** arising out of routine lawn and garden care of an **insured location.**

17.  Any assessment charged against an **insured** as a member of an **association**, corporation, community of property owners, condominium or cooperative **association**.

18.  The types of contracts or agreements:

     a.  Made in conjunction with any **insured's business;**

     b.  Unwritten contracts or agreements; or

     c.  In which the liability of others is assumed after a loss.

19.  Any **insured's** obligation, including benefits required to be paid, under any of the following laws:

     a.  Workers' compensation;

     b.  Unemployment compensation;

     c.  Occupational disease;

     d.  Disability benefits;

     e.  Jones Act or General Maritime Law;

     f.  Federal Longshoremen's and Harbor Workers' Compensation Act; or

     g.  Any similar law.

20.  Any claim for uninsured motorists, underinsured motorists, uninsured boater, underinsured boater, uninsured third party liability, or underinsured third party liability unless a limit is shown for the Excess Uninsured/Underinsured Liability Coverage on the Declarations;

21.  Any no-fault insurance benefits.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

22. An **insured** transmitting a communicable disease.

23. **Property Damage** to:

   a. Property owned by an **insured,** which includes costs or expenses incurred by an **insured** or others at the direction of an **insured** to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured location;** or

   b. Property owned by others when an **insured** has physical control of it, or agreed to be responsible for it.

24. Any of the following:

   a. Judgments;

   b. Costs;

   c. Attorneys fees; or

   d. Claims

   against an **insured** for punitive or exemplary **damages**.

25. **Biological Deterioration or Damage.**

26. **Bodily injury** or **personal injury** to an **insured** as defined in Definitions 18.a. This exclusion includes any actions brought against **you** or any other **insured** to repay or pay a portion of **damages** with another person who may be obligated to pay **damages** because of **bodily injury** or **personal injury** to an **insured.**

B. As it applies to all coverages except Limited Employment Practices Liability, this insurance does not apply to liability, **bodily injury, property damage, personal injury, defense costs,** or any other cost or expense arising out of:

   1. Any **wrongful employment act,** including but not limited to **wrongful termination** of employment.

   2. Any actual, alleged, or threatened **discrimination.**

   3. Any actual, alleged, or threatened:

      a. Sexual misconduct, molestation or harassment;

      b. Corporal punishment; or

      c. Sexual, physical or mental abuse.

   4. Any **insured's** acts, errors or omissions as an officer or member of the board of directors of any corporation or organization. This exclusion does not apply to an **insured's** actions for a non-profit corporation or organization, or a condominium or cooperative **association** provided the **insured** receives no compensation other than expenses.

   5. **Personal Injury** resulting from:

      a. Willful violation of a law by or with the consent of the **insured;**

      b. The **insured's** activities in advertising or broadcasting;

      c. Libel, slander, defamation, or violation of rights of privacy if:

         (1) Made by or with the consent of the **insured;** and

         (2) Made with knowledge of their falsity; or

         (3) The injurious activities began before this policy's effective date.

      d. A violation of right of privacy if:

         (1) Made by or with the consent of the **insured;** or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                          PERSONAL EXCESS

(2)  The injurious activities began before this policy's effective date.

C.  As it applies to Limited Employment Practices Liability the following also applies:

This insurance does not provide coverage for liability, **defense costs,** or any other cost or expense arising out of:

1.  **Property Damage** or **Bodily Injury;**

2.  Or for fines, penalties, taxes, punitive, exemplary or multiplied **damages,** except where required by law; or losses for or arising out of matters which may be deemed uninsurable according to the law under which the Policy is construed;

3.  A **wrongful employment act** for which the **insured** is obligated to pay **damages** by reason of an express, written or oral agreement of employment;

4.  Or for that part of any claim or **suit** seeking non-monetary relief including, but not limited to, injunctive relief, declaratory relief, disgorgement, job reinstatement, or other equitable remedies;

5.  A violation of any of the responsibilities, obligations or duties imposed by the Employment Retirement Income Security Act of 1974, Fair Labor Standards Act (except the Equal Pay Act), the Workers' Adjustment and Retraining Notification Act, National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the Immigration Reform & Control Act of 1986, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto to any similar provisions of any federal, state, local or foreign statutory law or common law; or

6.  Any obligation under the Social Security Act including, but not limited to, any claim for lost or diminished Social Security benefits, including any amendments to that law, or similar federal, state or local statutory or common law.

