IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 502022CA012238XXXXMB

WILLIAM J. PULTE, an individual,

     Plaintiff,

          vs.

BRANDON JONES, an individual,

     Defendant.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, WILLIAM J. PULTE ("Pulte"), by and through his undersigned counsel, files this his First Amended Complaint, and alleges as follows:

## Introduction

1.     This action arises out of the malicious campaign of harassment by BRANDON JONES ("Jones"), the disgraced incoming Chief Operating Officer of PulteGroup Inc. ("PulteGroup"), to defame, cyberstalk, and incessantly harass Pulte through a sophisticated network of stolen and fictitious identities ("bots," "botnet," or "bot network") on Twitter.

2.     As part of Jones' harassment campaign, Jones stole the identity of Pulte's dead grandfather, the Founder of PulteGroup.

3.     Jones stole the identity of PulteGroup's Founder to publish universally accessible, defamatory statements on behalf of Pulte's dead grandfather about Pulte to millions of people.

4.     Jones ultimately admitted to operating multiple fraudulent identities, Ex. A (filed under seal), after directing a representative to publicly lie about the claims, further injuring Pulte.

5.     Jones' bot network accuses Pulte and the Pulte family of crimes they did not commit.

Exhibit "C"

6.      Jones' bots falsely allege that Pulte or one of his close family members committed significant crimes, including arson, elder abuse, securities laws violations, and drug abuse.

7.      Jones is none of the people below, yet he took their identities to fool millions of Twitter users in his incessant harassment and defamation campaign against Pulte:



8.      Pulte recently discovered that Jones was the person behind an additional identity. In a sick and outrageous act of malice, Jones stole the obituary photo and other identifying information of Pulte's grandfather for the sole purpose of cyberstalking, harassing, and defaming Pulte.





9.  Jones intended to hurt Pulte because Jones knew Pulte was extremely close with his grandfather, with whom he shares the same name, William J. Pulte.

10.  Jones also impersonated another dead man, Kentucky resident Raymond Porter (deceased), for the sole purpose of incessantly cyberstalking, defaming, and harassing Pulte:



11.  Jones' "digital grave robbing" and campaign of electronic aggression was so extraordinary that PulteGroup wrote a letter to Jones about his conduct, labeling Jones "dishonest" and terminating Jones for cause. Ex. B (filed under seal).

12.  Jones remains unremorseful of his conduct.

13.  Jones' minimum cooperation with discovery has turned up evidence that shows that that PulteGroup's "independent investigation" was incomplete and missing critical data.

14.  Jones has attempted to make unwanted and non-consensual contact with Pulte 11 times in one day.

15.  Jones has attempted to make unwanted and non-consensual contact with Pulte 46 times in a month.

16.     Jones has attempted to make unwanted and non-consensual contact with Pulte hundreds of times.

17.     Pulte had never even met Jones before Jones' campaign of electronic aggression against Pulte began. This suggests that Jones is doing the bidding of his longtime best friend and former boss, current Chief Executive Officer of PulteGroup, Ryan Marshall ("Marshall").

18.     Despite PulteGroup firing Jones for "dishonest" conduct and representing to the investing public Marshall is not involved, text messages from initial jurisdictional discovery paint a different picture: as seen in text messages with Jones, Ryan Marshall is secretly and actively working to attack and harass Pulte, both online and offline, for daring to make these claims public.

19.     While Jones led this extensive defamation and cyberstalking campaign, the backdrop of Jones' campaign is that Marshall (Jones' longtime best friend) has a long history of attacking Pulte, in text messages, email messages, and other means of communication.

20.     One of Marshall's malicious attacks against Pulte occurred in late 2019 when Marshall made the frivolous and baseless claim that Pulte violated PulteGroup's trademark when Pulte used his own name, "Pulte," in his profile on Twitter. Marshall even tried to take Pulte's Twitter handle @Pulte, although Marshall ultimately failed at that effort. Exhibit C shows Marshall's VP, Todd Sheldon ("Sheldon") demanding confiscation of Pulte's Twitter handle. Marshall used his bogus argument of confusion to improperly attempt to remove Pulte from PulteGroup's board of directors. Sheldon stated this was the reason for Pulte's removal from the board, even though Pulte was given accolades by peers and was a Director in good standing.

21.     Jones has stated that he improperly obtained information from Marshall about Pulte and about Pulte's time on the board. Upon information and belief, Jones used this information from Marshall to weaponize his bots against Pulte. It is important to note that Pulte had never met

4

Jones and only worked with Marshall. It is highly unusual, irregular, and improper for a CEO of a publicly-traded company, like Marshall, to discuss a Director of a publicly-traded company, like Pulte, as to that director's board activities with a subordinate, and even more improper for that employee to use that information to harm a sitting and former director of that public company.

22.     In taking on victims' personas online, Jones was able to use the Internet as a weapon to carry out his vendetta against Pulte under cover of darkness, thinking his true identity would never be discovered. Jones has a notorious personal internet history and understanding of technologies, including the Internet and online Tesla forums.

23.     Upon information and belief, Jones has attacked Pulte since September 8, 2016, and Jones' attacks continue to this day.  Often, Jones's comments are made with non-public, confidential information likely from Marshall and possibly others.

24.     The online and offline harassment campaign, which is increasingly aggressive against Pulte by Jones, is retaliatory. Pulte turned around PulteGroup in 2016 and removed Jones and Marshall's mentor, Richard Dugas, the old CEO of PulteGroup. In 2018, Pulte blocked Marshall from promoting Jones to COO when Pulte was on the board of PulteGroup. Pulte's independence on the board and fiduciary obligations to fellow shareholders was an irritant to irresponsible managers like Marshall who wanted to remain unaccountable in promoting Jones.

25.     Pulte, who is one of PulteGroup's largest individual shareholders, has also been critical of Jones spending company time and money to carry out this harassment campaign against Pulte and other victims.  Pulte has also been critical of Jones and Marshall's propensity to hire, promote, or terminate individuals based on personal favoritism, in disregard of labor laws and ethical business practices.

26.     Pulte, as a large individual shareholder, has also expressed concerns about Jones and Marshall's poor treatment of PulteGroup employees.

27.     PulteGroup employees have voiced their concerns about Jones and Marshall's poor treatment of PulteGroup employees.  As reported by CNN: *"Homebuilding company executive carried a noose and warned employees 'not to hang themselves' in meeting, lawsuit says,"* Nicole Chavez, CNN (May 18, 2023). Ex. D.

28.     Jones uses this bot network to target, publish, and artificially amplify incessant, targeted, coordinated, harassing, and malicious attacks on Pulte - a prominent Florida resident.

29.     Each statement was a brick in a larger campaign to make the process of exercising speech crippling, to get Pulte to engage in self-censorship while his public Twitter timeline was filled with hate, negativity, and in many cases libel that Pulte would need to combat or correct.

30.     The Department of Justice says that cyberstalkers can cause long-lasting damage to the reputations of their victims for their own selfish gain. Pulte is not the only victim of Jones. Outside of this matter, Jones multiple other victims include:

- Jones stole the identity of Stephen Richardson ("Victim 2"), a physical trainer located in California. Richardson is suing Jones for stealing his identity which was used to allegedly impersonate Richardson online.

- Another victim, a North Carolina locksmith ("Victim 3"), alleged that Jones used his fake identities to falsely accuse the locksmith of criminal conduct, which the locksmith argues has hurt his business.

- As stated above, Jones stole the identity of a deceased victim, Raymond Porter ("Victim 4"), a dead man from Kentucky, to publish universally available statements on behalf of the deceased. Ex. E

▪ Jones appears to have multiple victims, both inside and outside his workplace.