## Policy Conditions

1.  Excess Liability Coverage

    The most **we** will pay for all claims for **personal injury, bodily injury** or **property damage** for any one **occurrence** is the Personal Excess Liability Policy Limit shown on the Declarations Page. This insurance applies separately to each **insured** against whom a claim is made or **suit** is brought but, **we** will not pay more than this amount in any one **occurrence** regardless of how many coverages, claims, people, or **motor vehicles** are involved in the **occurrence.** There is no limit to the number of **occurrences** during the Policy Period for which claims may be made.

2.  Excess Uninsured and Underinsured Liability Coverage

    The most **we** will pay in covered **damages** under this coverage for any one **occurrence** is the Excess Uninsured and Underinsured Liability Coverage Limit shown on the Declarations Page, regardless of the number or type of **motor vehicles** or **residence premises** listed on the Declarations Page. **We** will not pay more than this amount in any one **Occurrence** regardless of how many claims, people or **motor vehicle**s are involved in the **occurrence.** There is no limit to the number of **occurrences** during the Policy Period for which claims may be made.

3.  Limited Employment Practices Liability

    a.  Limits

        (1)  Annual Aggregate

            The most **we** will pay for the sum of all losses for all claims under this coverage is the limit shown as the Annual Aggregate for Limited Employment Practices Liability shown on the Declarations page. Each loss payment **we** make for such claims reduces the Annual Aggregate by the amount of the payment. This reduced limit will then be the amount available for any further claims for the remaining portion of the Policy Period.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                    PERSONAL EXCESS

(2)  Each **Wrongful Employment Act**

Subject to the Annual Aggregate Limit, the most **we** will pay for all losses for all claims because of any one **wrongful employment act** is the Each **wrongful employment act** limit shown for Limited Employment Practices Liability shown on the Declarations page.

This insurance applies separately to each **insured** against whom a claim is made or **suit** is brought, regardless of how many claims or people are involved, but **we** will not pay more than the Annual Aggregate nor more than the each **wrongful employment act** limit for any one **wrongful employment act.**

b.  Deductible

The Deductible amount shown for Employment Practices Liability on the Declarations page shall be subtracted from the amount of **damages** as a result of any one **wrongful employment act,** regardless of how many claims or people are involved.

The limits will not be reduced by the application of the Deductible amount. Notice of claim or **suit** and **our** right to investigate and negotiate any such claim or **suit,** apply irrespective of the application of the Deductible amount.

4.  Maintenance of **Required Underlying Insurance**

**You** and other **insureds** must maintain **required underlying insurance** in full effect for the minimum **retained limits** shown on the Declarations. If, at the time of an **occurrence,** the **required underlying insurance** that is applicable to the **occurrence** is not fully collectible because:

a.  **You** or another **insured** has/have failed to maintain such Minimum **required underlying insurance** in the amount of the **retained limits**;

b.  The limits, terms or conditions of such **required underlying insurance** have been reduced or restricted for specific exposures;

c.  The insurer of such **required underlying insurance** is bankrupt, insolvent or in receivership; or

d.  **You** or an **insured** have failed to meet **your** contractual responsibilities under such **required underlying insurance;**

then **we** will pay only as though the **required underlying insurance** was in effect for the minimum **retained limits** stated on the Declarations Page.

5.  Other Insurance. Coverage under this policy is:

a.  Excess over any other valid and collectible insurance, except in the case where the other insurance is written specifically as excess over the limits of this policy.

b.  Primary if the limits of **required underlying insurance** shown on the Declarations, or other available insurance, have been exhausted due to payment of loss covered thereunder.

c.  Excess if the limits of **required underlying insurance** shown on the Declarations, or other available insurance, have been reduced due to payment of loss covered thereunder.

6.  **Your** Duties After a Loss

In the event of an **occurrence, wrongful employment act,** or wrongful act which is likely to involve this policy, or if **you** or any other **insured** under this policy are sued or a claim is made against **you** in connection with an **occurrence, wrongful employment act,** or wrongful act which may be covered under this policy:

a.  **You** must notify **us** or **our** agent as soon as practicable of the time, place and other circumstances of the **occurrence, wrongful employment act,** or wrongful act and provide **us** with the names and addresses of

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                                PERSONAL EXCESS

any persons injured and any available witnesses.

b.  An **insured** must:

(1)  Timely provide **us** with any notice, demand, suit papers and any other documents relating to the **occurrence**.

(2)  Assist and cooperate with **us** in the investigation, settlement or defense of any claim or suit including but not limited to:

(a)  providing statements and if necessary examinations under oath

(b)  submit to physical exams by physicians **we** select and pay for;

(c)  authorize **us** to obtain medical reports and other pertinent records;

(d)  provide sworn proof of loss when required by **us**;

(e)  enforcement of any right or contribution or indemnity against any person or organization who may be liable to an **insured**;

(f)  attend hearing and trials; and

(g)  securing and giving testimony and other evidence and obtain the attendance of witnesses.