31.     Upon information and belief, Marshall and Sheldon publicly covered up Jones' behavior to investors by issuing a public statement stating that Jones – contrary to Pulte's claims – did not use Artificial Intelligence.  Yet, Jones admitted on September 11, 2023 that he did in fact use Artificial Intelligence in his bot network, despite Marshall and Sheldon issuing a false public statement to the contrary.

32.     Jones has succeeded in inflicting economic and reputational damage and distress in Pulte's life.

33.     Jones maintains several Twitter accounts under various aliases and at least three main accounts were used to harass and defame Pulte. To this day, Jones maintains at least one fictitious account to monitor and stalk Pulte, and has slanderous conversations about Pulte to third parties.

34.     Jones' bots wait for posts from Pulte and then the bots jump into the public comments to plant falsehoods, make statements that either are not true or rely on confidential, nonpublic information to disparage Pulte's reputation.

35.     To avoid detection, and after hurling insults at Pulte and his fans, Jones will often delete his bot's public tweets.

36.     Jones committed multiple acts of electronic aggression against Pulte. Jones committed harassment and bullying against Pulte through an electronic forum, including but not limited to the blog / social networking site, but also by other electronic means, including but not limited to email, instant messaging or text messaging.

37.     Upon information and belief, Jones' tortious conduct began on September 8, 2016, and continues to this date.

## PARTIES

38.     Pulte is an individual residing in Palm Beach County, Florida.

39.     Jones is an individual residing in Georgia.

## JURISDICTION AND VENUE

40.     While Jones was physically present in the state of Florida, Jones defamed and committed torts against Pulte, a Florida resident.

41.     Jones engaged in an extraordinary amount of business and personal activities in Florida. In fact, between November 2021 and November 2022 alone:

- Jones had at least 93 phone conversations with contacts in Florida

- Jones sent over 273 emails to contacts in Florida

- Jones traveled to Florida at least 6 different times

- Jones made at least 157 unwanted contacts to Florida resident Pulte

- Jones made 46 unwanted contacts in a month with Florida resident Pulte

- Collectively, these actions clearly demonstrate Jones' substantial presence and ongoing engagement within the jurisdiction, thus warranting the court's exercise of general jurisdiction over him in this matter.

42.     On November 30, 2021, Jones boarded PulteGroup's private jet headed to Jacksonville, Florida with PulteGroup CEO, Ryan Marshall.  After landing in Florida with Marshall, Jones published at least one defamatory statement to publicly sow doubt about Pulte, and to make Pulte seem professionally ignorant and wrong about home lending and home renting – two areas key to Pulte's career and profession. Jones published this statement from Florida from one of his fictitious Twitter aliases, "Stephen Matthews":



43.     On April 26, 2022, a day that Jones was physically present in Florida for official PulteGroup business, Jones published the following tweet again using another man's identity below with account name @stephen_matthe:



44.     The Twitter posts published by Jones were aimed at a Florida audience.

45.     Numerous Florida residents saw Jones' defamatory public statements, including those he made while physically present in the state of Florida.

46.     In addition, Jones replied to Twitter posts by Pulte, or otherwise directed Twitter posts to Pulte by including Pulte's Twitter name @pulte, thereby ensuring that Jones' posts were published to Pulte, a Florida resident, as well as Pulte's Twitter followers, many of whom reside in Florida.

47.     Jones also used these fake Twitter accounts to reply directly to posts by Florida residents, thereby publishing statements to Florida residents.

48.     Jones used the fake Twitter account @GhostOfBPulte to impersonate a beloved Florida resident, Pulte's grandfather, William J. Pulte III, to deliberately inflict severe emotional distress on a Florida resident, Pulte.

49.     Shockingly, Jones stole the information he used to create the @GhostOfBPulte account from Pulte's grandfather's obituary.

50.     Additionally, Jones's fake Twitter account @EverythingTaket identified the "user" Catalina Chen, as residing in Florida:



51.     Twitter's user profile settings allow a user to assign an account a location but it is not a requirement.  Thus, to further optimize his campaign of harassment targeted at Pulte in Florida, Jones opted to use this feature. By assigning his fake profiles a location in Florida, Jones, intentionally and directly, caused these accounts' posts to be more likely to appear in other Florida-

based Twitter users' feeds.  By assigning his fake profiles a Florida location, Jones thereby intentionally directed his defamatory and abusive statements into Florida.

52.     Jones has said that he appropriated this A.I. generated image of a woman from the website, thispersondoesnotexist.com, an AI company that allows any browser to refresh/reload the page as many times as they want. This was clearly an intentional attempt to utilize a race and gender that was not his own to conceal his own identity and pretend to be a former PulteGroup employee who was an Asian female who resided in Florida. Jones could have had no other purpose except to deceive Pulte and Jones' readers, and achieve maximum persuasive effect to make Pulte look like he callously laid off employees who were members of a protected class.



53.     Jones made unwanted contact with Pulte (a Florida resident) directly, via electronic message on Twitter, while Pulte was in Florida:



54.     Jones had Florida residents following his fake social media accounts and followed Florida residents using his fake social media accounts.

55.     During all relevant times, Jones knew that Pulte was a resident of Florida.

56.     During all relevant times, Jones knew that several members of the Pulte Family were residents of Florida.

57.     During all relevant times, Jones knew that many of Pulte's followers on Twitter were residents of Florida.

58.     During all relevant times, Jones knew that his defamatory tweets would be seen by Florida residents.

59.     During all relevant times, Jones knew and intended that his tortious conduct would cause harm to Pulte in the state of Florida.

60.     Jones served as PulteGroup's Southeast Area President where he was responsible for the company's operations in Florida.  Jones also managed the company's only manufacturing facility, located in Jacksonville, Florida.

61.     Jones managed the Florida team for PulteGroup. Rich McCormick ("McCormick") is the head of all of Florida for PulteGroup and was based in Florida, and Jones was McCormick's boss.

62.     Between November 2021 and November 2022, at least sixteen (16) of Jones' reports resided and worked exclusively in the state of Florida.

63.     Several other of Jones' reports also did work in Florida.

64.     Between November 2021 and November 2022, Jones sent hundreds of emails into Florida on behalf of PulteGroup.

65.     Between November 2021 and December 2022, Jones had at least ninety-three (93) phone conversations with Florida residents.

66.     Between November 2021 and November 2022, Jones made at least six different trips to the state of Florida on behalf of PulteGroup, spending a total of nine days in Florida.

67.     Jones's defamatory harassment campaign was in retaliation for Pulte, a former member of PulteGroup's Board of Directors, opposing Ryan Marshall's proposal to promote Jones to Chief Operation Office of PulteGroup.

68.     Jones used the bot network to respond to tweets by Pulte, a Florida resident, that concerned PulteGroup to counter what Jones thought about PulteGroup.

69.     Most tweets Jones targeted at Pulte directly involve Plaintiff's role and relationship with PulteGroup.

70.     Jones' retaliatory acts of defamation and harassment against Pulte, and Jones' deliberate infliction of emotional distress on Pulte, a Florida resident, were done for the purpose of advancing the business interests of PulteGroup and its leadership team in Florida.

71.     Jones owned shares in PulteGroup, who conducts a significant portion of its business in Florida.

72.     PulteGroup is generally present in Florida, is registered to do and regularly conducts business in Florida, does billions of dollars of revenue in Florida, and has offices and a manufacturing facility in Florida.

73.     Jones edited statements about Pulte (which are also believed to be defamatory) that PulteGroup sent to its Florida employees.