7.  Loss Payment

**Our** duty to make payment for an **occurrence** covered by this policy only occurs once **our** liability has been determined by an agreement to which we consent in writing or a final judgment is entered against the **insured** to which this insurance applies.

8.  Appeals

If an **insured** or other insurer elects not to appeal a judgment exceeding the **retained limit** or other insurance, **we** may do so. **We** will pay the cost and interest incidental to the appeal. **We** will not be liable for more than the limit shown on the Declarations plus the incidental cost and interest.

9.  Assistance and Cooperation

**We** are not required to settle or defend a claim or **suit** against an **insured** which is covered by **required underlying insurance. We** do have a right to join in the defense and control a claim or **suit** which will likely require **us** to pay. When **we** join, **we** and the **insured** will cooperate in good faith.

10.  Subrogation

When **we** pay, an **insured's** rights of recovery from anyone else become **ours** up to the amount **we** paid. This includes rights to claims against any other insurer which failed in its obligation to provide insurance applying to the **occurrence. The insured** must protect these rights and help **us** enforce them.

11.  Policy Transfer

Interest in this policy may not be transferred without **our** written consent. If an **insured** dies, becomes bankrupt or insolvent, the **insured's** legal representative is covered for the rest of the policy term. The representative is only covered while acting in that capacity.

12.  **Suit** Against **Us**

a.  No action shall be brought against **us** unless there has been full compliance with all the terms under this policy.

b.  No one will have the right to join **us** as a party to any action against an **insured.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

c.   Also, no action can be brought against **us** until the obligation of such **insured** has been determined by final judgment or agreement signed by **us.**

d.   **We** will also not be liable for the **insured's** share of any payment due because of a settlement or judgment for which the **insured** is responsible under any deductible provision.

13.   How **Your** Policy May Be Changed

a.   Any part of this policy which may be in conflict with statutes of the state in which this policy is issued is hereby amended to conform.

b.   Any **insured** will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c.   A waiver or change of a part of this policy must be in writing by **us** to be valid.

d.   The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium during the policy period.

e.   The named **insured** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy.

14.   Renewal

This policy is written for a specific policy period as shown on the Declarations. **We** may renew it for successive policy periods subject to the following conditions:

a.   Renewal will be in accordance with the policy forms, rules, rates and rating plans in use by **us** at the time.

b.   All premiums, premium installment payments and fees must be paid when due.

c.   Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us.**

15.   Cancellation

**We** may cancel this policy as stated below by letting **you** know in writing of the date cancellation takes effect. This cancellation notice will be mailed to **you** at **your** mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

a.   Any named **insured** may cancel this policy at any time by returning it to **us** or by notifying **us** orally or in writing of the future date cancellation is to take effect.

b.   When **you** have not paid the premium, **we** may cancel at any time by letting **you** know at least ten (10) days before the date cancellation takes effect.

c.   When this policy has been in effect for less than sixty (60) days and is not a renewal with **us, we** may cancel for any reason by letting **you** know at least ten (10) days before the date cancellation takes effect.

d.   When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal with **us, we** may cancel by letting **you** know at least thirty (30) days before the date cancellation takes effect.

16.   Nonrenewal

**We** may elect not to renew this policy. **We** may do so by mailing to **you** at **your** mailing address shown in the Declarations, written notice at least thirty (30) days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                         PERSONAL EXCESS

17.  Other Termination Provisions

 a.  When this policy is cancelled, the premium from the period from the date of cancellation to the expiration date will be refunded pro rata.

 b.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us, we** will refund it within a reasonable time after the date cancellation takes effect.

18.  Bankruptcy

Bankruptcy or insolvency of:

 a.  An **insured** will not relieve **us** of **our** obligations under this policy; nor will it cause this policy to become primary in the event the **insured** providing underlying coverage is not able to satisfy the **retained limit,** either because of insufficient insurance or insufficient personal assets.

 b.  Another insurance carrier providing underlying coverage will not cause the insurance provided by this policy to replace such underlying coverage. The coverage provided by this policy will apply as if the underlying coverage was valid and collectible.

19.  Concealment, Fraud, or Misrepresentation

 a.  This policy was issued in reliance on the information **you** provided at the time of **your** application for insurance coverage. **We** may void this policy, deny coverage under this policy, or, at **our** election, assert any other remedy available under applicable law, if you, or any **insured** seeking coverage under this policy, knowingly or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

 b.  **We** may void this policy, deny coverage for an accident or loss, or at **our** election, assert any other remedy available under applicable law, if any **insured** or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

 c.  No person or organization who engages in fraudulent conduct in connection with the application process, an accident or filing a claim, or engages in any material misrepresentation regarding the issuance of this policy shall be entitled to receive any payment under this policy at any time.