74.     Florida is its own area within the PulteGroup business and sales structure.

75.     Florida was PulteGroup's most profitable area when Jones was working for PulteGroup.

76.     Jones used PulteGroup resources in posting the defamatory tweets about Pulte.

77.     Jones frequented Florida with his family at least three (3) times between 2021 and 2022.

78.     Jones' phone records indicate that he used numerous IP addresses from Florida.

79.     This Court has jurisdiction over Jones under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(2), because: (a) Jones committed a tortious act in this state by publishing at least one and maybe two defamatory statements in Florida and by deliberately inflicting severe emotional distress on Pulte in Florida; (b) the posts were aimed at a Florida audience and accessed by Florida residents; and (c) Jones' conduct violated Florida's cyberstalking statute, Fla. Stat. § 784.048(2), which was enacted to protect Florida residents like Pulte from precisely the type of conduct in which Jones engaged.

80.     Defamatory material published on the World Wide Web and available in Florida are "published" in Florida, for the purpose of satisfying Florida's long-arm statute, when the

material is accessed by a third party in Florida. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010):

> *When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.*

*Id*. at 1214-1215 (emphasis added).

81.     This Court also has jurisdiction over Jones under Florida's long-arm statute, Fla. Stat § 48.193(1)(a)(1), because Jones operated, conducted, engaged in, and carried on business in Florida on behalf of PulteGroup in that Jones directed those published statements at a Florida resident (Pulte) for the purpose of operating, conducting, engaging in, or carrying on the business of PulteGroup, a corporation that is a foreign corporation authorized to do business in Florida which has large and significant business interests in Florida and is generally present in Florida.

82.     Additionally, this Court has general personal jurisdiction over Jones because of his continuous and systematic contacts with Florida, including his activities as an employee of PulteGroup.

83.     Jones has waived the defense of lack of personal jurisdiction by seeking and obtaining affirmative relief from this Court.

84.     This is a Complaint for equitable relief and damages in excess of $75,000, exclusive of attorney's fees and costs.

85.     Venue for this action lies in Palm Beach County, Florida, as the tortious acts occurred or were published in Palm Beach County, Florida, and are causing damage to Pulte who is situated in Palm Beach County.  Thus, the causes of action accrued in Palm Beach County.

## FACTUAL ALLEGATIONS

### A.    Jones' Bot Network

86.    Jones's tactics are calculated, deliberate, malicious, defamatory, and unlawful. Jones' published statements were outrageous and were intentionally and deliberately directed at Pulte for the purpose of inflicting severe emotional distress.

87.    Jones intentionally created these aliases and intentionally set profile images and wrote falsified biographies in an attempt to hide his true identity and conceal his real identity from legal consequences.

88.    Jones intentionally targeted Pulte's public statements in an attempt to discredit him and intentionally targeted readers and supporters of Pulte in an attempt to ruin Pulte's relationships with third parties.

89.    Jones intentionally made his messages as persuasive as possible to maximize their effect. Jones consciously and carefully read every single public statement made by Pulte, totaling thousands and thousands of statements.

90.    All of Jones' behavior over the Internet required knowledge of the features he accessed, a strategic goal he pondered, planned, and enacted over months and years, and actions he intentionally took time and time again. Jones sought the ruin of Pulte under cover of darkness (stolen and fake identities) and would not stop until he was caught or actualized his malicious goal. To this day, Jones still seeks to ruin Pulte.

91.    Jones has been internet stalking, defaming, and harassing Pulte on Twitter, and possibly several other websites, since at least 2016 and deliberately for the purpose of inflicting severe emotional distress on Pulte and his family.

92.     Jones used these three accounts, often in tandem, to give the illusion of a conversation amongst at least three people, but really the conversation is just Jones talking to himself.  For example, he socially engineered an incident of harassment against Pulte, and a short time later amplified it from his other account(s).  Often, he used his bot accounts to engage with other Twitter accounts to disrupt Pulte's follower base.

93.     Jones' use of multiple personal accounts violates several of Twitter's Terms of Service parameters, including but not limited to "abuse/harassment," "hateful content," manufactured conversations, and posting from multiple accounts.

94.     Specifically, Twitter prohibits the practice Jones has and continues to use to defame and harass Pulte, namely "creating multiple accounts to post duplicative content or create fake engagement, including: posting identical or substantially similar tweets or hashtags from multiple accounts you operate."  *See* Ex. F. (Twitter's Terms of Service).

95.     Jones maintains several Twitter accounts under various aliases, but three accounts were used to harass and defame Pulte.

96.     First, Jones created the Twitter account @GoDetroitWin, which initially was under the profile name of "Pistons Fan."

97.     To conceal his own identity, Jones changed the displayed profile name to "Raymond Hutchinson" with a photo taken from a deceased man from Kentucky.  According to an online obituary, this elderly man's real identity is "Raymond Porter" of Olive Hill, Kentucky who passed away on October 28, 2018.  The account has been misappropriated to misrepresent who the owner is of the account. "Raymond Porter" (1933-2018) has been deceased for over three (3) years and therefore cannot be operating this Twitter account.  Ex. E.  This identity was unlawfully taken by Jones without permission of Raymond Porter's family.

98.     Jones then changed the display name to "Douglas A. Baldwin" with a profile photo of a male individual who is not Jones, and later *again* changed this fake account name to @EverythingTaket, with the display name "Catalina Chen".  Jones's @EverythingTaket account purported to be a Florida resident by identifying "Florida" as the location of the account user.

99.     Second, Jones created the fake Twitter account @stephen_matthe posing as a fictitious business journalist named Stephen Matthews.  The description of this account reads: "Business writer and father of 2 girls.  Born in Oklahoma City, but Seattle is my adopted home." A male individual who is not Jones is pictured in the profile's picture to deliberately mislead Pulte's followers and the investment community into thinking this person is a serious business journalist.  Jones is being sued by the gentleman whose identity and photo were improperly used by Jones.  *Richardson v. Jones,* Case No. 23CV031234 (Alameda County, California).

100.    Third, and most outrageous, Jones created the fake Twitter account @GhostOfBPulte, impersonating Pulte's deceased grandfather, a former Florida resident, and the namesake of PulteGroup.

101.    Impersonating PulteGroup's well-known founder, Jones lists his occupation as "Construction Company".

102.    Jones' Twitter accounts frequently comment on Pulte's Twitter posts and have embarked on a vindictive campaign of falsehoods as a means to sully Pulte's good name and the charitable work in which he engages.

103.    Jones' published many of his public statements during business hours when Jones was focused on the work of PulteGroup.  Jones' posts, therefore, were a product of his misguided effort to advance the business interests of PulteGroup.

104.    On or about December 16, 2021, Jones attacked Pulte and his grandfather, writing: "This Bill Pulte has nothing to do with Pulte Homes.[1] He trades in his grandfather's legacy as if he had something to do with it." This statement is false, malicious, and defamatory because Pulte came to the aid of his grandfather and his legacy and served in a vital capacity to his grandfather. Jones, of course, knows that his statement is false because Jones worked at Pulte Homes when Pulte was at the company. Additionally, Jones overlapped with his grandfather at Pulte Homes from 2004-2009. Jones' statement was simply in retribution for a supporter of Pulte's making a positive comment: "I rode past the @PulteHomes sign today, thinking to myself this has to be the same Pulte and sure enough it is!!"    A true and correct copy of Jones' published statement is pictured below:



105.    In response to a February 19, 2022 tweet as to the turnaround of Pulte Homes which Pulte and his grandfather were involved in that started in 2016, Jones wrote:

"My friend was laid off because of you.  The employees blame you."
"Employees hated him. That's why he constantly panders to them."
"They lost their jobs because of him."

_____

[1]  Pulte Homes is a subsidiary of PulteGroup and a more common way of discussing the various companies' homebuilding operations.