20.  Severability of Insurance

This insurance applies separately to each **insured.** This condition does not increase **our** limit of liability for one **occurrence.**

21.  Transfer of Control

**You** may take over control of any outstanding claim or **suit** previously reported to **us** only if **we** both agree that **you** should, or if a court orders **you** to do so. If **your** limits are exhausted, **we** will notify **you** of all outstanding claims or **suits** that **you** can take over control of the defense. **We** will help transfer control to you. **We** shall take whatever steps are necessary to continue the defense of any outstanding claim, and avoid a default judgment during the transfer of control to you. If **we** do so, **we** shall not waive or give up any of **our** rights. **You** shall pay all reasonable expense **we** incur for taking such steps after the limits have been exhausted.

22.  Optional Payment of Premium in Installments

The first named **insured** may pay the premium for this policy in installments, under terms and conditions approved where required by the Department of Insurance. For each separate installment payment there may be an installment service charge.

23.  Non-sufficient Funds and Late Payment Charges

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                                          PERSONAL EXCESS

The company reserves the right to impose a fee for any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

24. Policy Period and Territory

The Policy Period is stated on the Declarations Page. This policy applies to:

a. An **occurrence** which takes place anywhere in the world; or

b. A **wrongful employment act** which takes place anywhere in the world, but only if the claim is made and a **suit** is brought for such **wrongful employment act** or wrongful act in the United States of America, its territories or possessions.

25. Additional Insured—Non Occupant

An additional **insured** may be named in this policy. If listed on the Declarations, the additional **insured** is protected for liability for the ownership, maintenance, or use of the **residence premises.** This provision does not increase the amount of insurance.

If **we** decide to cancel or not to renew this policy, the person or organization named in the Declarations will be notified in writing.

26. Assignment

Assignment of this policy will not be valid unless **we** give **our** written consent.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

**Private Client**

## NATIONWIDE PRIVATE CLIENT

Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Robert W. Horner III
Secretary

Paul VanDenBosch
President, Nationwide Private Client

The information contained herein replaces any similar information contained elsewhere in the policy.

Underwritten by Crestbrook Insurance Company

G8001 (07-18)
Page 1 of 1

**Nationwide**®

CRESTBROOK INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GEORGIA AMENDATORY ENDORSEMENT

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

1. Definitions, Item 9., is replaced by the following:

   9. **Contamination** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:
      (1) Solid, liquid, gaseous, or thermal irritants or **contaminants;**
      (2) Vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;
         (a) Fuel oil and other petroleum products; or
         (b) Any other waste materials or other irritants, **contaminants.**

2. Definitions, Item 23., is replaced by the following:

   23. **Occurrence** means an accident, including continuous or repeated exposure to the same general condition. It must result in b**odily injury, property damage** or **personal injury** caused by an **insured**. The **occurrence** resulting in b**odily injury** or p**roperty damage** must be during the policy period. The **occurrence** resulting in **personal injury** must be due to an offense first committed during the policy period.

   With respect to p**ersonal injury** covered under this policy and under any prior and subsequent policy(ies) issued by **us** to **you,** all continuous, repeated or related offenses shall be treated as a single offense and shall be deemed to occur at the time of the first offense.

3. Definitions, Item 24., is replaced by the following:

   24. **Personal Injury** means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
       a. False arrest, detention or imprisonment;
       b. Malicious prosecution;
       c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
       d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, or;
       e. Oral or written publication in any manner, including electronic publication, of material that violates a person's right of privacy.

4. Definitions, Item 32., is replaced by the following:

   32. **Sexual Harassment** means unwelcome sexual advances, request for sexual favors, or other conduct of a sexual nature when such conduct:
       a. Is linked with a decision affecting an individual's employment;
       b. Interferes with an individual's job performance; or
       c. Creates an intimidating, hostile or offensive working environment for an individual.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

The words "sexual harassment" appear in this policy, but **sexual harassment** as defined herein only applies as it appears in the definition of **Wrongful Employment Act**.

5.  Definitions, Item 38., is added to the policy:

    38. **Electronic Aggression** means any type of harassment or bullying committed:

    a.  by means of an electronic forum, including but not limited to a blog, an electronic bulletin board, an electronic chat room, a gripe site, a socialnetworking site, a web site, or a weblog; or

    b.  by other electronic means, including but not limited to email, instant messaging, or text messaging.