A true and correct copy of Jones' published statement is pictured below:



106.    These responses are false, malicious, defamatory and misleading in that no single board member is responsible for laying off an individual employee or causing employees to lose their jobs, and employees did not express hatred for Pulte.

107.    On February 19, 2022, when Pulte was shocked by the national news that his father's (Mark Pulte's) longtime club had burnt to the ground, Pulte put out a statement expressing his sadness for the loss of jobs, the buildings, and his father's community:

> "Our Statement on the Fire at our beloved Oakland Hills CC, a special place for charity events and where my dad, Mark Pulte, and his wife Julie Pulte, are members in Good Standing. Praying for everyone there."

In response, Jones wrote:

"@pulte are you insinuating your father had something to do with the fire? Was Mark Pulte involved in the fire? Mark Pulte recently bought a competitor course. Is that a coincidence?"

A true and correct copy of Jones' statement is pictured below:



108.   Jones had no factual basis and no evidence whatsoever to support his baseless insinuation that Pulte's father caused the fire. This accusation requires a level of obsession and premeditated research that cannot be overstated as Jones sought to inflict as much damage, emotional distress, or revenge as possible on Pulte and the broader Pulte family. The post could

have had no other purpose but to knowingly inflict severe emotional distress on Pulte by attempting to sow discord between Pulte, Pulte's father, and other Pulte family members.

109.    It is important to note that Jones directed his publication to nine other accounts in this false, malicious, and defamatory post, including the Detroit News and the Detroit Free Press, among other news organizations and reporters, in an effort to broaden the reach of his false and defamatory remarks and maximize the infliction of his emotional distress suggesting that Pulte was accusing Pulte's father of committing arson.

110.    Jones followed up with several other comments that day to this post with similar statements alleging that Pulte was accusing his father of being involved with or causing the fire at the Oakland Hills Country Club.

111.    For example, in a sick and twisted response to one of Pulte's fans, an unsolicited Jones wrote: "@pulte mentioned his father Mark Pulte and an investigation into the fire. Sounds like he may suspect his father."  This conduct was outrageous and went beyond all bounds of decency, and was a clear and deliberate attempt to disparage Pulte and the Pulte family, cause confusion, maliciously sow division to as many people as possible, and intended by Jones when Jones knew or should have known that severe emotional distress would likely result.  A true and correct copy of Jones' published statement is pictured below:



112.    When a confused fan of Pulte's questioned the absurdity of Jones' claim that Mark Pulte committed arson, Jones doubled down on his effort to add credibility to the accusation, writing: "His dad just bought a competitor course - the St. Johns Inn. Google it."  A true and correct copy of Jones' published statement is pictured below:



113.    Jones continued, "Link to DBusiness article- Pulte Family Management Acquires Inn at St. John's from Archdiocese."   A true and correct copy of Jones' published statement is pictured below:



114.   Writing further in a campaign to disparage Pulte, Mark Pulte, and the Pulte family.

Jones wrote: "Also look at this article. Coincidence?" - Article Fox2 Detroit- 7,000 sq ft home

destroyed by fire in Bloomfield Township.  A true and correct copy of Jones' published statement

is pictured below:



115.    Jones then, going beyond all bounds of decency, taunted Pulte to engulf the family in controversy in an effort to turn Pulte's father and members of Pulte's own family against him by specifically accusing Pulte of saying his father may be involved in the felony of arson writing: "@pulte are you trying to tell us your dad burned down the Oakland Hills Golf course?"  A true and correct copy of Jones' published statement is pictured below:



116.    Continuing the taunting, Jones' further wrote: "Are you trying to tell us that your father may be involved in the fire at Oakland Hills???"  A true and correct copy of Jones' published statement is pictured below:



117.   In a tweet from March 10, 2022, Pulte wrote:

"Fortunately, My Grandpa (also Bill Pulte) 100% trusted me with Wall Street Investors. This included FINDING AND LOCATING $35 Billion Elliott Management, who endorsed our case for CHANGE! The 2016 Turnaround of PulteGroup Inc will be studied for decades, and maybe, centuries."

In response Jones wrote: "Is this a securities violation?"  This response is a false accusation of a criminal act by Pulte, intended to deceive Pulte's followers by suggesting that Pulte has committed a crime, when no such violation occurred.   A true and correct copy of Jones' published statement is pictured below:



118.    Continuing his incessant campaign of harassment, on or about February 19, 2022, Jones wrote in a public posting: "Honest question… since you never worked for Pulte, why do you feel entitlement?" This is factually false, malicious and defamatory.  Pulte worked for Pulte Homes to successfully turnaround the company in 2016.  Pulte was a party to the settlement agreement between Pulte Homes and himself.  Pulte then joined the board where he was compensated with an annual salary for his four terms where he ferociously defended the shareholders and tried to stop corruption and greed.  A true and correct copy of Jones' published statement is pictured below:



119.   On or about February 16, 2022, Jones disparaged the extended Pulte family (in particular Bill Pulte, Mark Pulte, Nancy Pulte-Rickard, and former PulteGroup executive assistant Karen Koppal-Pulte) writing: "Pulte Family is kind of a mess. Money does that."   A true and correct copy of Jones' published statement is pictured below:



120.     On or about March 10, 2022, Jones falsely suggested that Pulte is lying about a story in another one of his tweets.  A true and correct copy of Jones' published statement is pictured below:



121.     On or about May 12, 2022, in response to a statement Pulte issued from Boca Raton, Florida about the Marriott Family, Jones published the following statement (even targeting @pulte): "The difference is … he worked for Marriott.  You never worked for Pulte Homes, have you?  Just appointed directly to the board."  This statement is false, malicious, and defamatory because Pulte did work for PulteGroup prior to serving on its Board of Directors.  A true and correct copy of Jones' published statement is pictured below:



122.    On or about May 15, 2022, Jones published an unsolicited response to a question

from a fan of Pulte's inquiring why Pulte thought PulteGroup was currently named 4th in the

country for homebuilders.  Instead of taking this time to disclose his role in the company and offer

fact driven information on the status of the company, Jones turned the blame of the current ranking

of the company on Pulte, who has not been with the company in years, by publishing a tweet

stating, "You and the Pulte board spend BILLIONS on stock buy backs. You also did layoffs.

Grandpa Pulte would have invested in land, homes and people."  A true and correct copy of Jones'

published statement is pictured below:



123.   In an effort to artificially inflate the conversation and cause division, Jones

responded to himself using a separate moniker in a false, malicious and defamatory manner

accusing Pulte of lying, stating: "Wow. Why isn't @pulte honest about this????"  *Id.*  These

accusations and statements attributing current actions at Pulte Homes to Pulte are false because

Pulte has not been on the board in years, of which Jones is intimately aware.  A true and correct

copy of Jones' published statement is pictured below:



124.   On or about May 22, 2022, having yet again changed the name associated with the @GoDetroitWin account to "Douglas Balldum," Jones published the following statement @pulte: "Please teach us how to be born to a rich a father and billionaire grandfather!  Then teach us how to claim our privilege is 'business acumen'!"  This is false, malicious, and defamatory because it accuses Pulte of lacking business acumen and experience.   A true and correct copy of Jones' published statement is pictured below:



125.    On or about August 2, 2022, in response to a post from a supporter of Pulte, Jones published the following statement: "@pulte inherited his money.  Rich grandpa and rich dad.  Kinda like the Trump kids.  He 'plays' businessman like Eric or Don Trump."  This statement is false, malicious, and defamatory because it accuses Pulte of lacking business acumen and experience, and tries to equate Pulte with two individuals who have been the subject of wide scale criticism and derision.  A true and correct copy of Jones' published statement is pictured below:



126.    On or about October 9, 2022, Jones wrote in reference to Pulte Homes founder and grandfather of Pulte: "@pulte Nah, you just took advantage when his faculties were diminished.  You manipulated an elderly man and are trying to hijack his legacy.  He didn't 'wait' a generation.  He got old and you were opportunistic."  This is false, malicious and defamatory as it alleges Pulte engaged in elder abuse and elder exploitation, criminal acts, against his grandfather.  A true and correct copy of Jones' published statement is pictured below:



127.    Jones, bizarrely commenting as if he were a former employee of Pulte Homes,

wrote on November 2, 2022: "@pulte, I was laid off when you were on the board.  You claim you

were in the weeds to fix it so you were culpable.  You had a massive compensation as a board

member and a private jet.  You are a hypocrite!!!"  This is false, malicious and defamatory on

several grounds, not the least of which is Jones pretending to be a laid off employee of Pulte Homes

for the purpose of blaming Pulte for the pretend loss of a job. A true and correct copy of Jones'

published statement is pictured below:



128.     On or about November 5, 2022, Jones published the following statement in response to a post by Pulte: "Was @pulte taking drugs when he wrote this?  Or does he have an alcohol dependency?"  This statement is false, malicious, and defamatory because it accuses Pulte of committing crimes and being an addict.  A true and correct copy of Jones' published statement is pictured below:



I'd like to educate you on something about very large publicly traded companies. In 2016 we had to get involved with Pulte Homes because it had a "Rubber Stamp Board" which basically means that the "board does anything that the CEO wants". Rubber Stamp Boards are a big problem

○ 64          ⟲ 105          ♡ 1,113          ⬆

**Pulte** ✓ @pulte · 5h

across corporate America. In fact, I would argue that a lot of problems from inflation are tied to boards just allowing CEOs to buy back stock at crazy high prices and all the sudden when that stops, earnings down, stocks crash. Household net worth crashes cos of lower stocks!

○ 41          ⟲ 48          ♡ 415          ⬆

**Catalina Chen**
@EverythingTaket

Replying to @pulte

Was @pulte taking drugs when he wrote this?

Or does he have an alcohol dependency?

9:01 PM · Nov 5, 2022 · Twitter Web App

**1** Quote Tweet

129.    On or about November 5, 2022, Jones published the following statement in response to posts by Pulte and a supporter: "He's never had a job.  He inherited all his wealth. He's got the same qualifications as Paris Hilton to run Hilton Hotels.  None." This statement is false, malicious, and defamatory because it accuses Pulte of being unqualified and inexperienced. A true and correct copy of Jones' published statement is pictured below:



130.    On or about November 17, 2022, Jones published the following statement in response to a post by Pulte: "@pulte likes to mislead people.  He didn't do anything except cause layoffs at Pulte Homes."   This statement is false, malicious, and defamatory because it accuses Pulte of not being truthful, laying off PulteGroup employees, and doing no work for PulteGroup. A true and correct copy of Jones' published statement is pictured below:



131.    On or about December 1, 2022, Jones published the following statement: "@pulte only cares about internet clout and making people beg him for money.  Even if that means supporting anti-semites."  This statement is false, malicious, and defamatory because it accuses Pulte of being racist.  A true and correct copy of Jones' published statement is pictured below:



132.    For the next week, Jones published numerous additional statements falsely accusing Pulte of being racist, including publishing @pulte: "I think everyone is upset about the antisemitism though." A true and correct copy of Jones' published statement is pictured below:



133.    In response to a post by Pulte about his beloved grandfather, Jones further published @pulte: "Bill Pulte did not support anti-semites like you."  A true and correct copy of Jones' published statement is pictured below:



134.   Jones further published the statement: "@pulte why did you delete your post supporting the guy who hates Jewish people and likes Hitler????"  A true and correct copy of Jones' published statement is pictured below:



135.   Jones continued his hate-filled attack by publishing the following statement in response to a picture Pulte pictured of him with his beloved grandfather: "Why did @pulte amplify someone who posted a swastika??  People should know if @pulte also believes in Nazism."  A true and correct copy of Jones' published statement is pictured below:



136.    Yet again, on December 8, 2022, Jones published the following false statement:

"Can you believe that @pulte boosts the profiles of anti-semites like Kanye??  Kayne said he saw

a lot of good in Hitler and @pulte boosted him for internet clout! Boosting Nazis = not the problem

though … right?"  A true and correct copy of Jones' published statement is pictured below:



Catalina Chen 🔒
@EverythingTaket

Replying to @Chris_MillerCA @JazzyJoeKrueger and 2 others

Can you believe that @pulte boosts the profiles of anti-semites like Kanye??

Kanye said he saw a lot of good in Hitler and @pulte boosted him for internet clout!

Boosting Nazis = not the problem though….. right?

6:27 AM · Dec 8, 2022

137. From November to December 2022, Jones utilized the fake @GhostOfBPulte Twitter alias to maliciously and deliberately defame and launch outrageous personal attacks on Pulte when Jones knew or should have known that severe emotional distress would likely result. These personal, deliberate, calculated, and demented attacks, in fact, did cause Pulte severe emotional distress and were outrageous, went beyond all bounds of decency, and are to be regarded as odious and utterly intolerable in a civilized community. Jones knew that Pulte had an incredibly close relationship with his grandfather and that Pulte was the only grandchild to work for PulteGroup. As such, Jones exploited Pulte and his grandfather's relationship deliberately to inflict maximum harm towards Pulte.

138. Through the fake @GhostOfBPulte Twitter alias, Jones intentionally and/or recklessly made false and defamatory statements knowing they would harm Pulte on a personal level given his relationship with his grandfather and PulteGroup.

139. Jones used this account to launch outrageous personal attacks at Pulte while impersonating his deceased grandfather. For example, on November 6, 2022, Jones wrote in a

Twitter post directed at Pulte: "@pulte He's never worked anywhere.  I gave him money.  He was born rich.  I put him on the board.  He's never run Pulte Group."  This statement is false, malicious, and defamatory because it accuses Pulte of having no work experience or board qualifications.  A true and correct copy of Jones' published statement is pictured below:



140.    In another outrageous and offensive publication attacking Pulte, Jones wrote on November 23, 2022, both directed at Pulte and available to the public, using Twitter: "@DrawRead @pulte @unusual_whales @elonmusk He's never had a job.  He's never worked in a professional environment.  He has no idea what he's talking about.  He was born rich.  Inherited everything and calls it 'work.'  He's commandeered my legacy.  And now he dangles small monetary sums in exchange for internet clout."

141.    Jones went beyond these outrageous Twitter publications attacking Pulte and made false and defamatory statements through the @GhostOfBPulte account.  For example, Jones wrote on November 6, 2022, in a Twitter post directed at Pulte: "My grandson made up the Pulte Plan. I had nothing to do with it.  He's been making it up for years.  It's nonsense."  This statement is false and defamatory, as Pulte did not "make up" the Pulte Plan, which is a written plan for the PulteGroup published by Pulte with the teachings, advice, and direction given to him by his grandfather.  A true and correct copy of Jones' published statement is pictured below:



**GhostOfBillPulte**
@GhostOfBPulte

My grandson made up the Pulte Plan.
I had nothing to do with it.  He's been
making it up for years.

It's nonsense.

1:48 PM · 11/6/22 · Twitter Web App

142.    On November 17, 2022, Jones published a publication, both directed at Pulte on Twitter and available to the public everywhere: "You never worked at Pulte Hones.  You were on the board.  Big difference.  I never asked you to 'save' anything."  Along similar lines, Jones wrote on November 26, 2022 in another reply Twitter post directed at Pulte: "You have never worked at

Pulte Homes.  It's been a public company for 40 years.  If it's a 'family business,' so is Disney.