6.  Coverages, Item 3., Limited Employment Practices Liability Coverage, is amended by adding the following paragraph:

    Except to the extent coverage is provided by this **policy for a Wrongful Employment Act,** there is no other coverage for any claim or **suit** which seeks **damages** arising out of or in any way related, in whole or in part, to the actual, alleged or threatened sexual misconduct or molestation, corporal punishment, physical or mental abuse, or sexual harassment.

7.  Exclusions, Items A. 10. and 12., are removed from the policy.

8.  Exclusions, Item A. 14., is replaced by the following:

    14. Exposure to, or ingestion, inhalation or absorption of, lead or lead compounds at an owner occupied location.

9.  Exclusions, Item A. 16., is replaced by the following:

    16. Any **contamination.**
    This exclusion also applies to any claims, **suit,** loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **contamination.**

10. Exclusions, Item A. 27., is added to the policy:

    27. Any acts or omissions relating directly or indirectly to any form of **Electronic Aggression** by an **insured.**

11. Exclusions, Item B. 3., is replaced by the following:

    3.  Any actual, alleged, or threatened:
    a.  Sexual misconduct or molestation;
    b.  Corporal punishment;
    c.  Physical or mental abuse; or
    d.  Harassment, including sexual harassment.

12. Policy Conditions, Item 6., **Your** Duties after a Loss, paragraph a., is replaced by the following:

    a.  Give immediate notice to **us** or **our** agent of the time, place and other circumstances of the **occurrence, wrongful employment act,** or wrongful act and provide **us** with the names and addresses of any persons injured and any available witnesses.

13. Policy Conditions, Item 12., **Suit** Against **Us**, is amended by adding paragraph e.:

    e.  However, any legal action brought against us as a consequence of **our** denial of a claim must be started within two (2) years after the date of loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

14. Policy Conditions, Item 15., Cancellation, is replaced by the following:

    a. **You** may cancel this policy at any time by returning it to **us** or by giving advance written notice of the date cancellation is to take effect, subject to the following:

        (1) If only **your** interest is affected, the effective date of cancellation will be either the date **we** receive **your** notice or the date specified in the notice, whichever is later.

        (2) If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, **we** will mail or deliver at least ten (10) days notice to **you** and the third party as soon as possible after receiving **your** request for cancellation. **Our** notice of cancellation will state the effective date of cancellation, which will be the later of the following:

        (1) 10 days from the date of mailing or delivery of **our** notice; or

        (2) The effective date of cancellation stated in **your** notice to **us.**

    b. We may cancel this policy only for the reasons stated in this condition by notifying **you** in writing of the date cancellation takes effect. This cancellation notice will be mailed to **you** at the address shown in the policy. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

        (1) When **you** have not paid the premium, whether payable to **us** or **our** agent or under a finance or credit plan, **we** may cancel at any time by notifying **you** at least 10 days before cancellation takes effect.

        (2) When this policy has been in effect 60 days or less and is not a renewal with **us**, **we** may cancel for any reason by notifying **you** at least 20 days before cancellation takes effect.

        (3) When this policy has been in effect more than 60 days, or at any time if it is a renewal with **us,** **we** may cancel if by letting **you** know at least 30 days before cancellation takes effect.

15. Policy Conditions, Item 16., Nonrenewal, paragraph b., is replaced by the following:

    b. If **we** elect not to renew, **we** will mail written notice to the first named **insured,** at the address shown in this policy, at least thirty (30) days before the end of the policy period. The reason(s) for nonrenewal will be included. A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal service will be sufficient proof of notice.

16. Policy Conditions, Item 17., Other Termination Provisions, paragraph b., is replaced by the following:

    b. If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us**, **we** will refund it no later than the date cancellation takes effect unless an audit or rate investigation is required. In that case, the premium will be returned as soon as practicable, but no later than 30 days after the conclusion of the audit or investigation.

17. Policy Conditions, Item 19., paragraphs a. and b., are replaced by the following:

    a. This policy was issued in reliance on the information **you** provided at the time of **your** application for insurance coverage. **We** may cancel this policy, deny coverage under this policy, or, at **our** election, assert any other remedy available under applicable law, if **you**, or any **insured** seeking coverage under this policy, knowingly or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

    b. **We** may cancel this policy, deny coverage for an accident or loss, or at **our** election, assert any other remedy available under applicable law, if any **insured** or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

18. Policy Conditions, Item 27,, is added to the policy:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010

CRESTBROOK INSURANCE COMPANY

27. **Our** Right to Recompute Premium

**We** established the premium for this policy based on the statements **you** made in the application for insurance. **We** have the right to recompute the premium if **we** later obtain information which affects the premium **we** charged.

**All other provisions of the policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2010