Having matching last name doesn't make it yours.  You don't even own stock in the company.

Incredibly misleading tweet."  These statements directed at Pulte are factually false, malicious and

defamatory as Pulte worked for Pulte Homes (PulteGroup) and to successfully turnaround the

company from 2016 to 2020. Pulte worked at PulteGroup under the direction of his grandfather

and others, and ultimately returned to the company in 2016 as a Director.  Jones knows that Pulte's

career is based on, in part, his prior work experience, including his work with PulteGroup, and as

a result Jones has caused significant damage to Pulte by falsely stating that Pulte never worked

with PulteGroup.  A true and correct copy of Jones' published statement is pictured below:

**Ghost Of Bill Pulte - Parody**
@GhostOfBPulte

Replying to @pulte

You have never worked at Pulte Homes. It's been a public company for 40 years.

If it's a "family business", so is Disney.  Having a matching last name doesn't make it yours.

You don't own any stock in the company.

Incredibly misleading tweet.

1:30 PM · Nov 26, 2022 · Twitter Web App

143.    On information and belief, Jones' incessant online and offline harassment scheme

began on September 8, 2016 and continues to this very day.

144.    The foregoing statements published on Twitter are mere examples of the

defamatory statements and broader harassment campaign that Jones purposefully directed at

Plaintiff.  Additional statements published on Twitter are collected in Ex. G.  Even Ex. G, however, does not fully capture the extensive attacks of Jones because, as Jones has admitted, he deleted certain statements after publishing them on Twitter.

### B.      Pulte's Involvement with PulteGroup Inc., and its subsidiary Pulte Homes

145.    Pulte is one of the largest individual shareholders of PulteGroup, a company he and his family love.

146.    Pulte, who was born and raised in South Florida, has his family roots in Detroit, Michigan.  Pulte is the namesake and grandson of William J. Pulte, who was the founder of Pulte Homes, now PulteGroup, a national home builder which is a publicly traded company that was started in Michigan.  It trades under the stock symbol PHM on the NYSE.

147.    Pulte's grandfather built his first subdivision in Bloomfield Hills, Michigan in 1959 and went on to grow the company to become the 1st place homebuilder in the country with annual sales of $14.6 billion. After his retirement as Chairman, PulteGroup declined to 4th place.

148.    Pulte had a close relationship with his grandfather and was the only family member, of his grandfather's 14 children and 25 grandchildren, recruited by his grandfather to work in Pulte Homes.

149.    Pulte's relationship with his grandfather was so good that he was the only descendant in his will and the only one to receive an inheritance from his grandfather.

150.    Pulte's grandfather recruited Pulte to turn around PulteGroup in 2016 after then-CEO Richard Dugas implemented an ineffective value creation strategy by an outside consultant, Boston Consulting Group ("BCG"). Also, at that time, an independent board member called into question financial representations and practices about PulteGroup's profitability by the accounting executives and the Dugas Team.

151.    The Pulte Family's public feud with the company earned the endorsement of prominent Wall Street analysts and even the famed hedge fund Elliott Management who subsequently purchased a significant stake in PulteGroup to indirectly support the Pulte Family's desire for change. In order to bring PulteGroup out of this state of distress, Pulte agreed to join the board of directors, after being independently vetted by the board in 2016, where Pulte served as a director in good standing for four consecutive terms.  Pulte later wrote a book with quoted excerpts by his grandfather called, *The Home That Bill Pulte Built.*  A copy of the book is attached hereto as Ex. H.

152.    In private Board meetings at which Defendant Brandon Jones was not present, PulteGroup's Current CEO, Ryan Marshall, proposed that Jones be promoted directly from Michigan Division President to the position of COO, which would have him second in command at the company.  Jones, who was a supporter of the failed former CEO Dugas and the BCG strategy and was Marshall's confidante, was not qualified for the position. Pulte, an independent director, opposed Jones' bizarre promotion as recommended by Ryan Marshall. Ultimately, the board unanimously agreed with Pulte, and unanimously rejected Ryan Marshall's proposal to fast track and promote Jones.

### C.    Pulte's Business and Charitable Efforts

153.    Pulte founded Pulte Capital in 2011, which invests and operates companies in the housing industry.  Pulte's grandfather worked for years inside his grandson's Pulte Capital companies and was a valued member of his grandson's Pulte Capital team.  Pulte Capital has been successful in its business ventures.

154.    Along with Pulte Capital, Pulte spends a significant part of his time on one of his other great passions – charitable giving and raising money for those in need.  Pulte's charitable

efforts and intentions were complimented by the board and management team even whilst there was disagreement over Pulte using his own last name, for fear that it would overshadow the corporation's non-profit efforts which received little media attention.

155.    Pulte has developed a large Twitter presence with 3.1 million followers in the State of Florida and elsewhere.  Pulte regularly posts to his account identifying worthy causes and people he donates to and to which his followers can donate if they so choose.  Many of those recipients have been and remain in Florida.

156.    One such project was the tragic shooting of four high school students killed and seven others wounded in a high school shooting on November 30, 2021.

157.    After seeing the GoFundMe.com posting from the grandmother of one of the students who was killed, Pulte urged his Twitter followers to donate alongside his donation.  Many of his followers donated as shown by their comments in the GoFundMe page which credit Pulte.

158.    Another effort by Pulte was raising money for funeral costs for an 18 month old who was tragically killed by the child's mother's boyfriend.  Pulte published a tweet to his followers on December 18, 2021, that the family needed $8,000 for funeral costs.  Pulte's tweet helped to raise over $10,000 in two days as donations from his Twitter followers poured in.

159.    Another recent effort was related to the Uvalde, Texas elementary school shooting, whereby Pulte and his Twitter audience helped raise over $2.5 million for the family of the teacher who was killed in that shooting.

160.    Through his charitable giving, Pulte often donates to people in need of money for food and rent and to teachers in need of supplies for their classrooms.  In 2019, Pulte gave a Chevrolet SUV to an Air Force veteran.

161.    Pulte also uses his social media presence to fight greed and corruption in Fortune 500 companies.  He has also worked to combat urban blight, a project he started with his grandfather.

### D.    Brandon Jones's Promotion and Termination at PulteGroup

162.    In October 2022, Jones was promoted by Marshall to Chief Operating Officer of PulteGroup, making him the second in command.  At the time of the promotion, Jones was a Senior Executive of PulteGroup.  Previously, Jones served as PulteGroup's Southeast Area President, with responsibility for PulteGroup's Florida operations, and as a Division President under former CEO Dugas.

163.    Marshall is Jones's closest confidante.

164.    PulteGroup's employee handbook, its Code of Ethical Business Conduct, specifically forbids the type of social media activity engaged in by Jones.

165.    Knowing he would be fired for doing all of this in his own name, Jones sought to conceal his identity as he evaded PulteGroup's legal compliance, Human Resources oversight, and the Investor Relations Department.

166.    PulteGroup's Code of Ethical Business Conduct prohibits the behavior Jones exhibited in dozens of replies and malicious tweets directed at Pulte and his family. Shockingly, he violated nearly every point envisioned by PulteGroup in its Code:

- Disrespectful, unprofessional, unethical comments.

- Offensive material, such as pornography, sexually suggestive content, racial slurs, offensive language or jokes in the workplace, posted/shared on social media, or expressed to or about members of the Pulte community, including customers, employees, or trades.

- Derogatory comments regarding another person, such as that person's age, sexual orientation, religious or political beliefs, national origin, disability or any other protected classification in the workplace, posted/shared on social media, or

expressed to or about members of the Pulte community, including customers, employees, or trades.

- False, misleading, deceptive, derogatory or disparaging statements about any third parties, including competitors (there is no reason to ever discuss a competitor on social media site).

- Usage that is inconsistent with the policies in the Code of Conduct or employee handbook.

- Communications prohibited by law or designed to encourage illegal or improper behavior.

Ex. I at 26-28 (PulteGroup's Code of Ethical Business Conduct).

In further violation of PulteGroup policy, Jones misappropriated copyrighted images from the Detroit Tigers' logo to the personal photograph of a deceased man, Raymond "Ray" Porter. The Code of Conduct states that: "To prevent a copyright, trademark or publicity rights violation, do not post images or other content without the consent of those who appear in or own the media.". Ex. I at 26-28. Jones knowingly concealed his identity during his targeted campaign of defamation against Pulte to avoid the prohibitions of PulteGroup.

167.   Two days after this lawsuit was filed, on December 16, 2022, PulteGroup terminated Jones for his misconduct described herein.

168.   Jones' deliberate, false, malicious, and defamatory statements allege behavior on the part of Pulte that is incompatible with the proper conduct of his business, trade or profession.

**E.    PulteGroup's CEO and General Counsel Assist Jones Despite PulteGroup's Board Telling Public Investors That Jones Was Terminated For His Unethical Conduct**

169.   Despite PulteGroup firing Jones for his conduct against Pulte, Marshall is working with Jones to continue harassing Pulte.

170.   Marshall is working with Jones in this lawsuit.

171.    Marshall encouraged Jones to file a frivolous lawsuit against Pulte in Georgia asserting a baseless defamation claim where Jones falsely states that Jones did not conduct this campaign and did use these fictitious or stolen identities.  This was in direct contradiction to what PulteGroup stated about Jones' unethical conduct.

172.    In this first-filed Florida lawsuit, Jones now admits that he did use the fictitious and stolen identities.

173.    Marshall and Jones have also withheld critical information in this lawsuit.

174.    Jones is the best friend and consigliere to PulteGroup's Current CEO Ryan Marshall. Marshall is secretly lobbying Jones to defame Pulte because Pulte is a large shareholder of PulteGroup and has publicly expressed concerns over Marshall's poor performance as CEO.

175.    Pulte has been a critic of PulteGroup's dwindling stature versus competitors under Ryan Marshall.  Now, in order to protect his $16 million annual compensation, Marshall is secretly supportive of Jones' effort to "knock out" Pulte.

176.    While Marshall publicly tells investors that he fired Jones for cause, he secretly encourages Jones to pursue Jones' baseless lawsuit against Pulte, as shown by the following text message between Marshall and Jones from March 2023:

> **_PulteGroup CEO Ryan Marshall:_** Morning! Hope your trip went well. Did you get your suit filed?
>
> **_Brandon Jones:_** The trip was great, thanks! I hope yours is going well. Call me when you have 2 seconds.
>
> **_PulteGroup CEO Ryan Marshall:_** 10-4

177.    Jones used the accounts to further the interests of Marshall, declaring that the Founder of PulteGroup was not the best CEO of PulteGroup, but rather that Marshall was the best CEO of PulteGroup.



178.    Jones intentionally utilized these fake Twitter accounts to publish incessant attacks on Pulte, his grandfather, and the Pulte Family – notwithstanding his executive position at PulteGroup and familial relationship with Ryan Marshall.

179.    In addition, PulteGroup's General Counsel, Todd Sheldon, deleted his personal Twitter account after Pulte confidentially notified the board of Jones' campaign against Pulte. Ex. J.

180.    Jones used PulteGroup's assets, including PulteGroup's IP addresses, to commit these torts.

181.    It is even more bizarre that Marshall is supportive of Jones' baseless lawsuit against Pulte because PulteGroup fired Jones in large part for the conduct alleged in this Complaint. PulteGroup's Board issued the following statements about Jones' unethical conduct:

- "PulteGroup, Inc. (NYSE: PHM), the nation's third largest homebuilder, announced today that Brandon Jones, Senior Vice President - Field Operations, has been terminated and will leave the Company effective immediately. "

- "Mr. Jones' departure follows an independent investigation that determined he had violated the Company's Code of Ethical Business Conduct."

- "The Board of Directors of PulteGroup (NYSE: PHM) today announced the results of an investigation into alleged violations of the Company's Code of Ethical Business Conduct relating to the improper use of social media by a former employee. As previously announced, the Company promptly terminated the former employee upon verifying the Code violations."

**F. Other**

182.    According to the United States Department of Justice, about half (46%) of all stalking victims experienced at least one unwanted contact per week. Jones made unwanted contacts to Pulte over 5 times this amount, in some cases.

183.    According to the United States Department of Justice, 35% of all stalking victims have rumors spread about them by their Stalkers. Jones spread hundreds of statements and incessant rumors about Pulte, including falsely that Pulte committed crimes.

184.    According to the United States Department of Justice, more than half of stalking victims lost 5 or more days from work.

## COUNT I – DEFAMATION, LIBEL AND SLANDER

185.   Plaintiff, WILLIAM J. PULTE, realleges the allegations set forth in paragraph numbers 1 through 184 as though fully set forth herein.

186.   Jones made one or more false statements regarding Pulte as set forth above.

187.   These statements wrongly accuse Pulte of having acted in a manner that would subject him to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of his Twitter followers and the public generally, as well as companies with whom he does business through Pulte Capital, those he connects with through his charitable efforts, as well as with those whom Pulte potentially would do business.

188.   Each relevant statement was a brick in a larger campaign to make the process of exercising speech crippling, to get Pulte to engage in self-censorship while his timeline was filled with hate, negativity, and in many cases libel that Pulte would need to combat or correct.

189.   These statements further would tend to injure Pulte in his trade/profession, which includes investing in the homebuilding industry and in the market.

190.   The false statements, individually and jointly, tend to harm Pulte's reputation in the business and charitable communities and deter others from associating or dealing with Pulte.

191.   Further, the statements, even if true, are conveyed in such a manner as to give false impressions.

192.   The statements made by Jones were false and no applicable privilege or authorization protecting the statements can attach to those statements.

193.   Jones published these false statements to third parties, including third parties in Florida, by posting the statements on Twitter and replying directly to @pulte.

194.     In publishing these false statements, Jones either knew the statements were false, had serious doubts as to their truth, or published them with reckless disregard for, and in purposeful avoidance of the truth.

195.     Jones made a deliberate decision not to investigate facts that would have confirmed the falsity of the accusations against Pulte, or published those falsities with knowledge that they were false.

196.     As a direct and proximate result of the publication of the false and defamatory statements, Pulte has suffered general and special economic injury, damage, loss and harm to his reputation, in an amount to be proven at trial, which damages are continuing in nature and will be suffered in the future.

197.     Jones' defamatory statements include statements that Pulte engaged in illegal and/or criminal activity constitute defamation *per se*.  Damages for such statements are presumed.

198.     Jones' defamatory statements alleging behavior on the part of Pulte that is incompatible with the proper conduct of his business, trade or profession constitute defamation *per se.*  Damages for such statements are presumed.

199.     WHEREFORE, Plaintiff, WILLIAM J. PULTE, demands entry of a judgment against Defendant, BRANDON JONES:

    a)     awarding general and special damages in excess of $75,000;

    b)     prejudgment interest;

    c)     costs; and

    d)     all such other relief as this Court deems just and proper.

**COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

200.    Plaintiff, WILLIAM J. PULTE, realleges the allegations set forth in paragraph numbers 1 through 184 as though fully set forth herein.

201.    Pulte has a business relationship with persons and companies with whom he does business and through his charitable efforts.

202.    Jones had knowledge of Pulte's business relationships because Jones (among other things) follows Pulte's Twitter account and knows of Pulte based on Jones' employment with Pulte Homes.

203.    Jones targeted and engaged in intentional and unjustified interference with the relationship between Pulte and his existing business relationships, as well as potential business relationships.

204.    Due to this interference, Pulte has incurred damages.

WHEREFORE, Plaintiff, WILLIAM J. PULTE, demands entry of a judgment against Defendant, BRANDON JONES:

    a)    in an amount of his damages in excess of $75,000;

    b)    prejudgment interest;

    c)    costs; and

    d)    all such other relief as this Court deems just and proper.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

205.    Plaintiff, WILLIAM J. PULTE, realleges the allegations set forth in paragraph numbers 1 through 184 as though fully set forth herein.

206.    Jones took Pulte's grandfather's obituary photo and other identifying information to launch a Twitter impersonation account named the @GhostOfBPulte.  Jones deliberately

directed false, malicious, offensive, and defamatory statements at Pulte through this fake Twitter account.

207.    Jones knew that Pulte and his grandfather had a close relationship.  As such, Jones deliberately exploited Pulte and his grandfather's relationship to inflict maximum harm towards Pulte through statements purporting to be from Pulte's deceased grandfather.

208.    Jones deliberately and/or recklessly directed the statements from the @GhostOfBPulte to harm, attack, offend, disparage, and inflict severe emotional distress on Pulte.

209.    Jones's statements through the @GhostOfBPulte fake Twitter account of Pulte's deceased grandfather were outrageous, go beyond all bounds of decency, were intended by Jones when he knew or should have known that emotional distress would likely result, and are to be regarded as odious and utterly intolerable in a civilized society.

210.    Jones's other statements detailed above using his bot network of fake identities, fake accounts, and stolen names, images, and likenesses to sow discord in and among Pulte and his family members by stating that Pulte was saying that his father caused the fire at Oakland Hills Country Club was outrageous, go beyond all bounds of decency, were intended by Jones when he knew or should have known that emotional distress would likely result, and are to be regarded as odious and utterly intolerable in a civilized society.

211.    As a result of the false, defamatory and outrageous statements published by Jones, Pulte has suffered severe emotional distress.  After uncovering Jones' fake Twitter accounts and the abhorrent and demented use of his deceased grandfather's image to smear Pulte's career and accusations that Pulte was accusing his father of being an arsonist, Pulte suffered from adjustment disorder and battled depression.  Pulte eventually began regular therapy treatment for his

depression in June 2023 due to his difficulty coping with Jones' harassment. This severe emotional distress was caused by Jones' intentional conduct.

WHEREFORE, Plaintiff, WILLIAM J. PULTE, demands entry of a judgment against Defendant, BRANDON JONES:

      a)      awarding general and special damages in excess of $75,000;

      b)      prejudgment interest;

      c)      costs; and

      d)      all such other relief as this Court deems just and proper.

### COUNT IV – VIOLATION OF FLORIDA'S CYBERSTALKING STATUTE

212.    Jones' conduct as described in paragraphs 1-11, 14-16, 22-24, 28-29, 32-37, 40, 42-71, 73, 76, and 79-144, above, constitutes "cyberstalking" as defined in Fla. Stat. § 784.048(1)(d).

213.    As described above, Jones has engaged in a course of conduct to communicate and cause to be communicated, directly and indirectly, words, images, and language by or through the use of electronic communication, directed at and pertaining to Pulte.

214.    Jones' conduct has caused substantial emotional distress to Pulte.

215.    Jones' conduct serves no legitimate purpose.

216.    Jones' conduct, described above, violated Florida law against cyberstalking in Fla. Stat. § 784.048(2).

WHEREFORE, Plaintiff, WILLIAM J. PULTE, demands entry of a judgment against Defendant, BRANDON JONES:

      a)      enjoining Jones from cyberstalking Pulte;

      b)      costs; and

      c)      and all such other relief as this Court deems just and proper.

## COUNT V - TEMPORARY AND PERMANENT INJUNCTION

217.    Pulte re-alleges the allegations contained in paragraph numbers 1 through 184 as if fully set forth herein.

218.    Jones used his accounts to make unwanted and nonconsensual contact with Pulte.

219.    Jones used his accounts to follow Pulte around Twitter.

220.    To this day, Jones is using at least one fictitious account to stalk and monitor Pulte, and must be stopped to avoid further endangering Pulte.

221.    This Court has the power to issue temporary and permanent injunctions based on Jones' written statements regarding Pulte and his tortious interference with Pulte's business relationships and prospective business relationships.

222.    Additionally, this Court has the power to issue temporary and permanent injunctions on continuing harm against Pulte resulting from Jones' cyberstalking, which includes Jones admitting that he continues to stalk Pulte's Twitter account. Ex.  A (filed under seal).

223.    Unless a temporary injunction is granted to require Jones to remove the tweets in which he makes false and libelous statements regarding Pulte and to stop publishing false and libelous statements, Pulte is subject to immediate and irreparable harm as his reputation is being impaired.

224.    Pulte has a clear legal right to injunctive relief.

225.    Pulte does not have an adequate remedy at law since he will not know whether any persons or companies with which he does business terminate or limit their involvement with him, or do not become involved with Pulte, as a result of the false and libelous statements made by Jones.

226.    Finally, the public interest will not be disserved by requiring Jones to remove the tweets in which he has made false and libelous statements, and to prevent him from continuing with such actions, as he has no privilege to publish false statements.

227.    Accordingly, Pulte seeks temporary and permanent injunctive relief to require Jones to remove the tweets at issue and to preclude him from publishing further libelous statements.

WHEREFORE, Plaintiff, WILLIAM J. PULTE, respectfully requests that the Court issue temporary and permanent injunctions against Defendant, BRANDON JONES:

a)    requiring Jones to remove the tweets;

b)    requiring Jones to cease contacting Pulte;

c)    precluding Jones from publishing future statements on Twitter and any other medium regarding Pulte which contain libelous or false statements;

d)    costs; and

e)    all such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

### RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES

Plaintiff reserves the right to bring a claim for punitive damages as to all claims for which punitive damages are an available remedy.

Signed on this 25th day of October, 2023

Respectfully submitted,

By: /s/ _____

William D. Beil,
Pro Hac Bar No. 33922 FL
Carrie D. Savage,
Pro Hac Bar No. 1045275 FL
GM Law PC
1201 Walnut, Suite 2000
Kansas City, MO 64106
Phone: (816) 471-7700
Email: carries@gmlawpc.com

- and –

Jason Gordon, Esq.
Fla. Bar No. 0012973
Law Offices of Jason Gordon, P.A.
3440 Hollywood Blvd., Suite 415
Hollywood, Florida 33021
Telephone: (954) 241-4207
Facsimile: (954) 241-4236
FOR SERVICE OF COURT FILINGS:
jg@jgordonlegal.com
service@jgordonlegal.com

*Attorneys for William J. Pulte*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 25th

day of October, 2023, via Florida's e-filing portal to all counsel of record.

/s/ *William D. Beil* _____

## <u>VERIFICATION AS TO COUNT IV</u>

I HAVE READ EVERY STATEMENT MADE IN THIS PETITION PERTAINING TO COUNT IV AND EACH SUCH STATEMENT IS TRUE AND CORRECT. I UNDERSTAND THAT SUCH STATEMENTS MADE IN THIS PETITION ARE BEING MADE UNDER PENALTY OF PERJURY, PUNISHABLE AS PROVIDED IN SECTION 837.02, FLORIDA STATUTES.

_____
William J. Pulte